1  RON BENDER (SBN 143364)
   MONICA Y. KIM (SBN 180139)
2  JULIET Y. OH (SBN 211414)
   LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3  10250 Constellation Boulevard, Suite 1700
   Los Angeles, California 90067
4  Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
5  Email: RB@LNBYB.com, MYK@LNBYB.COM; JYO@LNBYB.com

6  Proposed Attorneys for Chapter 11 Debtor
7  and Debtor in Possession

8
                    **UNITED STATES BANKRUPTCY COURT**
9
                    **CENTRAL DISTRICT OF CALIFORNIA**
10
                         **SANTA ANA DIVISION**
11

12

13  In re                              )  Case No. 8:21-bk-10958-ES
                                        )
14  PLAMEX INVESTMENT, LLC,             )  Chapter 11
                                        )
15                                      )
         Debtor and                     )  **EXHIBIT A TO:**
16       Debtor in Possession.          )  **FINAL  ORDER  AUTHORIZING  THE**
                                        )  **DEBTOR       TO       USE       CASH**
17                                      )  **COLLATERAL**
                                        )
18                                      )  Interim Hearing
                                        )  Date:      April 15, 2021
19                                      )  Time:      10:00 a.m.
                                        )  Place:     Courtroom 5A
20                                      )             Via Zoom.Gov
                                        )
21                                      )
                                        )  Continued Hearing
22                                      )  Date:      May 11, 2021
                                        )  Time:      10:30 a.m.
23                                      )  Place:     Courtroom 5A
                                        )             Via Zoom.Gov
24                                      )
                                        )
25                                      )
                                        )
26  _____)

27

28

                                    1

**EXHIBIT A**

1   David M. Neff, IL. Bar No. 6190202
    (*admitted pro hac vice*)
2   DNeff@perkinscoie.com
    Amir Gamliel, Cal. Bar No. 268121
3   AGamliel@perkinscoie.com
    PERKINS COIE LLP
4   1888 Century Park E., Suite 1700
    Los Angeles, CA  90067-1721
5   Telephone:  310.788.9900
    Facsimile:  310.788.3399
6
    Attorneys for Secured Creditor
7   Wells Fargo Bank, National Association, as
    Trustee for Morgan Stanley Capital I Trust
8   2016-UBS11, Commercial Mortgage Pass-
    through Certificates, Series 2016-UBS11, and on
9   Behalf of the Holders of any Related Serviced
    Subordinate Companion Loan or Serviced
10  Companion Loan

11
                UNITED STATES BANKRUPTCY COURT
12
                CENTRAL DISTRICT OF CALIFORNIA
13
                    SANTA ANA DIVISION
14

15

16  In re                              CASE NO.  8:21-BK-10958-ES

17  PLAMEX INVESTMENT, LLC,             Chapter: 11

18              Debtor and Debtor       **STIPULATION REGARDING USE OF
                in Possession.         CASH COLLATERAL**
19
                                        Date:      May 11, 2021
20                                      Time:      10:30 a.m.
                                        Place:     Courtroom 5A
21                                                 Via Zoom.Gov

22

23

24

25

26

27

28

1    This Stipulation Regarding Use of Cash Collateral (the "***Stipulation***") is entered

2    into by and between secured creditor Wells Fargo Bank, National Association, as Trustee

3    for Morgan Stanley Capital I Trust 2016-UBS11, Commercial Mortgage Pass-through

4    Certificates, Series 2016-UBS11, and on Behalf of the Holders of any Related Serviced

5    Subordinate Companion Loan or Serviced Companion Loan ("***Secured Creditor***") and

6    Plamex Investment, LLC, the debtor and debtor in possession in the above-captioned

7    Chapter 11 bankruptcy case ("***Debtor***" or "***Borrower***"), each by and through their counsel

8    of record, and is made with reference to the following facts:

9                            **I.     Recitals**

10   **A.     Background**

11       a.       On or about June 16, 2016, Natixis, New York Branch, a direct branch of

12   Natixis S.A., a société anonyme à conseil d'administration (public limited company)

13   organized and existing under the laws of France ("***Original Lender***") made a

14   $106,000,000.00 loan (the "***Loan***") to Borrower.  The Loan is evidenced by, among other

15   instruments: (i) a Loan Agreement dated as of June 16, 2016 (the "***Loan Agreement***"),

16   between the Borrower and Original Lender, (ii) a Promissory Note dated June 16, 2016,

17   executed by the Borrowers in favor of Original Lender in the original principal sum of

18   $106,000,000.00 (the "***Note***") and (iii) Replacement Promissory Note A-1 for

19   $28,000,000.00, Replacement Promissory Note A-2 for $20,000,000.00, Replacement

20   Promissory Note A-3 for $20,000,000.00, Replacement Promissory Note A-4 for

21   $20,000,000.00, Replacement Promissory Note A-5 for $10,000,000.00 and Replacement

22   Promissory Note A-6 for $8,000,000.00 (collectively, the "***Notes***").  CWCapital Asset

23   Management, LLC is the special servicer ("***Special Servicer***") of all of the Notes,

24   including the A-2 and A-3 Notes, which are held by Wells Fargo Bank, National

25   Association, as Trustee for Morgan Stanley Capital I Trust 2016-UBS11, Commercial

26   Mortgage Pass-Through Certificates, Series 2016-UBS11 (the "***Lead Trust***").

27       b.       The Loan is secured by, among other things: (i) a Deed of Trust,

28   Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of

1  June 16, 2016 (the "***Deed of Trust***"), executed by the Borrower, as trustor, in favor of

2  Stewart Title of California, Inc., as trustee, for the benefit of Original Lender, as

3  beneficiary; and (ii) an Assignment of Leases and Rents, dated June 16, 2016 (the

4  "***Assignment of Rents***") executed by the Borrower, as assignor, in favor of Original

5  Lender, as assignee.

6       c.    In connection with the Loan, Borrower also entered into an Assignment and

7  Subordination of Management Agreement, dated as of June 16, 2016, for the benefit of

8  Original Lender.

9       d.    The Note, the Deed of Trust, the Assignment of Rents, and all other

10  documents evidencing, securing or relating to the Loan are sometimes collectively

11  referred to herein as the "***Loan Documents***."

