RON BENDER (SBN 143364)
MONICA Y. KIM (SBN 180139)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:  RB@LNBYB.COM; MYK@LNBYB.COM; JYO@LNBYB.COM

Attorneys for Chapter 11 Debtors and
Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re: | Lead Case No.: 8:21-bk-10958-ES |
| PLAMEX INVESTMENT, LLC, a Delaware limited liability company, | Jointly administered with 3100 E. Imperial Investment, LLC (8:21-bk-10957-ES) |
| Debtor and Debtor in  Possession. | Chapter 11 Cases |
| In re: | **DEBTORS' OPPOSITION TO, AND REQUEST FOR HEARING ON, SECURED CREDITOR'S APPLICATION FOR AN ORDER TO TAKE RULE 2004 EXAMINATIONS AND ISSUE DISCOVERY; DECLARATION OF MONICA Y. KIM IN SUPPORT THEREOF** |
| 3100 E. IMPERIAL INVESTMENT, LLC, a Delaware limited liability company, | |
| Debtor and Debtor in Possession. | |
| ☒  Affects both Debtors | [Hearing Requested] |
| ☐ Affects Plamex Investment, LLC only | |
| ☐  Affects 3100 E. Imperial Investment, LLC only | |

Plamex Investment, LLC, a Delaware limited liability company ("Plamex"), and 3100 E. Imperial Investment, LLC, a Delaware limited liability company ("3100," and together with Plamex, the "Debtors"), the debtors and debtors-in-possession in the above-captioned, jointly administered chapter 11 bankruptcy cases, respectfully submit their opposition to *Secured Creditor's Application For An Order To Take Rule 2004 Examinations And Issue Discovery* [Doc. No. 89] (the "2004 Motion") filed by Wells Fargo Bank, National Association, as Trustee for Morgan Stanley Capital I Trust 2016-UBS11, Commercial Mortgage Pass-through Certificates, Series 2016-UBS11, and on Behalf of th4e Holders of any Related Serviced Subordinate Companion Loan or Serviced Companion Loan ("Wells Fargo").

**I.**

**INTRODUCTION**

The relief requested in the 2004 Motion by Wells Fargo, which is a secured creditor of Plamex only and holds no claim whatsoever against 3100, is overly broad, unreasonably burdensome and onerous to the Debtors, and appears to be intended to harass and/or distract the Debtors at a critical juncture in their bankruptcy cases (*i.e.*, just as the Debtors are proceeding with the retention of a real estate broker and commencing a marketing and sale process). Although Wells Fargo has indicated that it intends to object to the Debtors' application to employ NAI Capital Commercial, Inc. ("NAI Capital") as their real estate broker, and the relief requested in the 2004 Motion is presumably based upon such pending objection, the scope of the requested oral examinations (both of them) and document productions reach far beyond the issues raised by the Debtors' application to employ NAI Capital.

The filing of the 2004 Motion by Wells Fargo is particularly troubling given that Plamex has already voluntarily produced many of the documents requested in the 2004 Motion pursuant to an earlier "informal" request from Wells Fargo which listed exactly the same 27 categories of documents listed in Attachment B to the 2004 Motion. In addition, Plamex has been voluntarily providing (and is continuing to provide) extensive monthly financial and operational reporting to Wells Fargo in compliance with the terms of the parties' cash collateral stipulation. Given the large

amount of information and documentation that Plamex has already *voluntarily* produced to Wells Fargo, and given that Wells Fargo has no real risk in these cases since it is protected by a 50%-plus equity cushion in Plaza Mexico (*i.e.*, an equity cushion of more than $60 million, based upon Wells Fargo's own commissioned appraisal), the relief requested in the 2004 Motion is "overkill" and should be denied or, at a minimum, should be limited substantially by the Court.

## II.

## ARGUMENT

**A.    *Wells Fargo Is Not A Creditor Or Party In Interest In 3100's Case And Is Therefore Not Entitled To Examine 3100.***

Although the 2004 Motion indicates that Wells Fargo seeks to examine both of the Debtors, Wells Fargo is a secured creditor of Plamex only and holds no claim whatsoever against 3100.[1] Since Wells Fargo is not a creditor of 3100 or otherwise a "party interest" in 3100's case, Wells Fargo should not be permitted to examine 3100 under Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  *See Bank One, Columbus, N.A. v. Hammond (In re Hammond)*, 140 B.R. 197, 201 (S.D. Ohio 1992) (creditor of debtor is a "party in interest" under Bankruptcy Rule 2004); *In re Summit Corp.*, 891 F.2d 1 (a prospective purchaser of debtor's asset is a "party in interest" under Bankruptcy Rule 2004).

**B.    *Wells Fargo Should Not Be Permitted To Use Bankruptcy Rule 2004 To Obtain Discovery For Use In Its State Court Action Against The Debtors' Principals.***

On May 24, 2021, Wells Fargo filed a complaint against the Debtors' principals, Donald Chae and Min Chae, in the Supreme Court of the State of New York, County of New York (the "State Court Action"), based upon the personal guaranties provided by Donald Chae and Min

---

[1] Pursuant to Rule 201 of the Federal Rules of Evidence ("Evidence Rules"), the Debtors respectfully request that the Court take judicial notice of the *Declaration Of Donald Chae In Support Of Debtor's Emergency Motion For Entry Of An Interim Order, Pending A Final Hearing, Authorizing The Debtor To Use Cash Collateral* [Doc. No. 8] and all exhibits thereto, including, without limitation, the loan agreement between Plamex and Wells Fargo's predecessor-in-interest. The loan agreement and other related documents reflect that Plamex is the sole borrower under the loan described therein (the "Loan"), and that 3100 is neither a borrower under the Loan nor a guarantor of the Loan.

Chae relating to Plamex's obligations under the Loan.  A true and correct copy of the complaint filed by Wells Fargo to commence the State Court Action is attached as **Exhibit 1** hereto.

