1  David M. Neff, Ill. Bar No. 6190202
   (*admitted pro hac vice*)
2  DNeff@perkinscoie.com
   Amir Gamliel, Cal. Bar No. 268121
3  AGamliel@perkinscoie.com
   PERKINS COIE LLP
4  1888 Century Park E., Suite 1700
   Los Angeles, CA  90067-1721
5  Telephone:  310.788.9900
   Facsimile:  310.788.3399
6
7  Attorneys for Secured Creditor
   Wells Fargo Bank, National Association, as Trustee
8  for Morgan Stanley Capital I Trust 2016-UBS11,
   Commercial Mortgage Pass-through Certificates,
9  Series 2016-UBS11, and on Behalf of the Holders of
   any Related Serviced Subordinate Companion Loan
   or Serviced Companion Loan

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>PLAMEX INVESTMENT, LLC, a Delaware limited liability company,<br><br>Debtor. | CASE NO. 8:21-BK-10958-ES<br><br>Jointly administered with 3100 E. Imperial Investment, LLC (8:21-bk-10957-ES)<br><br>Chapter: 11 |
| In re<br><br>3100 E. IMPERIAL INVESTMENT, LLC, a Delaware limited liability company,<br><br>Debtor. | **DECLARATION OF AMIR GAMLIEL IN SUPPORT OF LENDER'S OBJECTION TO APPLICATION OF DEBTORS AND DEBTORS IN POSSESSION TO JOINTLY EMPLOY NAI CAPITAL COMMERCIAL, INC. AS REAL ESTATE BROKER PURSUANT TO 11 U.S.C. §§ 327 AND 328** |
| ☒  Affects both Debtors<br><br>☐  Affects Plamex Investment, LLC only<br><br>☐  Affects 3100 E. Imperial Investment only | [Hearing to be scheduled] |

Gamliel Declaration ISO of Lender's Objection to
Retention of NAI Capital Commercial, Inc. as
Real Estate Broker

152894573.2

I, Amir Gamliel, declare as follows:

1.  I am an attorney at law, duly licensed to practice before all the courts of the State of California and before this Court. I am Counsel at Perkins Coie LLP, counsel for lender Wells Fargo Bank, National Association, as Trustee for Morgan Stanley Capital I Trust 2016-UBS11, Commercial Mortgage Pass-through Certificates, Series 2016-UBS11, and on Behalf of the Holders of any Related Serviced Subordinate Companion Loan or Serviced Companion Loan ("**Lender**") in the above-referenced matter. I submit this declaration in support of *Lender's Objection to Application of Debtors and Debtors in Possession to Jointly Employ NAI Capital Commercial, Inc., as Real Estate Broker Pursuant to 11 U.S.C. §§ 327 and 328* (the "**Objection**"),[1] filed contemporaneously herewith. The facts stated herein are based on my own personal knowledge. If called to testify, I could and would testify competently to the facts stated herein.

2.  Throughout these chapter 11 cases, I have engaged with Debtors' counsel regarding the chapter 11 cases, including the possibility of selling the Plaza Mexico shopping center. At the Section 341(a) meeting of creditors, held on May 20, 2021, I examined the Debtors regarding their efforts to sell Plaza Mexico. In response to my questions regarding the value of Plaza Mexico, Debtors indicated that they had interviewed brokers for the purpose of selling the center. A true and correct copy of the relevant portions of an unofficial transcript of the recording 341(a) meeting of creditors is attached hereto as **Exhibit A** (the "*341(a) Transcript*"). Relevant portions are highlighted.

3.  As indicated by the 341(a) Transcript, I requested that Debtors' representative identify brokers who had provided an opinion on the value of the shopping center. Debtors' counsel interjected and requested that they be allowed to provide that information confidentially. While I have followed up with requests regarding the brokers who Debtors interviewed, Debtors' counsel has not yet provided that information.

4.  In an effort to learn more about Debtors' reorganization process, including their diligence in retaining a real estate broker, I sent a letter dated May 21, 2021 to Debtors' counsel

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection.

1. requesting production of certain information and documents. A true and correct copy of the letter is attached hereto as **Exhibit B**.