12  **B.**    **The Loan is Assigned to Secured Creditor**

13       e.    Effective as of June 16, 2016 Original Lender contends that it assigned the

14  Loan Documents to Natixis Real Estate Capital LLC, a Delaware limited liability

15  company ("***NREC***"), pursuant to (i) an Assignment of Deed of Trust, Assignment of

16  Leases and Rents, Security Agreement and Fixture Filing and Assignment of Assignment

17  of Leases and Rents (the "***NREC Assignment of DOT***"); (ii) an Assignment of

18  Assignment of Leases and Rents the "***NREC Assignment of ALR***"); and (iii) an

19  Assignment of Loan Documents made and entered into as of June 20, 2016.  In addition,

20  Original Lender contends that it endorsed the Notes in favor of NREC pursuant to

21  Allonges A-1 through A-6 (the "***NREC Allonges***").

22       f.    Effective as of August 25, 2016, NREC contends that it assigned the Loan

23  Documents to Secured Creditor pursuant to (i) an Assignment of Deed of Trust,

24  Assignment of Leases and Rents, Security Agreement and Fixture Filing and Assignment

25  of Assignment of Leases and Rents (the "***Secured Creditor Assignment***"); (ii) an

26  Assignment of Assignment of Leases and Rents (the "***Secured Creditor Assignment of***

27  ***ALR***"); and (iii) General Assignment of the Loan Documents.  In addition, NREC

28

1    contends that it endorsed the Notes in favor of Secured Creditor[1] pursuant to Allonges A1

2    through A-6 (the "**Secured Creditor Allonges**").  Accordingly, Secured Creditor contends

3    that it is now the holder of the Notes, beneficiary under the Deed of Trust and secured

4    party and/or assignee under all of the other Loan Documents.

5    **C.      The Loan Obligations**

6          g.      Pursuant to the Loan Documents, Borrower promised to pay to Secured

7    Creditor monthly payments of interest by the fifth day of each month commencing on

8    August 5, 2016, with the principal balance, along with all accrued but unpaid interest and

9    other charges due and payable on July 5, 2021 (the "**Maturity Date**").  Section 8.1(a) of

10   the Loan Agreement provides that an "Event of Default" shall occur if Borrower fails to

11   pay any portion of the Debt (as defined therein) when due.

12         h.      Additionally, in Section 2 of the Deed of Trust and Section 2 of the

13   Assignment of Rents, Borrower made an absolute and unconditional assignment to the

14   Original Lender of the Rents, subject to a revocable license for Borrower to collect and

15   retain the Rents.  Upon the occurrence of an Event of Default under the Loan Documents,

16   the license granted to Borrower would be revoked automatically and Secured Creditor

17   would be entitled to collect the rents.

18         i.      Additionally, Section 5.7 of the Loan Agreement provides that Secured

19   Creditor may enter upon the Property to conduct inspections of the Property and the

20   activities conducted thereon to determine compliance with all environmental laws, the

21   presence of hazardous materials, and the existence of any potential damages as a result of

22   the condition of Property.

23         j.      Section 3.9 of the Loan Agreement provides Secured Creditor with a

24

25   [1] Allonges for Replacement Promissory Notes A-1 and A-6 were endorsed in favor of Wilmington Trust, National
Association, as Trustee for the Benefit of the Registered Holders of SG Commercial Mortgage Securities Trust 2016-
C5, Commercial Mortgage Pass-through Certificates, Series 2016-C5. Allonges to Replacement Promissory Notes
26   A-2 and A-3 were endorsed in favor of the Lead Trust. Allonges for Replacement Promissory Notes A-4 and A-5
were endorsed in favor of Wilmington Trust, National Association, as Trustee for the Benefit of the Registered
27   Holders of Wells Fargo Commercial Mortgage Trust 2016-NXS6, Commercial Mortgage Pass-through Certificates,
Series 2016-NXS6. Pursuant to that certain Co-Lender Agreement, Secured Creditor is vested with the authority to
28   pursue any and all enforcement action, including in this bankruptcy, in connection with or related to the Notes.

1    security interest in all of Borrower's right, title and interest in and to all Rents and in and

2    to all payments to or monies held in the Clearing Account, the Deposit Account and all

3    Subaccounts (collectively, the "***Cash Management Accounts***").  Upon an "Event of

4    Default," Secured Creditor is entitled to apply funds in the Cash Management Accounts in

5    any order and in any manner as Secured Creditor shall elect in its discretion.

6    **D.    The Loan Defaults**

7         **1.    Failure to Pay Indebtedness When Due Under the Loan Documents**

8         k.    Commencing on or about May 2020, Secured Creditor contends that an

9    Event of Default by Borrower existed under the Loan Documents as a result of, among

10   other things, Borrower's failure to timely make the full payments due under the Loan

11   Documents.  Accordingly, the Loan went into default on that date.  As a result of

12   Borrower's default, on or about October 21, 2020, Secured Creditor, through its counsel,

13   wrote a letter to Borrower (the "***Demand Letter***") providing formal notice to Borrower of

14   the occurrence of an Event of Default and demanding all amounts due under the Loan.

15        l.    As of the Petition Date, Secured Creditor contends that at least

16   $107,779,709.71 in principal, interest, default interest, late charges, advances,

17   administrative, liquidation and servicing fees and expenses, attorneys' fees, and other

18   costs and expenses is due in accordance with the Loan Documents.