As noted above, Wells Fargo has no real risk in Plamex's bankruptcy case since it is protected by a large equity cushion in Plaza Mexico, a 403,242 square-foot community shopping center offering specialty retail and dining located in Lynwood, California which is owned by Plamex.  As reflected in the proof of claim filed by Wells Fargo in Plamex's bankruptcy case,[2] Wells Fargo asserts a collective claim of approximately $108,000,000, which claim is secured by a first priority security interest and lien in Plaza Mexico.  Based upon a recent appraisal commissioned by the servicer of the Loan held by Wells Fargo, the fair market value of Plaza Mexico is at least $170,000,000.  Given the value of the Plaza Mexico property (*i.e.*, not less than $170,000,000) and the amount currently owed to Wells Fargo (*i.e.*, approximately $108,000,000), Wells Fargo is adequately protected by an equity cushion of more than $60,000,000, which equates to an equity cushion of more than 50%.  Given this level of protection, and the corresponding lack of risk that Wells Fargo has in Plamex's bankruptcy case, it is unclear why or for what purpose Wells Fargo is seeking to use Bankruptcy Rule 2004 to conduct its "fishing expedition" in these cases.

The timing and breadth of the 2004 Motion suggest that Wells Fargo is attempting to utilize the broad scope of a Rule 2004 examination to obtain information and documentation that it can then use in the State Court Action against the Chaes, a tactic which courts have repeatedly rejected.  *See In re Snyder,* 52 F.3d 1067 (5th Cir. 1995) (district court held that the bankruptcy court did not abuse its discretion in denying production under a Rule 2004 request where the appellant's primary motivation was to use the requested materials in a state court action against the examinee); *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 515-17 (Bankr. E.D.N.Y. 1991) ("Rule 2004 examinations should not be used to obtain information for use in an unrelated case or proceedings pending before another tribunal").

---

[2] Pursuant to Evidence Rule 201. the Debtors respectfully request that the Court take judicial notice of the proof of claim filed by Wells Fargo in Plamex's bankruptcy case, which proof of claim is denominated as Claim Number 1 in the claims register for Plamex.

**C.**  **_The Scope Of The Requested Examinations And Document Productions Is Overly_**
**_Broad, And Unreasonably Burdensome And Onerous._**

"Bankruptcy Judges have significant discretion in deciding whether to allow [a] Bankruptcy Rule 2004 examination." *In re Lewis,* 1994 WL 125201, at *3 (N.D. Cal. Mar. 31, 1994); *In re DeShetler*, 453 B.R. 295, 301 (Bankr. S.D. Ohio 2011) (same). *See also In re J & R Trucking, Inc.*, 431 B.R. 818, 821 (Bankr. N.D. Ind. 2010) ("whether or not the court allows the examination is a matter committed to its discretion … and requires a sufficient cause").

Courts recognize limits including those posed by the debtor's limited resources and do not rubber stamp requests for subpoenas.  It is hornbook law that "a Rule 2004 examination must be both 'relevant and reasonable' and 'may not be used to annoy, embarrass or oppress the party being examined.'"  *In re Farris-Ellison*, 2015 WL 5306600, at *3 (citing *In re Symington,* 209 B.R. 678, 685 (Bankr. D. Md. 1997)).  Wells Fargo's requests, as set forth in the 2004 Motion, are overly broad, unreasonably burdensome and onerous to the Debtors, and appear to be intended to harass and/or distract the Debtors at a critical juncture in their bankruptcy cases, *i.e.*, just as the Debtors are proceeding with the retention of a real estate broker and commencing a marketing and sale process.  Although Wells Fargo has indicated that it will be objecting to the Debtors' application to employ NAI Capital as their real estate broker, which is presumably the impetus for the 2004 Motion, the scope of the requested oral examinations and document productions reaches far beyond the issues raised by the Debtors' application to employ NAI Capital.

The overreaching scope of the examination sought by Wells Fargo is demonstrated by a sampling of the topics listed in Attachment 1 of the 2004 Motion.  Such topics include, among others, "dealings with existing, expiring and/or prospective leases[,]" "Debtors' ability to reorganize[,]" and "claims of Debtors' creditors[.]"  Similarly, the document production requests sought to be approved by the 2004 Motion include, among many others, "[a]ll documents not yet produced that relate to the Debtors' financial condition," "[a]ll documents, including communications, that relate to renewal or extension of leases, forbearances, rent reductions, rent modifications, rent abatement, and/or plans for collecting past-due rent[,]" "[a]ll documents,

including communications, that relate to the Debtors' efforts to secure new or amended leases for the Property[,]" "[a]ll documents, including communications, regarding efforts to lease any vacant spaces at the Property[.]"  While these requests would not be much of an issue if Plamex owned real property with one or a few tenants, Plaza Mexico is comprised of more than 400,000 square feet and currently has ***over 200 tenants***, which figure does not take into account the numerous former tenants and prospective new tenants of Plaza Mexico.  As a result, if the 2004 Motion were to be granted by the Court as requested, the limited personnel available to Plamex (and potentially 3100) would be forced to spend a huge amount of time to potentially produce volumes of documents, which ultimately provide little benefit to Wells Fargo, who as noted above, has no real risk in the Debtors' cases.

A Bankruptcy Rule 2004 exam that is more burdensome to the Debtors than beneficial to the creditor should not be permitted to go forward.  *See, e.g., In re Mathews*, *supra,* 2018 WL 5024167, at **2-3.  A Rule 2004 movant "does not have unlimited power to investigate anything he wishes without articulating a proper basis for the examination." *Id.* (granting motion to quash Rule 2004 subpoena because 2004 exam sought confidential financial information of private third parties) (citing *In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989) ("While the scope of Rule 2004 examination is very broad, it is not limitless. The examination should not be so broad as to be more disruptive and costly to the party sought to be examined than beneficial to the party seeking discovery")); *In re Texaco Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) (the "requested examination should not encompass matters that will be unduly burdensome to the debtor...").

The filing of the 2004 Motion by Wells Fargo is particularly troubling given that Plamex has already requested – and the Debtor has already voluntarily produced – the documents requested in the 2004 Motion pursuant to an earlier "informal" letter request from Wells Fargo (the "WF Letter Request"), which listed exactly the same 27 categories of documents listed in Attachment B to the 2004 Motion.  A true and correct copy of the WF Letter Request dated May 21, 2021 is attached as **Exhibit 2** hereto.  On June 6, 2021, in response to the WF Letter Request, the Debtor provided Wells Fargo with an electronic data link containing twenty (20) separate folders with responsive

documents and information, organized and enumerated by the request numbers set forth in the WF Letter Request.  It is therefore confounding that Wells Fargo has filed its 2004 Motion, which contains the exact same 27 categories of documents listed in the WF Letter Request (to which the Debtors had already provided a comprehensive response).  The duplicate document request sought by the 2004 Motion would be of little benefit to Wells Fargo (since it has already received responsive documents from the Debtors) and would only place an additional heavy burden on already overburdened debtors.