5. In subsequent correspondence and discussions with Debtors' counsel, I was informed that Debtors intended to retain NAI as real estate broker. At the instruction of Lender, I engaged with Debtors' counsel to suggest more appropriate real estate brokers that Debtors should consider retaining to sell Plaza Mexico. On June 9, 2021, I sent an email to Debtors' counsel attaching a list of these real estate brokers. A true and correct copy of that list is attached hereto as **Exhibit C**.

6. Debtors' counsel indicated that no alternative brokers would be considered, and that NAI had already been working on the assignment even though the Court had not yet approved its retention. Debtors' counsel represented that NAI had been selected because of the Debtors' principals' prior connections and experience with NAI.

7. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

DATED: June 24, 2021                **PERKINS COIE LLP**

By: */s/ Amir Gamliel*
Amir Gamliel, Cal. Bar No. 268121
Partner, Perkins Coie LLP

**Exhibit A**

Gamliel Declaration ISO of Lender's Objection to
Retention of NAI Capital Commercial, Inc. as
Real Estate Broker

152894573.2

## 341(a) Meeting of Creditors
## May 20, 2021
## Total Audio Length:  01:34:30

| | |
|---|---|
| Nancy Goldberg: | Okay very good.  My name is Nancy Goldberg, and I'm an attorney with the Office of the United States Trustee and we are here today to conduct meetings of creditors and two Chapter 11 filings which are related.  The first page is 3100 East Imperial Investment, LLC, Case Number 21-10957-ES.  The related filing is Plamex Investment, LLC, 21-10058-ES.  The filings were made on April 14, 2021.  Today is May 20th.  It is approximately 9:30am which was the start time for 3100 East Imperial.  The Court Docket indicates the start time for the Plamex 341 is 10am, but we are going to conduct them simultaneously, kind of one after the other.  What I would ask for the purpose of the clarity of the recording, is that if anyone for an extended period of time is not giving testimony please then put your phone on mute so that we don't have background noise which I hear a bit of right now; so, I would appreciate that.  Let me ask the parties on the phone, since these meetings are being conducted telephonically, to each identify yourselves for the record.  We will start with Counsel for the Debtors. |
| Ron Bender: | Good morning, Ms. Goldenburg, this is Ron Bender and my partner Julia Bo of Levene Neale Bender Yoo & Brill.  We're serving as bankruptcy counsel to both Chapter 11 Debtors during 3100 and Plamex. |
| Nancy: | Very well.  Mr. Bender, will the same Debtor representatives be testifying in both cases? |
| Ron: | Yes. |
| Nancy: | Okay, then I will ask if you could name the three Debtor representatives and then I will have them identify themselves for the records and their position with each Debtor. |
| Ron: | Yes, so we have Donald Chae, President.  We have Luis Valenzuela, Executive Vice President.  And we have Mary Maricelle, Controller. |
| Nancy: | Okay, when you hear me hesitate, it just means that I'm taking notes.  So, Mr. Chae, will you please identify yourself for the record and your position with 3100 East Imperial Investment, LLC which I'll refer to as 3100 East Imperial.  And your position with Plamex or Plamex Investment, LLC. |
| Donald Chae: | Yes, I am the President of both entities.  My name is Donald, last name spelled C-H-A-E, Ms. Goldenburg. |
| Nancy: | Thank you.  Okay, and Mr. Valenzuela. |

-1-

| | |
|---|---|
| Luis Valenzuela: | Yes, Speaker and I'm the Executive Vice President for both entities and I oversee the active management of the property. |
| Nancy: | Okay, and finally Ms. Mary Maricelle. Am I pronouncing it correctly? |
| Mary Maricelle: | Yes, that is correct. My name is Mary Maricelle and I am the Controller. |
| Nancy: | Ms. Maricelle, are you Controller for both 3100 East Imperial, if there is a Controller, and Plamex Investment? Plamex? |
| Mary: | That is correct. |
| Nancy: | Controller for both? |
| Mary: | Yes. |
| Nancy: | Okay. To allow each of you who are present today on behalf of the Debtor to provide testimony during these meetings, I'll ask Mr. Chae, Mr. Valenzuela, Ms. Maricelle to each raise your hand. Have you done that? |
| Ron: | Yes. |
| Donald: | Yes. |
| Nancy: | Okay. Do you each swear under penalty of perjury that the testimony you are about to give during these meetings is the complete truth? |
| Ron: | Yes. |
| Donald: | Yes. |
| Mary: | Yes. |
| Nancy: | Okay. So Mr. Chae, yes, correct? |
| Donald: | Yes, I said yes. |
| Nancy: | Very well. and it's a little cumbersome since we don't see you and it's hard to identify so I'm just going to make this record as clear as possible under the circumstances. Mr. Valenzuela? |
| Luis: | Yes. |
| Nancy: | And, Ms. Maricelle? |
| Mary: | Yes. |
| Nancy: | Okay, very good. You've already described each of your relationships with the Debtor and thank you for that. Mr. Chae, you signed both the |