19   **E.    Debtor's Bankruptcy**

20        m.    On April 14, 2021, Debtor filed a voluntary petition for relief under chapter

21   11 of Title 11 of the United States Code.  Debtor is operating and managing the business

22   as debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

23        n.    On April 16, 2021, the Court entered an Interim Order Granting Debtor's

24   Emergency Motion for Entry of an Interim Order, Pending a Final Hearing, Authorizing

25   the Debtor to Use Cash Collateral (the "***Interim Cash Collateral Order***").  Pursuant to the

26   Interim Cash Collateral Order, the Court scheduled a final hearing on Debtor's use of cash

27   collateral for May 11, 2021 at 10:30 a.m.

28        o.    Debtor has represented that all proposed uses of cash collateral described

1  herein and in the attached Budget (as defined below) are for purposes consistent with the

2  Bankruptcy Code and applicable law.

3       **NOW, THEREFORE**, for and in consideration of the mutual promises stated

4  herein, and without waiving any due on encumbrance rights, but subject to approval of the

5  Bankruptcy Court, the following is hereby stipulated and agreed to by and among the

6  parties:

7                              **II.    AGREEMENT**

8       1.    Recitals.  The recitals are incorporated herein by this reference.  The parties

9  agree that the matters set forth in the recitals are true and correct.

10       2.    Use of Cash Collateral.  Until the earlier of August 31, 2021, or entry of an

11  order dismissing this case, or until termination as set forth in paragraph 9 below, Debtor

12  may use cash collateral of Secured Creditor (as such term is defined in Section 363(a) of

13  the Bankruptcy Code, "***Cash Collateral***"), on the following terms and conditions:

14       A.    Subject to further order of the Bankruptcy Court, or as otherwise consented to by

15  Secured Creditor in writing, Cash Collateral may be used by Debtor for only the items identified

16  in the budget ("***Budget***") attached hereto as Exhibit A and incorporated herein by reference, as

17  well as all quarterly fees owing to the Office of the United States Trustee and all expenses owing

18  to the Clerk of the Bankruptcy Court. Notwithstanding approval of the Budget, Debtor shall

19  use such cash collateral only to the extent necessary to satisfy costs actually and

20  necessarily incurred in its operation in the ordinary course of business.  Debtor shall be

21  authorized to use Cash Collateral as provided in this paragraph, provided that it shall not

22  use Cash Collateral in any amount:  (a) in excess of 15% of any line item for any given

23  month; and (b) in excess of 15% of the total aggregate budget for any given month

24  (collectively, the "***Variances***").  Variances may be increased by amounts necessary to

25  fund operation of the Property with Secured Creditor's prior written consent and without

26  further order of the Court.  Any cash collateral not used, spent, or applied as provided

27  above shall be held in Debtor's DIP account(s).  Debtor is not authorized, absent Secured

28  Creditor's prior written consent, to accrue expenses in excess of the amounts provided

1    under the Budget (including the permitted Variances) or this Stipulation regardless of

2    whether cash collateral is available to satisfy such expenses or Debtor believes such

3    expenses to be incurred are in the ordinary course of its business.  Consistent with the

4    Budget, Debtor shall set aside for real estate taxes on a monthly basis, with such funds to

5    be deposited in a separately formed debtor-in-possession bank account that will be used

6    only for real estate taxes. The parties reserve their rights regarding the calculation of the

7    management fee.

8         B.    Debtor shall provide Secured Creditor with no less than five (5) business

9    days' written notice of any proposed use of any funds held by Debtor that will exceed the

10   Variances under the Budget.  If Secured Creditor does not reply within such time period,

11   and if Debtor believes that the circumstances require expending the funds to maintain the

12   collateral appropriately, Debtor is authorized to do so.  If Secured Creditor objects to any

13   such expenditure, Debtor shall not use such funds without further order of the Court or

14   Secured Creditor written consent.

15        C.    Debtor shall provide Secured Creditor with monthly cash flow reports, rent

16   rolls, profit and loss statements, property condition reports (which summarize revenues,

17   expenses, tenant delinquencies, tenant and/or operational issues, capital projects or tenant

18   improvements, if any, and lease renewal discussions each month) and balance sheets in

19   form and content reasonably satisfactory to Secured Creditor, and copies of all Operating

20   Reports as and when filed with the U.S. Trustee's Office.  Not later than fifteen (15) days

21   after the end of each calendar month during the term of this Stipulation, Debtor shall

22   deliver a report to Secured Creditor comparing Debtor's actual revenue and expenditures

23   against the revenue and expenditures as detailed in the Budget.

24        D.    Debtor shall obtain Secured Creditor's prior written approval or approval of

25   the Bankruptcy Court (including Court approval which is deemed obtained pursuant to

26   any streamlined, shortened or modified procedures authorized by the Court) before

27   agreeing to any new lease(s) or lease modification(s) for tenants that have at least 10,000

28   square feet or 10% of the net rentable area, including, but not limited to, any requests for

1  rent abatement, early termination, or rent forbearance.  Debtor shall also maintain

2  adequate insurance for the subject property as required by the Loan Documents, and shall

3  not seek to revise and/or cancel such policy absent Secured Creditor's written consent and

4  the Court's approval.

5        E.      Not later than seven (7) business days following a written request from

6  Secured Creditor, Debtor shall provide, make available and otherwise permit access to

7  such financial and operating information as representatives of Secured Creditor shall

8  reasonably request from time to time and which can reasonably be made available by

9  Debtor, including, without limitation, all books and records relating to the Property and its

10  other collateral.  Representatives of Secured Creditor shall be given access to the

11  Property, as soon as possible after not less than two (2) business days' written notice to

12  Debtor.  Secured Creditor shall be entitled to have its representatives, including

13  appraisers, engineers, surveyors, and/or environmental and other consultants visit and

14  inspect the Property, upon five (5) business days' written or oral notice to Debtor.

15        F.      Cash Collateral may not be used for the payment or reimbursement of any

16  fees or disbursements of counsel for Debtor absent further Order of the Court.