The 2004 Motion includes one additional category of documents that was not included in the WF Letter Request – "[a]ny correspondence with potential brokers (including, but not limited to NAI Capital Commercial) relating to a retention or agreement to sell the Property."  The Debtors have previously offered to have Wells Fargo and its agents interview Chris Jackson, who is a principal of NAI Capital and one of the brokers who will be responsible for representing the Debtors in connection with the marketing and sale of Plaza Mexico.  To date, Wells Fargo has declined to take the Debtors up on that offer, which calls into question whether Wells Fargo is actually looking to obtain the information that it claims it is seeking pursuant to the 2004 Motion or whether Wells Fargo has a different motive in bringing the 2004 Motion.

Furthermore, Plamex has been voluntarily providing (and is continuing to provide) extensive monthly financial and operational reporting to Wells Fargo in compliance with the terms of the parties' cash collateral stipulation.  The monthly reporting package provided to Wells Fargo includes, among other documents, (i) consolidated balance sheet as of the ending date of the month; (ii) consolidated statement of operations for the calendar year to date; (iii) accounts receivable aging report (which tracks four months of accounts receivable activity); (iv) monthly rent collections report; (v) open accounts payable report; and (vi) monthly bank statements for all of the bank accounts maintained by the Debtors.

Given the large volume of information and documentation that the Debtors have already ***voluntarily*** produced to Wells Fargo in response to Wells Fargo's earlier duplicative request, given that Wells Fargo has no real risk in these cases since it is protected by a very large equity cushion in

Plaza Mexico, and given the onerous, disruptive, and time-consuming nature of Wells Fargo's overly broad request for examinations and documents, the Debtors request that the Court exercise its discretion to deny the 2004 Motion in its entirety or, alternatively, to substantially limit the scope of the requested examinations and documents requested by Wells Fargo in the 2004 Motion.

## III.

## CONCLUSION

Based upon the foregoing, the Debtors respectfully request that this Court enter an order:

(1)    denying the 2004 Motion or, alternatively, setting a hearing on the 2004 Motion to consider the permissible scope of the examinations and document productions requested in the 2004 Motion; and

(2)    granting such further relief as the Court deems just and proper.

Dated:  June 18, 2021

PLAMEX INVESTMENT, LLC
3100 E. IMPERIAL INVESTMENT, LLC


By:___/s/ Juliet Y. Oh_____
       RON BENDER
       MONICA Y. KIM
       JULIET Y. OH
       LEVENE, NEALE, BENDER, YOO
         & BRILL L.L.P.
       Attorneys for Chapter 11 Debtors and
       Debtors-in-Possession

### DECLARATION OF MONICA Y. KIM

I, Monica Y. Kim, hereby declare as follows:

1.       I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto. Capitalized terms not otherwise defined herein shall have the same meanings ascribed to such terms in the "Debtors' Opposition To, And Request For Hearing On, Secured Creditor's Application For An Order To Take Rule 2004 Examinations And Issue Discovery" to which this Declaration is attached.

2.       I am a partner of the law firm of Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB"), bankruptcy counsel of record for Plamex Investment, LLC, a Delaware limited liability company ("Plamex"), and 3100 E. Imperial Investment, LLC, a Delaware limited liability company ("3100," and together with Plamex, the "Debtors"), the debtors and debtors-in-possession herein.  I am an attorney licensed to practice law in the State of California, in the United States District Court and the Bankruptcy Courts for the Southern, Central, Northern and Eastern Districts of California, and in the United States Court of Appeals for the Ninth Circuit.

3.       I am advised and believe that, on May 24, 2021, Wells Fargo filed a complaint against the Debtors' principals, Donald Chae and Min Chae, in the Supreme Court of the State of New York, County of New York (the "State Court Action"), based upon the personal guaranties provided by Donald Chae and Min Chae relating to Plamex's obligations under the Loan.  A true and correct copy of the complaint filed by Wells Fargo to commence the State Court Action is attached as **Exhibit 1** hereto.

4.       On May 21, 2021, I received the letter attached **Exhibit 2** hereto from counsel for Wells Fargo (the "WF Letter Request"), which letter requested 27 categories of information and documents, which appear to be identical to the categories of documents listed in Attachment B to Wells Fargo's 2004 Motion.

5.       On June 6, 2021, in response to the WF Letter Request, I sent an email to counsel for Wells Fargo with an electronic data link provided by the Debtor, which contained twenty (20)

separate folders with responsive documents and information, organized and enumerated by the request numbers set forth in the WF Letter Request.

6.    Our office relayed to Wells Fargo's counsel the Debtors' offer to have Wells Fargo and its agents interview Chris Jackson, who is a principal of NAI Capital and one of the brokers who will be responsible for representing the Debtors in connection with the marketing and sale of Plaza Mexico.  To date, Wells Fargo has declined to take the Debtors up on that offer.

7.    In addition, Plamex has been voluntarily providing (and is continuing to provide) extensive monthly financial and operational reporting to Wells Fargo in compliance with the terms of the parties' cash collateral stipulation.  The monthly reporting package provided to Wells Fargo includes, among other documents, (i) consolidated balance sheet as of the ending date of the month; (ii) consolidated statement of operations for the calendar year to date; (iii) accounts receivable aging report (which tracks four months of accounts receivable activity); (iv) monthly rent collections report; (v) open accounts payable report; and (vi) monthly bank statements for the bank accounts maintained by the Debtors.  I forwarded to Wells Fargo's counsel the most recent monthly reporting package (covering the month of May, 2021) on June 15, 2021.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of June, 2021, at Los Angeles, California.