-2-

| | |
|---|---|
| Luis: | And then we'll end up spreading the payments out over a year period. We have numerous tenants on payment plans. |
| Nancy: | And the 30% discount is from the arrears? |
| Luis: | Correct. |
| Nancy: | Okay. And is there gonna be a need for that going forward in terms of like once those are paid from more challenging times, because of COVID, do you see that you'll be able to—that the debtor will be able to collect close to full rent on a timely basis going forward? |
| Luis: | Going forward, yes, we will be collecting full rent. |
| Nancy: | Okay. Did Plamex make any refinancing efforts in the last several years, to try to refinance? |
| Luis: | Yes, we did apply to restructure the debt. |
| Nancy: | Mm hmm. |
| Luis: | We were, we'd come close and then COVID comes and just knocks, puts everything on hold. |
| Nancy: | Okay. So, the efforts were made 2019 and maybe beginning of 2020, is that correct? |
| Luis: | Right. In 2019, we had, was the biggest push. |
| Nancy: | Okay. And you were close to finalizing a restructure? |
| Luis: | We were close. I mean, we had a letter of intent and **[01:15:00]** financing available and part of the restructure was also to look at the [inaudible 01:15:06] and the preferred equity loans with Waterfall. |
| Nancy: | Okay. |
| Luis: | Because they were such high interest rates, so we were looking to recapitalize those and pay them off. |
| Nancy: | Okay. And counsel could assist with this, which is my final question. What's the general reorganization strategy? |
| Ron: | We're—this is Ron Bender—we're still analyzing all options, but it'll involve either the sale of the property or a plan of reorganization. There's a lot of different exit options, and we're likely going to be filing an application to employ a real estate broker in short order. But [inaudible 01:15:50] a month old. We're still in the analysis stage. |

-28-

| | |
|---|---|
| Nancy: | Okay. Mr. Chae, do you agree with your counsel's description of the current reorganization efforts? |
| Donald: | Yes, Ms. Goldenberg. |
| Nancy: | Okay, thank you. And do we have a sense of timing, like how long it will take to decide the best path? Are you going to concurrently seek to restructure and sell and, you know, then make a determination as to what— |
| Ron: | This is Ron Bender. I would say that a decision of a clear-out will be made in the next 30 to 60 days. I would say realistically, we're at the end of May, I would say a realistic exit, whether through a confirmed plan or a consummated sale … |
| Nancy: | Mm hmm. |
| Ron: | … is likely to be at the very end of 2021, if I had to guess based on experience. Because any sale or investment or plan, it's gonna be an involved process. There's a lot—as you can see, there's a lot to this property. |
| Nancy: | Correct. Okay. That's fine, that's helpful. Well, I have nothing further. Unless anyone joined us who is a party in interest in this case and has additional questions with respect to these bankruptcy filings, is there anyone on the line with us who joined late? |
| Amir Gamliel: | Yes, Ms. Goldenberg, you've got Amir Gamliel from Perkins Coie on the line representing the secured lender Wells Fargo Bank, National Association, as trustee. |
| Nancy: | Thank you. Can you spell your name for me, please? |
| Amir: | Certainly. A-M-I-R. |
| Nancy: | Right. |
| Amir: | Gamliel, G-A-M-L-I-E-L. |
| Nancy: | Okay. Do you have any questions for the debtor representatives with respect to these two cases? |
| Amir: | I do. You've asked many of the same questions that I had, but I do have some additional questions, if I may. |
| Nancy: | Of course. |