17        G.      Subject to the entry of an order of the Court authorizing Debtor's continued

18  use of cash collateral pursuant to the terms of this Stipulation, Secured Creditor is

19  authorized to receive monthly interest payments at the non-default rate of interest as set

20  forth in the Loan Documents (the "Monthly Interest") on May 15, 2021 and June 15, 2021

21  from the cash management/lockbox accounts at Wells Fargo Bank or reserves

22  (collectively, "Reserves") maintained at PNC Midland.  Debtor shall remit to Secured

23  Creditor Monthly Interest commencing July 15, 2021 from its cash flow unless further

24  ordered by the Court. Secured Creditor shall immediately return and deliver to the Debtor

25  any post-petition rents or other collections that it receives or are deposited or paid into the

26  cash management/lockbox accounts or Reserves, and shall provide, by the 5th of each

27  calendar month (commencing May 5, 2021) monthly accounting of the cash

28  management/lockbox accounts and the Reserves.  Nothing herein shall be deemed or

1    interpreted as a waiver of the Debtor's rights to seek recovery of the monies held in the

2    cash management/lockbox accounts or any of the Reserves or Secured Creditor's rights to

3    seek to set off such accounts or Reserves.

4         3.    Replacement Lien.  Pursuant to Sections 361 and 363 of the Bankruptcy

5    Code, to the extent of the aggregate diminution in value of Secured Creditor's interest in

6    the prepetition collateral, as determined by the Bankruptcy Court, including, without

7    limitation, any such diminution resulting from (i) the imposition of the automatic stay

8    pursuant to Section 362 of the Bankruptcy Code and (ii) Debtor's use of Secured

9    Creditor's prepetition collateral, including Cash Collateral, Secured Creditor is hereby

10   granted the following:

11        A.    A replacement lien in Debtor's assets generated postpetition of the same

12   type and class that comprise Secured Creditor's prepetition collateral (expressly

13   excluding, however, any claims or recoveries of Debtor under Chapter 5 of the

14   Bankruptcy Code) to the extent necessary to prevent diminution in Secured Creditor's

15   prepetition collateral securing the Loan resulting from Debtor's use of Secured Creditor's

16   prepetition collateral (the "***Replacement Lien***"); and

17        B.    To the extent that the Replacement Lien is determined by the Bankruptcy

18   Court to be inadequate to provide adequate protection to Secured Creditor as described

19   above, Secured Creditor shall have a super-priority claim pursuant to Section 507(b) of

20   the Bankruptcy Code.

21        C.    The Replacement Lien and security interest granted herein are valid,

22   enforceable and fully perfected, and no filing or recordation or any other act in accordance

23   with any applicable local, state or federal law is necessary to create or perfect such lien

24   and security interest; provided, however, that upon request of Secured Creditor, Debtor

25   shall execute such security and perfection documentation as may be reasonably required

26   to create or perfect such liens under applicable non-bankruptcy law, including without

27   limitation, UCC-1 financing statements, UCC-3 continuation statements (for existing pre-

28   prepetition security interests), and notices to depository banks.  For the avoidance of

1    doubt, Secured Creditor shall not be required to seek relief from the automatic stay to

2    create or perfect such liens.

3         4.    No Waiver.  Nothing contained in this Stipulation shall be deemed or

4    construed to waive, reduce or otherwise diminish the rights of Secured Creditor or Debtor

5    under the Note or other Loan Documents, or the Bankruptcy Code, including seeking

6    appointment of an examiner and/or trustee, or Debtor's objections thereto.

7         5.    No Impact on Right to Seek Other or Different Relief.  Nothing contained in

8    this Stipulation shall be deemed or construed to waive, reduce or otherwise diminish the

9    rights of Secured Creditor to seek additional or different adequate protection of its

10    interests under the Note and other Loan Documents, to take any other action in this

11    bankruptcy case, including, but not limited to, seeking relief from the automatic stay or

12    dismissal or conversion of this case at any time, or Debtor's defenses or oppositions

13    thereto.  Further, nothing in this Stipulation shall be construed to prevent Debtor from

14    otherwise seeking (on regular, emergency or shortened time basis) to use Secured

15    Creditor's cash collateral in any other or different manner that may be authorized by the

16    Bankruptcy Court.

17         6.    No Admission Regarding Adequate Protection.  Nothing contained in this

18    Stipulation shall be deemed or construed to be an admission by either party that Secured

19    Creditor is or is not adequately protected.

20         7.    Payments and Notices to Secured Creditor.  Any and all payments to be

21    made hereunder shall be made by any of the following three means:

22
                                By Wire:
23                            PNC Bank N.A.
                            ABA#: 043000096
24                  Beneficiary: Midland Loan Services
                          Credit#: 1006967647
25                Reference: Midland's Loan #030311371

26

27

28

By Regular Mail or Overnight Courier:
CWCapital Asset Management LLC
Attn:  Ariel Levin
900 19th Street NW 8th Floor
Washington, DC 20006
Tel: (301) 255-4882

Performance due to Secured Creditor hereunder, including without limitation,

notices, financial reports, and requests for approval of budget modifications, shall be

made to Secured Creditor's servicer at the following address:

CWCapital Asset Management LLC
Attn:  Ariel Levin
900 19th Street NW 8th Floor
Washington, DC 20006
Tel: (301) 255-4882
alevin@cwcapital.com

In addition, copies of all notices or other communications hereunder shall be sent

to Secured Creditor's counsel at the following address:

David M. Neff
Amir Gamliel
Perkins Coie LLP
1888 Century Park East, Suite 1700
Los Angeles, CA  90067
Tel:  (310) 788-9900
Fax:  (310) 788-3399
dneff@perkinscoie.com
agamliel@perkinscoie.com

8.      Default.  If Debtor fails to perform fully and timely any provision, term or

condition of this Stipulation, Debtor shall be in default.  In the event that Secured Creditor

asserts a default by Debtor, it shall give written notice to Debtor of its assertion and that

Secured Creditor does not consent to the use of Cash Collateral.  In the event of default by