MONICA Y. KIM

# EXHIBIT "1"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK - COMMERCIAL DIVISION

| | |
|---|---|
| Wells Fargo Bank, National Association, as Trustee for Morgan Stanley Capital I Trust 2016-UBS11, Commercial Mortgage Pass-through Certificates, Series 2016-UBS11, and on Behalf of the Holders of any Related Serviced Subordinate Companion Loan or Serviced Companion Loan, <br><br> Plaintiff, <br><br> v. <br><br> DONALD CHAE, an individual; and MIN CHAE, an individual, <br><br> Defendants. | Index No. _____ <br><br> **SUMMONS** |

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve

a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a

Notice of Appearance, on the plaintiff's attorneys within twenty (20) days after the

service of this Summons, exclusive of the day of service (or within thirty (30) days after

the service is complete if this Summons is not personally delivered to you within the

State of New York). In case of failure to appear or answer, judgment will be taken

against you by default for the relief demanded in the Complaint.

DATED: May 24, 2021

**PERKINS COIE LLP**

By: *Jeffrey D. Vanacore*

        Jeffrey D. Vanacore, Esq.
        1155 Avenue of the Americas, 22nd
        Floor
        New York, New York 10036-2711
        Jvanacore@perkinscoie.com

        Amir Gamliel, Esq. (*pro hac vice*
        *forthcoming*)
        633 W. 5th Street, Suite 5850
        Los Angeles, California 90071
        AGamliel@perkinscoie.com

        *Attorneys for Plaintiff*
        *Wells Fargo Bank, National Association,*
        *as Trustee for Morgan Stanley Capital I*
        *Trust 2016-UBS11, Commercial*
        *Mortgage Pass-through Certificates,*
        *Series 2016-UBS11, and on Behalf of the*
        *Holders of any Related Serviced*
        *Subordinate Companion Loan or Serviced*
        *Companion Loan*

TO:

Donald Chae
2200 Sherwood Road
San Marino, California 91108

Defendant Min Chae
8790 Los Coyotes Drive
Buena Park, California 90621

Lim, Ruger & Kim LLP
1055 West Seventh Street, 28th Floor
Los Angeles California 90017
Attn. John Lim, Esq.

-2-

152300414.6

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK - COMMERCIAL DIVISION

|  |  |
|---|---|
| Wells Fargo Bank, National Association, as Trustee for Morgan Stanley Capital I Trust 2016-UBS11, Commercial Mortgage Pass-through Certificates, Series 2016-UBS11, and on Behalf of the Holders of any Related Serviced Subordinate Companion Loan or Serviced Companion Loan, <br><br>                Plaintiff, <br><br>    v. <br><br> DONALD CHAE, an individual; and MIN CHAE, an individual, <br><br>                Defendants. | Index No. _____ <br><br> **COMPLAINT FOR BREACH OF CONTRACT [FULL RECOURSE LIABILITY]** |

Plaintiff Wells Fargo Bank, National Association, as Trustee for Morgan Stanley Capital I Trust 2016-UBS11, Commercial Mortgage Pass-through Certificates, Series 2016-UBS11, and on Behalf of the Holders of any Related Serviced Subordinate Companion Loan or Serviced Companion Loan ("***Plaintiff***") alleges as follows:

## INTRODUCTION

1.    Plaintiff brings this action to require defendants Donald Chae, an individual, and Min Chae, an individual (each, a "***Defendant***" and collectively, "***Defendants***") to honor their obligations under that certain Guaranty of Recourse Obligations dated as of June 16, 2016 (the "***Recourse Guaranty***"). A true and correct copy of the Recourse Guaranty is attached hereto and incorporated by reference herein as Exhibit A.

2.    On April 14, 2021, Plamex Investment, LLC ("***Borrower***") filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "***Bankruptcy Petition***") in the United States Bankruptcy Court for the Central District of

-3-

California, Santa Ana Division, in the case captioned *In re Plamex Investment, LLC*, Case No. 8:21-BK-10958-ES (the "***Bankruptcy Case***").

3.      The Loan (as defined herein) is a full recourse obligation of Defendants pursuant to Section 2 of the Recourse Guaranty and Section 10.1 of the Loan Agreement. Specifically, Section 2(a) of the Recourse Guaranty provides that "Guarantor hereby irrevocably, absolutely and unconditionally guarantees to Lender the full, prompt and complete payment when due of the Guaranteed Obligations." "Guarantee Obligations" in turn is defined in the Recourse Guaranty to mean: "(i) Borrower's Recourse Liabilities, (ii) from and after the date that any Springing Recourse Event occurs, payment of all the Debt, and (iii) the due and punctual payment in full (and not merely the collectability) of an amount equal to any PACE Loan obtained by Borrower or secured by the Property."

4.      Section 10.1 of the Loan Agreement defines "Springing Recourse Event" to include, pursuant to Section 8.1(g) of the Loan Agreement, "any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, Borrower, Borrower Representative or Guarantor, as the case may be…" Thus, Borrower's Bankruptcy Petition triggered Defendants' full recourse liability ("***Full Recourse Liability***") for all obligations and liabilities due under the Loan.

5.      As of April 14, 2021, Borrower owed Plaintiff damages at least $107,750,632.86 in principal, interest, default interest, late charges, advances, administrative, liquidation and servicing fees and expenses, attorneys' fees, and other costs and expenses in accordance with the Loan Documents (defined below) and will owe Plaintiff post-judgment interest at the default rate, costs and attorneys' fees (the "***Outstanding Loan Amount***").

6.      Pursuant to the Full Recourse Liability, Defendants owe Plaintiff an amount equal to the Outstanding Loan Amount.

-4-

7.      Defendants have failed to provide Plaintiff with the payment required under the Full Recourse Liability.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the Defendants pursuant to CPLR §§ 301 and 302 and Section 9 of the Recourse Guaranty which states that Defendants have agreed to submit to the jurisdiction of the courts of the State of New York and the United States District Court located New York County.  Defendants have further waived any objections that they may have relating to venue, inconvenience of forum or jurisdiction.

9.      Venue in this Court is proper pursuant to CPLR § 509 and the Recourse Guaranty, Section 9.

10.     The real property securing the Loan (as defined below) is located in Los Angeles County at 3100 East Imperial Highway, Lynwood, California 90262 and is more particularly described in Exhibit B attached hereto and incorporated herein by this reference (the "*Property*").