152904465.1

| | |
|---|---|
| | $100,000 in rent. Can you tell me what effort, if any, you've undertaken to collect that past due rent amount? |
| Luis: | Mary, can you answer that question, 'cause I know Food 4 Less paid this and they, you know, they paid a portion of the real estate taxes, a separate portion for operating expenses that is the rent. Are you able to explain that? |
| Mary: | Yes. Normally, Food 4 Less will delay their payments of the [inaudible 01:21:41] reconciliation. But they usually would catch up and pay it, eventually, where they would ask for additional information. But that's typically how they do it every year. |
| Luis: | So what you have, Mary, listed is just the reconciliation at the end of the year with a total. |
| Mary: | Yes. |
| Luis: | Okay. Do you follow that? |
| Amir: | I do, thank you. |
| Luis: | Great. |
| Amir: | Turning to the shopping center, are there any environmental issues that you're aware of in the shopping center, on the property? |
| Luis: | We're not aware of any environmental issues. |
| Amir: | Can you tell me why the debtor did not apply for a PPP loan? |
| Luis: | The debtor does not have any employees. |
| Amir: | Did the management company apply for a PPP loan? |
| Luis: | Mary, did you apply for a PPP loan? |
| Mary: | For Greenland Property Management, it did. |
| Luis: | So the answer's yes. |
| Amir: | Okay. How much did Greenland Property Management obtain in PPP funds? |
| Mary: | $63,335. |
| Amir: | And aside from the appraisal reports that you've identified today that were, that you indicated were ordered by the lender, has the debtor |

-31-

| | |
|---|---|
| | obtained any recent appraisals or broker's opinion of value on the shopping center? |
| Luis: | Yes. |
| Amir: | And when was that? |
| Luis: | Just recently, when we interviewed brokers to look to sell the asset. |
| Amir: | So this was a broker's opinion of value, or an appraisal, or both? |
| Luis: | A broker opinion of value. |
| Amir: | By whom? |
| Ron: | Amir, this is Ron Bender. We would rather give you that information off line since this is public and we don't want … |
| Amir: | Sure, that's fine. |
| Ron: | … [inaudible 01:24:19], you know, public knowledge of the sales process. |
| Amir: | Understood. |
| Ron: | And I'll be happy to give you all that information privately. |
| Amir: | I appreciate it. Thanks, Ron. Okay, just bear with me. And Ms. Goldenberg, you did ask a lot of these questions that I had, so I don't want to repeat myself here, so just give me a moment. |
| Nancy: | Sure. |
| Amir: | Turning to Exhibit B71, the affiliate AR, are there any loan documents that you're aware of reflecting the payments that are owed by these affiliates? |
| Luis: | Mary, are there loan documents or are these just journal entries? |
| Mary: | These are just journal entries. I don't, haven't seen any loan documents. |
| Amir: | Okay. And you identified over $9 million that's owed by Source at Beach; do you know what the nature of those funds were, what they were used for? Was it to acquire the Source Hotel property? |
| Mary: | No. The Source here is for the retail. It's for the Source at Beach LLC and [inaudible 01:25:43]. And as far as I remember, this $9 million was used during, from the loan proceeds on the 2016 refinance. And this was for retail, the Source retail, to continue with the natural improvements. |

**Exhibit B**

Gamliel Declaration ISO of Lender's Objection to
Retention of NAI Capital Commercial, Inc. as
Real Estate Broker

152894573.2

**PerkinsCoie**

1888 Century Park East  
Suite 1700  
Los Angeles, CA 90067-1721

T +1.310.788.9900  
F +1.310.788.3399  
PerkinsCoie.com

May 21, 2021

Amir Gamliel  
AGamliel@perkinscoie.com  
D. +1.310.788.3276  
F. +1.310.843.1246

**VIA E-MAIL**

Monica Kim, Esq.  
Levene, Neale, Bender, Yoo & Brill L.L.P.  
C/O Monica Y. Kim  
10250 Constellation Blvd., Suite 1700  
Los Angeles, California 90067

**Re:    In re Plamex Investment, LLC, Case No. 8:21-bk-10958**  
**In re 3100 E. Imperial Investment, LLC, Case No. 8:21-bk-10957**