Debtor, Debtor's right to use Cash Collateral shall, except as necessary in the business

judgment of Debtor to avoid immediate and irreparable harm to the collateral or otherwise

ordered by the Court, immediately cease upon actual receipt of such notice, and Debtor

shall immediately segregate and account for all remaining Cash Collateral in its

1   possession or thereafter produced.  Notwithstanding the foregoing, in the event Secured

2   Creditor asserts a default hereunder, Debtor shall have five (5) business days after notice

3   from Secured Creditor to cure any such default, and Debtor may file an emergency motion

4   with the Court for use of Cash Collateral.  During the period between such notice of

5   default and any such cure, Debtor may not use any Cash Collateral except as described

6   above.  Notice of any default, or any other notices required to be given hereunder, shall be

7   provided to Debtor by facsimile, electronic, personal or overnight delivery at the

8   following addresses, or at such other address(es) as Debtor may give to Secured Creditor

9   in writing:

10                          Plamex Investment, LLC
                       Attn: Min Chae and Donald Chae
11                        3100 East Imperial Avenue
                            Lynwood, CA 90262
12                        Facsimile: (310) 631-6999

13    In addition, copies of all notices or other communications hereunder shall be sent to:

14
                       Levene, Neale, Bender, Yoo & Brill L.L.P.
15                       Attn: Ron Bender and Monica Y. Kim
                        10250 Constellation Blvd., Suite 1700
16                             Los Angeles, CA 90067
                               Tel:  (310) 229-1234
17                             Fax:  (310) 229-1244
                                  rb@lnbyb.com
18                                myk@lnbyb.com

19

20          9.      Termination.  This Stipulation (including Secured Creditor's consent to use

21   of Cash Collateral except as set forth in paragraph 8) shall terminate at the first to occur of

22   (i) any default, as described in paragraph 8, which is not cured within the five-day cure

23   period described therein; (ii) grant of relief from stay to Secured Creditor or any junior

24   lienholder; (iii) conversion, dismissal or closing of this case, for any reason whatsoever;

25   or (iv) August 31, 2021, unless extended by further Court order or by agreement of the

26   parties hereto.

27

28

1       10.    <u>Binding on Successors</u>.  This Stipulation shall be binding on Secured

2   Creditor and Debtor, and any and all assigns and/or successors-in-interest to any of these

3   persons or entities, including but not limited to, any trustee in a Chapter 11 or 7

4   proceeding if the case is converted, provided that Secured Creditor's consent to the use of

5   Cash Collateral, if any, is subject to earlier termination as set forth herein.

6       11.    <u>No Agreement to Provide Financial Accommodation</u>.  No provision of this

7   Stipulation shall in any way impose upon Secured Creditor any duty or obligation to

8   provide any financing or financial accommodation to Debtor, or any other party, to

9   collect, sell, lease or otherwise dispose of any of Secured Creditor's collateral, to proceed

10  against any party, person, individual or entity, to proceed against or exhaust any security

11  held by Secured Creditor or any other party, person, individual or entity, or to otherwise

12  pursue any action, right or remedy whatsoever in Secured Creditor's power.

13      12.    <u>Extensions</u>.  This Stipulation can be further extended by the parties in

14  writing without further order of the Bankruptcy Court.

15      IN WITNESS WHEREOF, the parties hereto execute this Stipulation, by and

16  through their respective counsel, as of the date set forth opposite their respective

17  signatures.

18                  [*Signature Page Follows*]

19

20

21

22

23

24

25

26

27

28

1

2    DATED:  May 3, 2021    **PERKINS COIE LLP**

3    By: _____
        David M. Neff, IL. Bar No. 6190202
4        (*admitted pro hac vice*)
        DNeff@perkinscoie.com
5        Amir Gamliel, Cal. Bar No. 268121
        AGamliel@perkinscoie.com

6

7    Attorneys for Secured Creditor
    Wells Fargo Bank, National Association,
    as Trustee for Morgan Stanley Capital I
8    Trust 2016-UBS11, Commercial
    Mortgage Pass-through Certificates,
9    Series 2016-UBS11, and on Behalf of the
    Holders of any Related Serviced
10    Subordinate Companion Loan or Serviced
    Companion Loan

11

12    DATED:  May ___, 2021    **LEVENE, NEALE, BENDER, YOO &
                            BRILL L.L.P.**

13

14    By: _____
        Ron Bender, SBN 143364
15        rb@lnbyb.com
        Monica Y. Kim, SBN 180139
16        Myk@lnbyb.com

17

18    Proposed Attorneys for Debtor and Debtor
    in Possession Plamex Investment, LLC

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

Plamex Investment, LLC
25-Week Cash Flow Projection

| | | | | | | | | | | | | | | WEEK ENDING | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week ending=======> | 4/23/2021 | 4/30/2021 | 5/7/2021 | 5/14/2021 | 5/21/2021 | 5/28/2021 | 6/4/2021 | 6/11/2021 | 6/18/2021 | 6/25/2021 | 7/2/2021 | 7/9/2021 | 7/16/2021 | 7/23/2021 | 7/30/2021 | 8/6/2021 | 8/13/2021 | 8/20/2021 | 8/27/2021 | 9/3/2021 | 9/10/2021 | 9/17/2021 | 9/24/2021 | 10/1/2021 | 10/8/2021 |
| BEGINNING CASH BALANCE | - | 333,326.50 | 204,436.19 | 906,986.58 | 715,352.09 | 681,972.26 | 688,642.41 | 1,560,309.75 | 1,520,846.91 | 1,339,595.55 | 1,338,959.07 | 2,208,987.57 | 2,207,690.11 | 1,981,090.14 | 1,981,047.34 | 1,977,929.99 | 2,916,408.96 | 2,802,796.33 | 2,707,734.76 | 2,657,784.76 | 3,594,261.73 | 3,560,786.44 | 3,365,148.36 | 3,365,148.36 | 3,229,085.06 |