## PARTIES

11.     Plaintiff or its predecessor has been the holder, lender and the guaranteed party with respect to the Notes (as defined below) and the Recourse Guaranty since each was executed.

12.     Plaintiff is informed and believes and thereupon alleges that Defendant Donald Chae is an individual with a residence and principal place of business located at 2200 Sherwood Road, San Marino, California 91108.

13.     Plaintiff is informed and believes and thereupon alleges that Defendant Min Chae is an individual with a residence and principal place of business located at 8790 Los Coyotes Drive, Buena Park, California 90621.[1]

## THE LOAN AND GUARANTY

---

[1] The Recourse Guaranty also requests notice for both Guarantors be sent to their attorney Lim, Ruger & Kim LLP, 1055 West Seventh Street, 28th Floor, Los Angeles California 90017. Attn. John Lim, Esq.

-5-

152300414.6

14.     On or about June 16, 2016, Natixis, New York Branch, a direct branch of Natixis S.A., a société anonyme à conseil d'administration (public limited company) organized and existing under the laws of France ("***Original Lender***") made a $106,000,000.00 loan (the "***Loan***") to Borrower. The Loan is evidenced by, among other instruments: (i) a Loan Agreement dated as of June 16, 2016 (the "***Loan Agreement***"), between the Borrower and Original Lender, (ii) a Promissory Note dated June 16, 2016, executed by the Borrowers in favor of Original Lender in the original principal sum of $106,000,000.00 (the "***Note***") and (iii) Replacement Promissory Note A-1 for $28,000,000.00, Replacement Promissory Note A-2 for $20,000,000.00, Replacement Promissory Note A-3 for $20,000,000.00, Replacement Promissory Note A-4 for $20,000,000.00, Replacement Promissory Note A-5 for $10,000,000.00 and Replacement Promissory Note A-6 for $8,000,000.00 (collectively, the "***Notes***"). CWCapital Asset Management, LLC is the special servicer of all of the Notes, including the A-2 and A-3 Notes, which are held by Wells Fargo Bank, National Association, as Trustee for Morgan Stanley Capital I Trust 2016-UBS11, Commercial Mortgage Pass-Through Certificates, Series 2016-UBS11 (the "***Lead Trust***"). True and correct copies of the Loan Agreement and the Notes are attached hereto as <u>Exhibits C</u> and <u>D</u>, and incorporated herein by this reference.

15.     The Loan is secured by, among other things: (i) a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of June 16, 2016 (the "***Deed of Trust***"), executed by the Borrower, as trustor, in favor of Stewart Title of California, Inc., as trustee, for the benefit of Original Lender, as beneficiary; and (ii) an Assignment of Leases and Rents, dated June 16, 2016 (the "***Assignment of Rents***") executed by the Borrower, as assignor, in favor of Original Lender, as assignee. True and correct copies of the Deed of Trust and the Assignment of Rents are attached hereto as <u>Exhibits E</u> and <u>F</u>, and incorporated herein by this reference.

16.     The Notes, the Deed of Trust, the Assignment of Rents, and all other

documents evidencing, securing or relating to the Loan are sometimes collectively referred to herein as the "**Loan Documents**."

17.     As a condition to Plaintiff making the Loan, Plaintiff required Defendants to guaranty payment and performance of the Loan pursuant to the Recourse Guaranty. Defendants represented that as holders of direct or indirect beneficial interests in Borrower, the Loan to Borrower provided a substantial benefit to them.  Accordingly, Defendants agreed to guaranty payment to Lender of all amounts for which Borrower is personally liable and for which Plaintiff has recourse against Borrower under the Note. Defendants acknowledged the receipt and sufficiency of good and valuable consideration in entering into the Recourse Guaranty.  Defendants further acknowledged that Defendants' liability under the Recourse Guaranty shall be direct and immediate, and not conditional or contingent upon pursuing any remedies against Borrower or against the collateral for the Loan.

### THE LOAN AND GUARANTY ARE ASSIGNED TO PLAINTIFF

18.     Effective as of June 16, 2016, Original Lender assigned the Loan Documents to Natixis Real Estate Capital LLC, a Delaware limited liability company ("**NREC**"), pursuant to (i) an Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "**NREC Assignment of DOT**"); (ii) an Assignment of Assignment of Leases and Rents (the "**NREC Assignment of ALR**"); and (iii) an Assignment of Loan Documents made and entered into as of June 20, 2016.  In addition, Original Lender endorsed the Notes in favor of NREC pursuant to Allonges A-1 through A-6 (the "**NREC Allonges**").  True and complete copies of the NREC Assignment of DOT, NREC Assignment of ALR, and NREC Allonges are attached hereto as Exhibits G,  H, and I, respectively, and incorporated herein by this reference.

19.     Effective as of August 25, 2016, NREC assigned the Loan Documents to Plaintiff pursuant to (i) an Assignment of Deed of Trust, Assignment of Leases and

-7-

Rents, Security Agreement and Fixture Filing (the "***Plaintiff Assignment of DOT***");
(ii) an Assignment of Assignment of Leases and Rents (the "***Plaintiff Assignment of ALR***"); and (iii) General Assignment of the Loan Documents. In addition, NREC endorsed the Notes in favor of Plaintiff pursuant to Allonges A1 through A-6 (the "***Plaintiff Allonges***").[2] True and complete copies of the Plaintiff Assignment of DOT, the Plaintiff Assignment of ALR, and the Plaintiff Allonges are attached hereto as Exhibits J, K and L, respectively, and incorporated herein by this reference.

20.    Accordingly, Plaintiff is now the holder of the Notes, beneficiary under the Deed of Trust and secured party and/or assignee under all of the other Loan Documents.

### THE LOAN DEFAULTS

21.    Pursuant to the Loan Documents, Borrower promised to pay to Plaintiff monthly payments of interest by the fifth day of each month commencing on August 5, 2016, with the principal balance, along with all accrued but unpaid interest and other charges due and payable on July 5, 2021 (the "***Maturity Date***").

22.    Section 8.1(a) of the Loan Agreement provides that an "Event of Default" shall occur if Borrower fails to pay any portion of the Debt (as defined therein) when due.