Dear Monica,

As you know, this firm represents Wells Fargo Bank, National Association, as Trustee for Morgan Stanley Capital I Trust 2016-UBS11, Commercial Mortgage Pass-Through Certificates, Series 2016-UBS11, and on Behalf of the Holders of any Related Serviced Subordinate Companion Loan or Serviced Companion Loan (the "Lender"), in the jointly administered chapter 11 cases of Plamex Investment, LLC and 3100 E. Imperial Investment, LLC (together, the "Debtors"). To that end, and consistent with Lender's rights under Sections 2.C. and 2.E. of the *Stipulation Regarding Use of Cash Collateral* [ECF No. 71, Ex. A], we request that the Debtors produce the following information and documents to us in a mutually agreeable time frame no longer than two weeks from today:

1. All documents not yet produced that relate to the Debtors' financial condition, such as monthly cash flow reports, profit and loss statements, balance sheets, tax returns, bank statements, rent rolls, operating reports, and accounts payable and accounts receivable aging schedules for 2021.

2. All documents, including correspondence, that relate to the note receivable from Source at Beach, LLC in the amount of $10,395,409, as identified in the ISLT Investment, LLC and Subsidiaries Consolidated (Unaudited) Balance Sheet dated April 30, 2021 (the "April Balance Sheet").

3. All documents, including correspondence, that relate to the $71,192,658 that is "due from affiliates" and is identified as an "other asset" in the April Balance Sheet.

60642-1012.0001/152509851.3  
152509851.5

4. All documents, including correspondence, that relate to the $18,000,000 "Members' equity subject to mandatory redemption" that is scheduled as a liability in the April Balance Sheet.

5. All pre-petition and post-petition budgets, including drafts of budgets, prepared by the Debtors for 2020 and 2021.

6. All non-privileged documents, including correspondence, that relate to, or provide evidence of, the Debtors' efforts to obtain refinancing, third-party investors, and/or buyers in connection with the Plaza Mexico shopping center (the "Property").

7. All documents, including correspondence, that relate to the value of the Property, or any portion thereof, including any appraisal reports and/or broker's opinions of value.

8. All documents, including correspondence, that relate to the possible retention of any loan broker or real estate broker or agent by the Debtors.

9. All documents, including correspondence, that relate to a potential sale of the Property, including, but not limited to, any listing, offering memorandum, letter of intent, memorandum of understanding, or similar documents relating to any sale, investment in, or refinancing of the Property.

10. A detailed breakdown of monthly revenue generated by leases on the Property in 2021 that identifies base rent, percentage rent, reimbursable revenue, CAM payments, and other revenue sources recoverable under the leases.

11. A detailed breakdown of monthly operating expenses for the Property in 2021, including insurance, repairs and maintenance, janitorial, utilities, management fee, marketing, professional fees, and other operating expenses.

12. All documents, including communications, that relate to renewal or extension of leases, forbearances, rent reductions, rent modifications, rent abatement, and/or plans for collecting past-due rent. In particular, please provide a brief statement or summary regarding the status of negotiations or collection efforts with respect to each of the following leases/tenants:

- Mauro Valdez Sandoval (expired)
- S.M. Foot Wear (expired)
- Pescaderia y Cocina (expired)
- Diana Roman (expired)
- Bionicos La Huerta (expired)
- Food 4 Less
- Real De Oaxaca
- Bubbles Apparel
- Pho VNK
- Marquez Trading
- Rinconcito Poblano
- Say Cheese Photo
- Nueva Vision
- New Trends Cloth
- Planet Fitness
- La Huasteca

- Star Buffet Lynwood
- JPL Event Enterprises
- COMEX Korean BBQ LLC

13. An accounts receivable aging schedule for all tenants on the Property, which should identify all tenants that did and did not pay April 2021 rent.

14. All documents, including communications, that relate to the Debtors' efforts to secure new or amended leases for the Property.

15. All documents, including communications, regarding efforts to lease any vacant spaces at the Property.

16. All documents that refer to any post-petition projections as to future cash flow that is expected from the Property.

17. All real estate tax bills for 2020 and 2021 that the Debtors have received in connection with the Property.

18. All documents, including correspondence, that relate to payments or distributions made by the Debtors to insiders (as defined by Section 101(31) of the Bankruptcy Code) or non-debtor affiliates during the two-year period prior to the Debtors' bankruptcy filings, including, but not limited to, internal communications regarding payments, distributions, dividends, invoices, and agreements.