**RECEIPTS:**

New bank accounts opened: 333,326.50
Rent Collections:$105,085.87
Operating: $226,451.84
Corp Checking: $1,788.79
Funding from affiliates

Collections:

| | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rent - Retail | | | 618,943.70 | | | | 783,591.32 | | | | 783,591.32 | | | | | 832,565.78 | | | | 832,565.78 | | | | | 881,540.24 |
| Rent - Storage | | | 1,235.00 | | | | 1,520.00 | | | | 1,520.00 | | | | | 1,615.00 | | | | 1,615.00 | | | | | 1,710.00 |
| Net Rental Income | - | - | 620,178.70 | - | - | - | 785,111.32 | - | - | - | 785,111.32 | - | - | - | - | 834,180.78 | - | - | - | 834,180.78 | - | - | - | - | 883,250.24 |

Recoverable Expenses:

| | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CAM Reimbursements | | | 133,245.01 | | | | 163,993.86 | | | | 163,993.86 | | | | | 177,955.79 | | | | 177,955.79 | | | | | 188,423.78 |
| Property Tax Reimbursements | | | 20,791.35 | | | | 25,589.35 | | | | 25,589.35 | | | | | 27,689.97 | | | | 27,689.97 | | | | | 29,318.80 |
| Insurance Reimbursements | | | 7,199.58 | | | | 8,861.02 | | | | 8,861.02 | | | | | 9,638.93 | | | | 9,638.93 | | | | | 10,205.93 |
| Grease Cleaning Reimbursements | | | 114.89 | | | | 141.41 | | | | 141.41 | | | | | 150.25 | | | | 150.25 | | | | | 159.08 |
| Pest Control Reimbursements | | | 127.30 | | | | 156.67 | | | | 156.67 | | | | | 166.46 | | | | 166.46 | | | | | 176.26 |
| Total Recoverable Expenses | - | - | 161,478.13 | - | - | - | 198,742.31 | - | - | - | 198,742.31 | - | - | - | - | 215,601.40 | - | - | - | 215,601.40 | - | - | - | - | 228,283.84 |

Other Tenant Related Income

| | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Advertising & Promotion | | | 10,236.09 | | | | 12,598.26 | | | | 12,598.26 | | | | | 13,061.11 | | | | 13,061.11 | | | | | 13,829.41 |
| Merchant Association Fees | | | 611.00 | | | | 752.00 | | | | 752.00 | | | | | 782.00 | | | | 782.00 | | | | | 828.00 |
| Tenant Ads Signage Income | | | 585.00 | | | | 720.00 | | | | 720.00 | | | | | 765.00 | | | | 765.00 | | | | | 810.00 |
| Advertising Signage-I 105 | | | | 10,280.00 | | | | | | | | | | | | | | | | | | | | | |
| Other Tenant Related Income | - | - | 11,432.09 | - | - | 10,280.00 | 14,070.26 | - | - | - | 14,070.26 | - | - | - | - | 14,608.11 | - | - | - | 14,608.11 | - | - | - | - | 15,467.41 |

Other Income:

| | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wireless Tower Income | | 160.00 | | | | | 160.00 | | | | 160.00 | | | | | 160.00 | | | | 160.00 | | | 160.00 | | |
| Total Other Income | - | 160.00 | - | - | - | - | 160.00 | - | - | - | 160.00 | - | - | - | - | 160.00 | - | - | - | 160.00 | - | - | 160.00 | - | - |
| Total Receipts | - | 160.00 | 793,088.92 | - | - | 10,280.00 | 998,083.90 | - | - | - | 998,083.90 | - | - | - | - | 1,064,550.29 | - | - | - | 1,064,550.29 | - | - | 160.00 | - | 1,127,001.49 |
| Total Receipts | 333,326.50 | 160.00 | 793,088.92 | - | - | 10,280.00 | 998,083.90 | - | - | - | 998,083.90 | - | - | - | - | 1,064,550.29 | - | - | - | 1,064,550.29 | - | - | 160.00 | - | 1,127,001.49 |