23.    Commencing in or about May 2020, an Event of Default by Borrower existed under the Loan Documents as a result of, among other things, Borrower's failure to timely make the full payments due under the Loan Documents. Accordingly, the Loan went into default on that date. As a result of Borrower's default, on or about October 21, 2020, Plaintiff, through its counsel, wrote a letter to Borrower (the "***Demand Letter***"), with a copy to Defendants, providing formal notice to Borrower of the occurrence of an Event of Default and demanding all amounts due under the Loan. A true and complete

---

[2] Allonges for Replacement Promissory Notes A-1 and A-6 were endorsed in favor of Wilmington Trust, National Association, as Trustee for the Benefit of the Registered Holders of SG Commercial Mortgage Securities Trust 2016-C5, Commercial Mortgage Pass-through Certificates, Series 2016-C5. Allonges to Replacement Promissory Notes A-2 and A-3 were endorsed in favor of the Lead Trust. Allonges for Replacement Promissory Notes A-4 and A-5 were endorsed in favor of Wilmington Trust, National Association, as Trustee for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust 2016-NXS6, Commercial Mortgage Pass-through Certificates, Series 2016-NXS6. Pursuant to that certain Co-Lender Agreement, Plaintiff is vested with the authority to pursue any and all enforcement actions, including in connection with or related to the Notes and Recourse Guaranty.

-8-

copy of the Demand Letter is attached hereto as <u>Exhibit M</u> and incorporated herein by this reference.

24.      Since receiving the Demand Letter, Borrower has failed to pay all amounts due under the Loan.

25.      As of April 14, 2021, at least $107,750,632.86 in principal, interest, default interest, late charges, advances, administrative, liquidation and servicing fees and expenses, attorneys' fees, and other costs and expenses is due in accordance with the Loan Documents.  A true and correct copy of Plaintiff's Proof of Claim filed in the Bankruptcy Case and evidencing the amount owed under the Full Recourse Liability as of April 14, 2021 is attached hereto as <u>Exhibit N</u> and incorporated herein by this reference.

26.      On April 14, 2021, Borrower filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code.  A true and correct copy of the Bankruptcy Petition is attached hereto as <u>Exhibit O</u> and incorporated herein by this reference.

### GUARANTORS' OBLIGATIONS AND DEFAULTS

27.      Defendants entered into the Recourse Guaranty for valuable consideration, as each Defendant has or had a direct or indirect ownership interest in Borrower and received a substantial benefit from the extension of the Loan to Borrower, as set forth in the recitals to the Recourse Guaranty.

28.      Pursuant to Section 2 of the Recourse Guaranty, Defendants unconditionally and irrevocably guaranteed payment of and agreed to pay, all of the Debt from and after the date that any Springing Recourse Event occurs.  The Loan is a full recourse obligation of Defendants, which was triggered by Borrower's bankruptcy filing.

29.      Section 2(c) of the Recourse Guaranty provides that Defendants shall pay all reasonable attorneys' fees and all other costs and expenses incurred by Plaintiff should it become necessary for Plaintiff to retain an attorney or any other consultants to enforce

-9-

the Recourse Guaranty or the other Loan Documents.

    30.    By letter dated May 11, 2021, (the "*Guarantor Demand Letter*"), Plaintiff made demand on Defendants under the Recourse Guaranty. Notwithstanding such demand, Defendants have failed and refused to make any payment whatsoever under the Recourse Guaranty. A true and complete copy of the Guarantor Demand Letter is attached hereto as <u>Exhibit P</u> and incorporated herein by this reference.

    31.    More than $107,750,632.86 in principal, interest, default interest, late charges, advances, administrative, liquidation and servicing fees and expenses, attorneys' fees, and other costs and expenses is due in accordance with the Loan Documents pursuant to the Full Recourse Guaranty.

## FIRST CAUSE OF ACTION

### (Breach of Recourse Guaranty - Full Recourse Liability)

    32.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 31 above as if fully repeated and set forth herein.

    33.    Original Lender fulfilled its obligations under the Loan Documents by, among other things, providing the Loan proceeds to Borrower on or about June 16, 2016.

    34.    The Recourse Guaranty is a valid contract.

    35.    The Recourse Guaranty was supported by adequate consideration.

    36.    The Recourse Guaranty required that each Defendant provide Plaintiff with timely payment of the Full Recourse Liability upon Borrower filing a Bankruptcy Petition.

    37.    The Recourse Guaranty is a guaranty of payment and not of collection and Plaintiff is not required to enforce its rights against the Property or otherwise seek to collect from Borrower's bankruptcy estate prior to collecting from Defendants.

    38.    Plaintiff sought timely payment from Defendants of the Full Recourse Liability under the Recourse Guaranty.

    39.    Defendants breached the Recourse Guaranty when they failed to provide

-10-

payment of the Full Recourse Liability after proper demand by Plaintiff.

40.    Defendants' breach of the Recourse Guaranty and refusal to pay Plaintiff the amounts it is contractually entitled and for which it bargained has harmed Plaintiff.

41.    Under the terms of the Recourse Guaranty, Defendants agreed to pay all reasonable attorneys' fees and all other costs and expenses incurred by Plaintiff should it become necessary for Plaintiff to retain an attorney or any other consultants to enforce the Recourse Guaranty or the other Loan documents.

## SECOND CAUSE OF ACTION
### (Full Enforcement of Recourse Guaranty)

42.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 41 above as if fully repeated and set forth herein.

43.    As described above, Plaintiff is entitled to immediate payment of all amounts due under the Recourse Guaranty in the amounts described herein.

44.    Defendants directly benefitted from the Plaintiff's making the Loan.

45.    Defendants have failed to perform their contractual obligations as more fully described herein.

46.    By reason of the facts set forth above, Plaintiff is entitled to enforcement of its rights and remedies against the Guarantors arising under the Recourse Guaranty, at law and in equity, including without limitation, judgment in the amount of Guarantors' Full Recourse Liability which is no less than $107,750,632.86.

## THIRD CAUSE OF ACTION
### (Accounting)

47.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 46 above as if fully repeated and set forth herein.