19. All documents, including correspondence, that relate to payments made by the Debtors to legal professionals in connection with services provided to non-debtor affiliates during the one-year period prior to the Debtors' bankruptcy filing.

20. All non-privileged documents, including correspondence, that relate to 3100 E. Imperial Investment, LLC's default(s) under the Mezzanine Loan Agreement dated as of June 16, 2016, between 3100 E. Imperial Investment, LLC, as Borrower, and Natixis, New York Branch, as Lender, including documents that relate to the lender exercising any default remedies or agreeing to any forbearance(s), and/or documents that relate to the borrower applying for refinancing of the mezzanine loan.

21. All environmental reports, including Phase I and Phase II environmental studies, prepared in connection with the Property.

22. All documents, including correspondence, that relate to any claims, causes of action, obligations, demands, lawsuits, threatened lawsuits, and liabilities, sounding in contract or in tort, in law or in equity, that have been tendered to the Debtors since April 2020.

60642-1012.0001/152509851.3
152509851.5

23. All property management agreements, including amendments thereto, that relate to the Property.

24. All documents, including correspondence, that relate to the ($1,080,000) preferred return identified in the ISLT Investment, LLC and Subsidiaries Consolidated Statement of Operations for the fourth months ended April 30, 2021.

25. All documents, including correspondence, that relate to the Debtors' capital expenditure plans for the Property.

26. A corporate organizational chart that relates to the Debtors and their non-debtor affiliates.

27. Any property condition report(s) that relate to the Property.

Please let us know if you have any questions or concerns regarding the foregoing document requests. Please note that the Lender may supplement these requests as necessary, including pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, during the course of its review.

Sincerely,

*[signature]*

Amir Gamliel

cc: David Neff (via e-mail)
    Ariel Levin (via e-mail)
    Jake Hamel (via e-mail)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit C**

152894573.2

Gamliel Declaration ISO of Lender's Objection to
Retention of NAI Capital Commercial, Inc. as
Real Estate Broker

| Company Name | City | State | # of Sales (in search) | Sale Value (in search) | # of Sales (3 years) | Sale Value (3 years) | Website | Phone | Company Address | Zip |
|---|---|---|---|---|---|---|---|---|---|---|
| Eastdil Secured, LLC | Santa Monica | CA | 2 | $510,700,000 | 155 | $64,513,092,189 | https://www.eastdilsecured.com | (310) 526-9000 | 100 Wilshire Blvd | 90401 |
| Newmark Knight Frank | Los Angeles | CA | 4 | $183,698,000 | 103 | $3,244,282,715 | http://www.ngkf.com/ | (213) 596-2222 | 700 S Flower St | 90017 |
| Matthews Real Estate Investment Services | Costa Mesa | CA | 1 | $70,000,000 | 346 | $1,095,535,741 | http://www.matthews.com/ | (866) 889-0550 | 3200 Park Center Dr | 92626 |
| Matthews Real Estate Investment Services | El Segundo | CA | 1 | $70,000,000 | 499 | $1,563,167,500 | http://www.matthews.com/ | (866) 889-0550 | 841 Apollo St | 90245 |
| JLL | Los Angeles | CA | 1 | $61,000,000 | 141 | $5,173,402,985 | http://www.jll.com/ | (213) 239-6000 | 515 S Flower St | 90071 |
| CBRE | Newport Beach | CA | 1 | $42,500,000 | 580 | $8,446,494,838 | http://www.cbre.us | (949) 725-8500 | 3501 Jamboree Rd | 92660 |
| KW Commercial | Studio City | CA | 1 | $32,300,000 | 75 | $223,582,000 | https://www.kwcommercial.com | (818) 432-1500 | 12001 Ventura Pl | 91604 |
| JLL | Los Angeles | CA | 1 | $30,000,000 | 20 | $310,021,000 | http://www.jll.com/ | (310) 473-4424 | 11620 Wilshire Blvd | 90025 |
| JLL | Newport Beach | CA | 1 | $20,306,000 | 63 | $4,672,259,010 | www.jll.com | (949) 253-8800 | 4000 MacArthur Blvd | 92660 |
| KW Commercial | Studio City | CA | 1 | $14,550,000 | 104 | $401,079,975 | www.kw.com | (818) 432-1500 | 4061 Laurel Canyon Blvd | 91604 |