**DISBURSEMENTS:**
Direct expenses:

| | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Security Service | | 35,338.00 | | 45.00 | 33,086.00 | | 35,338.00 | 45.00 | 35,338.00 | | 33,086.00 | 45.00 | 35,338.00 | | | 33,086.00 | 45.00 | 35,338.00 | | 35,338.00 | 45.00 | 35,338.00 | | | 33,131.00 |
| Parking Lot Maintenance | | 1,600.00 | | | | | 1,600.00 | | | | 1,600.00 | | | | | 1,600.00 | | | | 1,600.00 | | | | | 1,600.00 |
| Sweeping Service | | | 3,499.00 | | | | | | 3,499.00 | | | | 3,499.00 | | | | | 3,499.00 | | | 3,499.00 | | | | |
| Steam Cleaning | | | 3,000.00 | | | | | | 3,000.00 | | | | 3,000.00 | | | | | 3,000.00 | | | 3,000.00 | | | | |
| Landscape Exterior Service | | 2,000.00 | | | | | 2,000.00 | | | | 2,000.00 | | | | | 2,000.00 | | | | 2,000.00 | | | | | 2,000.00 |
| Landscape Supplies & Tools | | 141.00 | | | | | | | | | | | | | | | | | | | | | | | |
| Pest Control | 660.00 | 226.00 | | | 660.00 | 226.00 | 250.00 | | | | 886.00 | | | | | 1,136.00 | | | | 886.00 | | | | | 1,136.00 |
| Fountain R&M | 1,300.00 | | | | 1,300.00 | | | | | | 1,300.00 | | | | | 1,300.00 | | | | 1,300.00 | | | | | 1,300.00 |
| Monument Signage | 107.20 | 500.00 | 179.49 | | 107.20 | 500.00 | 179.49 | | | | 607.20 | | 179.49 | | | 607.20 | | 179.49 | | 607.20 | | 179.49 | | | 607.20 |
| Equipment Rental | | 105.66 | | | | | 105.66 | | | | 105.66 | | | | | 105.66 | | | | 105.66 | | | | | 105.66 |
| Center Maintenance Payroll | 6,202.57 | 7,000.00 | | | | | 7,000.00 | | | | 7,000.00 | | | | | 7,000.00 | | | | 7,000.00 | | | | | 7,000.00 |
| Signage | | 431.25 | 60.08 | | | | 431.25 | | 60.08 | | 431.25 | | 60.08 | | | 431.25 | | 60.08 | | 431.25 | | 60.08 | | | 431.25 |
| Janitorial | | | 52,985.00 | | | | | 52,985.00 | | | | | 52,985.00 | | | | | 52,985.00 | | | | 52,985.00 | | | |
| Building Repairs & Maintenance | 200.00 | | | | 200.00 | | | | | | 200.00 | | | | | 200.00 | | | | 200.00 | | | | | 200.00 |
| Painting Exterior | 800.00 | | | | 800.00 | | | | | | 800.00 | | | | | 800.00 | | | | 800.00 | | | | | 800.00 |
| Elevator - Contract | | | 6,416.55 | | | | 6,416.55 | | | | 6,416.55 | | | | | 6,416.55 | | | | 6,416.55 | | | | | 6,416.55 |
| HVAC - Contract | | | 200.00 | | | | 1,655.00 | | | | 200.00 | | | | | 200.00 | | | | 200.00 | | 1,455.00 | | | 200.00 |
| Restroom R&M | 200.00 | | | | 200.00 | | | | | | 200.00 | | | | | 200.00 | | | | 200.00 | | | | | 200.00 |
| Fire Alarm & Sprinkler Monitor | 1,350.00 | | | | | | | | | | 1,350.00 | | | | | | | | | - | | | | | 1,350.00 |
| Fire Alarm & Sprinkler Phone | 299.85 | 290.11 | 109.06 | | 299.85 | 290.11 | 109.06 | | 299.85 | | 1,040.11 | 109.06 | | | | 290.11 | 109.06 | | | 290.11 | 109.06 | | | | 1,040.11 |
| Telephone | | | | | | | | | | | 278.64 | | | | | | | | | | | | | | 278.64 |
| Fire & Safety R&M | | 615.00 | | | | | | | | | | | | | | | | | | | | | | | |
| Electrical Parking Lot | | | 2,372.07 | | | | 2,372.07 | | | | 2,372.07 | | | | | 2,372.07 | | | | 2,372.07 | | | | | |
| Electrical Pylon Sign | | | 3,755.32 | | | | 3,755.32 | | | | 3,755.32 | | | | | 3,755.32 | | | | 3,755.32 | | | | | |
| Electrical Canopy Lights | | | 4,709.26 | | | | 4,709.26 | | | | 4,709.26 | | | | | 4,709.26 | | | | 4,709.26 | | | | | |
| Electrical House Meter | | | 21,230.24 | | | | 21,230.24 | | | | 21,230.24 | | | | | 21,230.24 | | | | 21,230.24 | | | | | |
| Gas | | 600.00 | | | | | 600.00 | | | | 600.00 | | | | | 600.00 | | | | 600.00 | | | | | |
| Water - House Meter | | | 12,961.53 | | | | | | | | 12,961.53 | | | | | | | | | | | 12,961.53 | | | |
| Water - Landscape | | | 5,874.67 | | | | | | | | 5,874.67 | | | | | | | | | | | 5,874.67 | | | |
| Water - Fire/Life/Safety | | | | | | 2,230.10 | | | | | | | | | | | | 2,230.10 | | | | | | | |
| Trash Tenants | | 19,166.62 | | | | | 19,166.62 | | | | 19,166.62 | | | | | 19,166.62 | | | | 19,166.62 | | | | | 19,166.62 |
| Advertisement & Promotions | 293.83 | 104.34 | 350.00 | | 293.83 | | 454.34 | | | 293.83 | 104.34 | | 350.00 | | | | 454.34 | | | | 454.34 | | | | |
| Insurance Fire | | 13,277.26 | | | | | 13,277.26 | | | | 13,277.26 | | | | | 13,277.26 | | | | 13,277.26 | | | | | 13,277.26 |
| Management Fees | | 36,604.10 | | | | | 37,422.15 | | | | 37,422.15 | | | | | 37,566.72 | | | | 37,566.72 | | | | | 37,566.72 |
| Post-Petition Utility Deposits | 82,256.06 | | | | | | | | | | | | | | | | | | | | | | | | |
| Sub-total | - | 129,007.51 | 89,277.89 | 111,130.72 | 33,379.83 | 3,567.05 | 125,428.60 | 33,704.78 | 97,112.18 | 593.68 | 127,367.44 | 858.40 | 146,314.66 | - | - | 125,383.37 | 35,505.39 | 95,061.57 | - | 127,385.37 | 33,275.29 | 115,352.77 | - | - | 128,261.35 |

General & Admin Expenses

| | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Phone Local/LD/mobile | | 377.08 | | | | | 377.08 | | | | 377.08 | | | | | 377.08 | | | | 377.08 | | | | | 377.08 |
| Internet | | 42.80 | | | | 42.80 | | | | 42.80 | | | 42.80 | | | | | | | | | | | | |