48.    As a result of the Recourse Guaranty, Paragraph 6(b), Defendants are required to maintain certain financial reserves, to wit:

-11-

Until all of the Guaranteed Obligations have been paid in full, <u>Guarantor (i) shall maintain, in the aggregate, a Net Worth in excess of $60,000,000.00 and shall maintain, in the aggregate, Liquid Assets in excess of $6,000,000.00 (no more than $3,000,000.00 of which may be in the form of cash held in unencumbered bank accounts of businesses that are majority owned and controlled by Guarantor, up to the Guarantor's proportional percentage of ownership interest in such businesses)</u>, and (ii) shall not sell, pledge, mortgage or otherwise transfer any of its assets, or any interest therein, on terms materially less favorable than would be obtained in an arms-length transaction.

49.    Defendants have not provided Plaintiff a personal financial statement.

50.    Upon information and belief, Defendants have breached Paragraph 6(b) of the Recourse Guaranty.

51.    Because Defendants have not complied with Paragraph 6(b), Plaintiff is left to speculate as to whether Defendants have complied with their financial obligations.

52.    Plaintiff is contractually entitled to an accounting to determine if Defendants have complied with Paragraph 6(b) of the Resource Guaranty.

53.    A demand for a full accounting of the Net Worth requirements is hereby made.

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment)

54.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 53 above as if fully repeated and set forth herein.

55.    The Recourse Guaranty is a valid and enforceable agreement.

56.    Because this is a justiciable controversy, Plaintiff is entitled to a declaration from this Court that all causes of action herein have been satisfied.

## FIFTH CAUSE OF ACTION
### (Levy and Foreclosure of Liquid Assets and Net Worth)

57.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 56 above as if fully repeated and set forth herein.

152300414.6

FILED: NEW YORK COUNTY CLERK 05/24/2021 06:14 PM INDEX NO. 653404/2021
NYSCEF DOC. NO. 1

Case 8-20-08041-ast   Doc 33   Filed 06/20/21   Entered 06/20/21 18:13:50   Desc
Main Document      Page 24 of 31                     RECEIVED NYSCEF: 05/24/2021

58.     Pursuant to the Recourse Guaranty, Defendants agreed to maintain a Net Worth of $60,000,000 and Liquid Assets, as those terms are defined in the Recourse Guaranty at Section 6(b), in the amount of not less than $6,000,000.

59.     Plaintiff seeks a Judgment of this Court for the Full Recourse Liability and seeks to execute on that Judgment and foreclose and levy on Defendants' Liquid Assets and all assets making up the Net Worth of Defendants.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

**ON THE FIRST CAUSE OF ACTION**

A.     That the Court enter a judgment against Defendants jointly and severally and in favor of Plaintiff for the Full Recourse Liability in the amount for which Borrower is liable pursuant to the Notes and the other Loan Documents, together with pre-judgment and post-judgment interest;

**ON THE SECOND CAUSE OF ACTION**

B.     Compelling full and complete compliance with the Recourse Guaranty.

**ON THE THIRD CAUSE OF ACTION**

C.     Compelling Defendants to provide an accounting of the financial reserves required by Paragraph 6(b) of the Recourse Guaranty.

**ON THE FOURTH CAUSE OF ACTION**

D.     A declaratory judgment that all causes of action are sustained in favor of the Plaintiff.

**ON THE FIFTH CAUSE OF ACTION**

E.     An Order of this Court directing the levy on Liquid Assets and all assets comprising the Net Worth of Defendants.

-13-

Case 1-19-41636 Filed 05/24/2021 Entered 05/20/21 18:13:50 Desc

## ALL CAUSES OF ACTION

F.      For reasonable attorneys' fees and costs incurred herein, together with pre-judgment and post-judgment interest; and

G.      For such other and further relief as the Court may deem just and proper.

DATED: May 24, 2021          **PERKINS COIE LLP**

By: *Jeffrey D. Vanacore*
                Jeffrey D. Vanacore, Esq.
                1155 Avenue of the Americas, 22nd
                Floor
                New York, New York 10036-2711
                Jvanacore@perkinscoie.com

                Amir Gamliel, Esq. (*pro hac vice forthcoming*)
                633 W. 5th Street, Suite 5850
                Los Angeles, California 90071
                AGamliel@perkinscoie.com

                *Attorneys for Plaintiff*
                *Wells Fargo Bank, National Association, as Trustee for Morgan Stanley Capital I Trust 2016-UBS11, Commercial Mortgage Pass-through Certificates, Series 2016-UBS11, and on Behalf of the Holders of any Related Serviced Subordinate Companion Loan or Serviced Companion Loan*

-14-

152300414.6

# EXHIBIT "2"

# PERKINSCOIE

1888 Century Park East          **T** +1.310.788.9900
Suite 1700                      **F** +1.310.788.3399
Los Angeles, CA 90067-1721      PerkinsCoie.com

May 21, 2021

Amir Gamliel
AGamliel@perkinscoie.com
D.  +1.310.788.3276
F.  +1.310.843.1246

**VIA E-MAIL**

Monica Kim, Esq.
Levene, Neale, Bender, Yoo & Brill L.L.P.
C/O Monica Y. Kim
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067

**Re:      In re Plamex Investment, LLC, Case No. 8:21-bk-10958
            In re 3100 E. Imperial Investment, LLC, Case No. 8:21-bk-10957**

Dear Monica,

      As you know, this firm represents Wells Fargo Bank, National Association, as Trustee for Morgan Stanley Capital I Trust 2016-UBS11, Commercial Mortgage Pass-Through Certificates, Series 2016-UBS11, and on Behalf of the Holders of any Related Serviced Subordinate Companion Loan or Serviced Companion Loan (the "Lender"), in the jointly administered chapter 11 cases of Plamex Investment, LLC and 3100 E. Imperial Investment, LLC (together, the "Debtors"). To that end, and consistent with Lender's rights under Sections 2.C. and 2.E. of the *Stipulation Regarding Use of Cash Collateral* [ECF No. 71, Ex. A], we request that the Debtors produce the following information and documents to us in a mutually agreeable time frame no longer than two weeks from today:

    1.    All documents not yet produced that relate to the Debtors' financial condition, such as monthly cash flow reports, profit and loss statements, balance sheets, tax returns, bank statements, rent rolls, operating reports, and accounts payable and accounts receivable aging schedules for 2021.