**Plamex Investment, LLC**
**25-Week Cash Flow Projection**

|  | 4/23/2021 | 4/30/2021 | 5/7/2021 | 5/14/2021 | 5/21/2021 | 5/28/2021 | 6/4/2021 | 6/11/2021 | 6/18/2021 | 6/25/2021 | 7/2/2021 | 7/9/2021 | 7/16/2021 | 7/23/2021 | 7/30/2021 | 8/6/2021 | 8/13/2021 | 8/20/2021 | 8/27/2021 | 9/3/2021 | 9/10/2021 | 9/17/2021 | 9/24/2021 | 10/1/2021 | 10/8/2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week ending========> | | | | | | | | | | | | | | | | | | | | | | | | | |
| Repairs & Maintenance | | | 174.00 | | | | 174.00 | | | | 174.00 | | | | | 174.00 | | | | 174.00 | | | | | 174.00 |
| Electricity | | | | 5,558.06 | | | | 5,558.06 | | | | | 5,558.06 | | | | 5,558.06 | | | | | 5,558.06 | | | |
| Water & Sewer | | | | 2,378.07 | | | | | | | | | 2,378.07 | | | | | | | | | 2,378.07 | | | |
| Office Supplies | | | 200.00 | | | | | 200.00 | | | | 200.00 | | | | | 200.00 | | | | 200.00 | | | | 200.00 |
| Printing | | | | | | | | | | | | | | | | | | | | | | | | | |
| Equipment Rental & Maint | | | 136.88 | | | | 136.88 | | | | 136.88 | | | | | 136.88 | | | | 136.88 | | | | | 136.88 |
| Bank & card charges | | | | 218.46 | | | | | | | | | | | | | | | | | | | | | |
| Courier Service | | | 372.68 | | | | | | | | | | | | | | | | | | | | | | |
| Dues, fees and subscription | | | | | | | | | | | | | | | | | | | | | | | | | |
| Other Office Expenses | | | | | | | | | | | | | | | | | | | | | | | | | |
| Audit & Accounting Fees | | | | | | | | | | | | | | | | | | | | | | | | | |
| Legal-general | | | | | | | | | | | | | | | | | | | | | | | | | |
| Software Maintenance & Support | | | | | | | | | | | | | | | | | | | | | | | | | |
| IT & Computer Consulting | | | | | | | | | | | | | | | | | | | | | | | | | |
| Personal Property | | | | | | | | | | | | | | | | | | | 9,000.00 | | | | | | |
| Registered Agents | | | | | | | | | | | | 239.06 | | | | | | | 1,350.00 | | | | | | |
| LLC Fees | | | | | | | | | | | | | | | | | | | | | | | | | |
| Permits and Licenses | | | | | | | 300.00 | | 11,790.00 | | | | | | | | | | | | | | | | |
| **Sub-total** | - | 42.80 | 1,260.64 | 8,154.59 | - | 42.80 | 987.96 | 5,758.06 | 11,790.00 | 42.80 | 687.96 | 439.06 | 7,936.13 | 42.80 | - | 687.96 | 5,758.06 | - | 10,350.00 | 687.96 | 200.00 | 7,936.13 | - | - | 887.96 |
| **Total Operating Expenses** | - | 129,050.31 | 90,538.53 | 119,285.31 | 33,379.83 | 3,609.85 | 126,416.56 | 39,462.84 | 108,902.18 | 636.48 | 128,055.40 | 1,297.46 | 154,250.79 | 42.80 | - | 126,071.33 | 41,263.45 | 95,061.57 | 10,350.00 | 128,073.33 | 33,475.29 | 123,288.90 | - | - | 129,149.31 |
| **Non-Operating expenses** | | | | | | | | | | | | | | | | | | | | | | | | | |
| Property Tax Reserve | | | | 72,349.18 | | | | | 72,349.18 | | | | 72,349.18 | | | | 72,349.18 | | | | | 72,349.18 | | | |
| Leasing Commissions | | | | | | | | | | | | | | | | | | | | | | | | | |
| TI Allowance | | | | | | | | | | | | | | | | | | | | | | | | 114,078.30 | |
| Capital expenditures-ADA complian | | | | | | | | | | | | | | | | | | | 39,600.00 | | | | | 22,145.00 | |
| US Trustee fees (quarterly payment) | | | | | | | | | | | | | | | 3,117.35 | | | | | | | | | | |
| **Sub-total** | - | - | - | 72,349.18 | - | - | - | - | 72,349.18 | - | - | - | 72,349.18 | - | 3,117.35 | - | 72,349.18 | - | 39,600.00 | - | - | 72,349.18 | - | 136,223.30 | - |
| *Total Disbursements* | - | 129,050.31 | 90,538.53 | 191,634.49 | 33,379.83 | 3,609.85 | 126,416.56 | 39,462.84 | 181,251.36 | 636.48 | 128,055.40 | 1,297.46 | 226,599.97 | 42.80 | 3,117.35 | 126,071.33 | 113,612.63 | 95,061.57 | 49,950.00 | 128,073.33 | 33,475.29 | 195,638.08 | - | 136,223.30 | 129,149.31 |
| *Net Change in Cash Position* | 333,326.50 | (128,890.31) | 702,550.39 | (191,634.49) | (33,379.83) | 6,670.15 | 871,667.34 | (39,462.84) | (181,251.36) | (636.48) | 870,028.50 | (1,297.46) | (226,599.97) | (42.80) | (3,117.35) | 938,478.97 | (113,612.63) | (95,061.57) | (49,950.00) | 936,476.97 | (33,475.29) | (195,638.08) | - | (136,063.30) | 997,852.18 |
| **ENDING CASH POSITION** | $ 333,326.50 | $ 204,436.19 | $ 906,986.58 | $ 715,352.09 | $ 681,972.26 | $ 688,642.41 | $ 1,560,309.75 | $ 1,520,846.91 | $ 1,339,595.55 | $ 1,338,959.07 | $ 2,208,987.57 | $ 2,207,690.11 | $ 1,981,090.14 | $ 1,981,047.34 | $ 1,977,929.99 | $ 2,916,408.96 | $ 2,802,796.33 | $ 2,707,734.76 | $ 2,657,784.76 | $ 3,594,261.73 | $ 3,560,786.44 | $ 3,365,148.36 | $ 3,365,148.36 | $ 3,229,085.06 | $ 4,226,937.24 |

Verification:

| | |
|---|---|
| Beginning Bal. $ | 333,326.50 |
| Receipts | 6,055,958.79 |
| Disbursements | (2,162,348.05) |
| Ending Bal. $ | 4,226,937.24 |