    2.    All documents, including correspondence, that relate to the note receivable from Source at Beach, LLC in the amount of $10,395,409, as identified in the ISLT Investment, LLC and Subsidiaries Consolidated (Unaudited) Balance Sheet dated April 30, 2021 (the "April Balance Sheet").

    3.    All documents, including correspondence, that relate to the $71,192,658 that is "due from affiliates" and is identified as an "other asset" in the April Balance Sheet.

4.      All documents, including correspondence, that relate to the $18,000,000 "Members' equity subject to mandatory redemption" that is scheduled as a liability in the April Balance Sheet.

5.      All pre-petition and post-petition budgets, including drafts of budgets, prepared by the Debtors for 2020 and 2021.

6.      All non-privileged documents, including correspondence, that relate to, or provide evidence of, the Debtors' efforts to obtain refinancing, third-party investors, and/or buyers in connection with the Plaza Mexico shopping center (the "<u>Property</u>").

7.      All documents, including correspondence, that relate to the value of the Property, or any portion thereof, including any appraisal reports and/or broker's opinions of value.

8.      All documents, including correspondence, that relate to the possible retention of any loan broker or real estate broker or agent by the Debtors.

9.      All documents, including correspondence, that relate to a potential sale of the Property, including, but not limited to, any listing, offering memorandum, letter of intent, memorandum of understanding, or similar documents relating to any sale, investment in, or refinancing of the Property.

10.     A detailed breakdown of monthly revenue generated by leases on the Property in 2021 that identifies base rent, percentage rent, reimbursable revenue, CAM payments, and other revenue sources recoverable under the leases.

11.     A detailed breakdown of monthly operating expenses for the Property in 2021, including insurance, repairs and maintenance, janitorial, utilities, management fee, marketing, professional fees, and other operating expenses.

12.     All documents, including communications, that relate to renewal or extension of leases, forbearances, rent reductions, rent modifications, rent abatement, and/or plans for collecting past-due rent.  In particular, please provide a brief statement or summary regarding the status of negotiations or collection efforts with respect to each of the following leases/tenants:

- Mauro Valdez Sandoval (expired)
- S.M. Foot Wear (expired)
- Pescaderia y Cocina (expired)
- Diana Roman (expired)
- Bionicos La Huerta (expired)
- Food 4 Less
- Real De Oaxaca
- Bubbles Apparel
- Pho VNK
- Marquez Trading
- Rinconcito Poblano
- Say Cheese Photo
- Nueva Vision
- New Trends Cloth
- Planet Fitness
- La Huasteca

- 2 -

- Star Buffet Lynwood
- JPL Event Enterprises

- COMEX Korean BBQ LLC

13. An accounts receivable aging schedule for all tenants on the Property, which should identify all tenants that did and did not pay April 2021 rent.

14. All documents, including communications, that relate to the Debtors' efforts to secure new or amended leases for the Property.

15. All documents, including communications, regarding efforts to lease any vacant spaces at the Property.

16. All documents that refer to any post-petition projections as to future cash flow that is expected from the Property.

17. All real estate tax bills for 2020 and 2021 that the Debtors have received in connection with the Property.

18. All documents, including correspondence, that relate to payments or distributions made by the Debtors to insiders (as defined by Section 101(31) of the Bankruptcy Code) or non-debtor affiliates during the two-year period prior to the Debtors' bankruptcy filings, including, but not limited to, internal communications regarding payments, distributions, dividends, invoices, and agreements.

19. All documents, including correspondence, that relate to payments made by the Debtors to legal professionals in connection with services provided to non-debtor affiliates during the one-year period prior to the Debtors' bankruptcy filing.

20. All non-privileged documents, including correspondence, that relate to 3100 E. Imperial Investment, LLC's default(s) under the Mezzanine Loan Agreement dated as of June 16, 2016, between 3100 E. Imperial Investment, LLC, as Borrower, and Natixis, New York Branch, as Lender, including documents that relate to the lender exercising any default remedies or agreeing to any forbearance(s), and/or documents that relate to the borrower applying for refinancing of the mezzanine loan.

21. All environmental reports, including Phase I and Phase II environmental studies, prepared in connection with the Property.

22. All documents, including correspondence, that relate to any claims, causes of action, obligations, demands, lawsuits, threatened lawsuits, and liabilities, sounding in contract or in tort, in law or in equity, that have been tendered to the Debtors since April 2020.

- 3 -

23.   All property management agreements, including amendments thereto, that relate to the Property.

24.   All documents, including correspondence, that relate to the ($1,080,000) preferred return identified in the ISLT Investment, LLC and Subsidiaries Consolidated Statement of Operations for the fourth months ended April 30, 2021.

25.   All documents, including correspondence, that relate to the Debtors' capital expenditure plans for the Property.

26.   A corporate organizational chart that relates to the Debtors and their non-debtor affiliates.

27.   Any property condition report(s) that relate to the Property.

Please let us know if you have any questions or concerns regarding the foregoing document requests.  Please note that the Lender may supplement these requests as necessary, including pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, during the course of its review.

Sincerely,

Amir Gamliel

cc:    David Neff (via e-mail)
        Ariel Levin (via e-mail)
        Jake Hamel (via e-mail)

- 4 -

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **DEBTORS' OPPOSITION TO, AND REQUEST FOR HEARING ON, SECURED CREDITOR'S APPLICATION FOR AN ORDER TO TAKE RULE 2004 EXAMINATIONS AND ISSUE DISCOVERY; DECLARATION OF MONICA Y. KIM IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 20, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender    rb@lnbyb.com**
- **Amir Gamliel    amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com**
- **Nancy S Goldenberg    nancy.goldenberg@usdoj.gov**
- **Monica Y Kim    myk@lnbyb.com, myk@ecf.inforuptcy.com**
- **Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com**
- **Juliet Y Oh    jyo@lnbyb.com, jyo@lnbrb.com**
- **Robert E Opera    ropera@wghlawyers.com, jmartinez@wghlawyers.com;mweinberg@wghlawyers.com**
- **Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com**
- **Jeffrey S Shinbrot    jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

**2.  SERVED BY UNITED STATES MAIL**: On **June 20, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

*None.*

☐ *Service information continued on attached page*

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 20, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

*None.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 20, 2021 | Stephanie Reichert | */s/ Stephanie Reichert* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.