1  RON BENDER (SBN 143364)
   MONICA Y. KIM (SBN 180139)
2  JULIET Y. OH (SBN 211414)
3  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
4  Los Angeles, California 90067
   Telephone:  (310) 229-1234
5  Facsimile:  (310) 229-1244
   Email:  RB@LNBYB.COM; MYK@LNBYB.COM; JYO@LNBYB.COM
6
7  Attorneys for Chapter 11 Debtors and
   Debtors-in-Possession

8

9              **UNITED STATES BANKRUPTCY COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                **SANTA ANA DIVISION**

12

| | |
|---|---|
| In re: | Lead Case No.: 8:21-bk-10958-ES |
| PLAMEX INVESTMENT, LLC, a Delaware limited liability company, | Jointly administered with 3100 E. Imperial Investment, LLC (8:21-bk-10957-ES) |
| Debtor and Debtor in Possession. | Chapter 11 Cases |
| In re: | **NOTICE OF MOTION AND MOTION FOR ORDER EXTENDING DEBTORS' EXCLUSIVE PERIODS TO FILE PLAN OF REORGANIZATION AND OBTAIN ACCEPTANCES THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF LUIS C. VALENZUELA IN SUPPORT THEREOF** |
| 3100 E. IMPERIAL INVESTMENT, LLC, a Delaware limited liability company, | |
| Debtor and Debtor in Possession. | |
| ☒ Affects both Debtors | Hearing:<br>Date:       August 5, 2021<br>Time:       10:30 a.m.<br>Place:      ZoomGov |
| ☐ Affects Plamex Investment, LLC only | |
| ☐ Affects 3100 E. Imperial Investment, LLC only | |

26

27

28

1

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES**....................................................**5**

**I.    STATEMENT OF FACTS** ...............................................................................**5**

    **A.    Background**............................................................................................**5**

    **B.    The Debtors' Liabilities** ......................................................................**7**

    **C.    Current Posture Of The Debtors' Bankruptcy Cases** .....................**9**

    **D.    The Need For An Extension Of The Debtors' Exclusive Periods To File
       A Plan And Obtain Acceptances Thereof** ......................................**12**

**II.    DISCUSSION** ..............................................................................................**14**

    **A.    The Court Has Authority To Extend The Debtors' Exclusive Periods
       To File A Plan Of Reorganization And Obtain Acceptances Thereof** ......**14**

        **1.    *The size and complexity of the case***........................................**16**

        **2.    *The necessity of sufficient time to permit the debtor to negotiate a
           plan of reorganization and prepare adequate information*** .................**16**

        **3.    *The existence of good faith progress toward reorganization***...............**17**

        **4.    *The fact that the debtor is paying its bills as they become due***............**17**

        **5.    *Whether the debtor has demonstrated reasonable prospects for
           filing a viable plan*** ..................................................................**17**

        **6.    *Whether the debtor has made progress in negotiations with its
           creditors*** ...............................................................................**18**

        **7.    *The amount of time which has elapsed in the case*** ..............................**18**

        **8.    *Whether the debtor is seeking an extension of exclusivity in order
           to pressure creditors to submit to the debtor's reorganization
           demands*** ...............................................................................**19**

        **9.    *Whether an unresolved contingency exists*** ...........................................**19**

    **B.    Progress Towards Reorganization And Proper Motives Warrant
       An Extension Of The Debtors' Plan Exclusivity Periods** .........................**20**

**III.    CONCLUSION**..............................................................................................**20**

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re AmKo Plastics, Inc.*,
    197 B.R. 74 (Bankr. S.D. Ohio 1996)......................................................................14

*In re Dow Corning Corp.*,
    208 B.R. 661 (Bankr. E.D. Mich. 1997) ..........................................................15, 19

*In re Gibson & Cushman Dredging Corp.*,
    101 B.R. 405 (Bankr. E.D.N.Y. 1989) ...............................................................14

*In re Pine Run Trust, Inc.*,
    67 B.R. 432 .......................................................................................................15, 19

*In re Public Service Company of New Hampshire*,
    88 B.R. 521 (Bankr. D.N.H. 1988) ....................................................................14

*In re Trainer's, Inc.*,
    17 B.R. 246 (Bankr. E.D. Pa. 1982) ...................................................................20

**Federal Statutes**

11 U.S.C. § 101 *et seq.*.............................................................................. *passim*

11 U.S.C. § 341(a) ...........................................................................................9

11 U.S.C. § 1121 .................................................................................3, 12, 14

11 U.S.C. § 1107 ...............................................................................................5

11 U.S.C. § 1108 ...............................................................................................5

**Other Authorities**

Federal Rule of Bankruptcy Procedure 2004......................................................11, 12

Federal Rules of Evidence Rule 201 .......................................................................17

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 220, 232 (1977) ....................................15

Local Bankruptcy Rule 9013-1 ..................................................................................3

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, ALL KNOWN SECURED CREDITORS, TWENTY LARGEST UNSECURED CREDITORS, AND ALL PARTIES REQUESTING SPECIAL NOTICE:**

**PLEASE TAKE NOTICE** that a hearing will be held on August 5, 2021 at 10:30 a.m., before the Honorable Erithe A. Smith, United States Bankruptcy Judge for the Central District of California, Santa Ana Division, in Courtroom "5A" located at 411 West Fourth Street, Santa Ana, California 92701, for the Court to consider the motion (the "Motion") filed by Plamex Investment, LLC, a Delaware limited liability company ("Plamex"), and 3100 E. Imperial Investment, LLC, a Delaware limited liability company ("3100," and together with Plamex, the "Debtors"), the debtors and debtors-in-possession in the above-captioned, jointly administered chapter 11 bankruptcy cases, for the entry of an order extending each of the Debtors' exclusive periods to file a plan of reorganization ("Plan") and obtain acceptances thereof.  The complete relief requested and the bases for this Motion are set forth in the Memorandum of Points and Authorities and the Declaration of Luis C. Valenzuela annexed hereto (the "Valenzuela Declaration").

The Debtors each filed a voluntary petition under Chapter 11 of 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") on April 14, 2021 (the "Petition Date").  Plamex is the fee simple owner of "Plaza Mexico," a 403,242 square-foot community shopping center offering specialty retail and dining located in Lynwood, California just north of the 105 freeway (approximately 20 minutes from LAX). For over 20 years, Plaza Mexico has been a community landmark in Southern California.  The premise behind Plaza Mexico is to represent the rich Latino heritage of the community and create an authentic Mexican cultural landscape through the incorporation of Mexican architecture, authentic building materials, notable monuments, and a forum to celebrate all Mexican fiestas.  Currently, Plaza Mexico is occupied by tenants that include Food 4 Less, Rite Aid, Curacao, Chuck E. Cheese, and a wide variety of restaurants and retailers of clothing, electronics, shoes, toys, jewelry, and furniture.  The property also boasts a revenue-creating LED

1   tower overlooking the I-105 Freeway.  Plamex is wholly owned by its sole member, 3100, one of

2   the Debtors herein. Other than its membership interests in Plamex, 3100 does not have any other

3   material assets.

4        The Debtors' exclusive periods to file a Plan and obtain acceptances thereof under

5   Bankruptcy Code § 1121(d) will expire on August 12, 2021 and November 10, 2021,

6   respectively.  By this Motion, and for the reasons set forth in the Memorandum of Points and

7   Authorities annexed hereto, the Debtors seek an order extending their exclusive periods to file a

8   Plan and obtain acceptances thereof for approximately 90 days, to and including November 10,

9   2021 and January 10, 2022, respectively.  The Debtors seek the foregoing extensions without

10  prejudice to their rights to seek further extensions of their exclusivity periods.

11       The Motion is based upon 11 U.S.C. § 1121, Local Bankruptcy Rule 9013-1, this Notice

12  of Motion and Motion, the attached Memorandum of Points and Authorities and the Declaration

13  of Luis C. Valenzuela, the entire record in each of the Debtors' bankruptcy cases, the statements,

14  arguments and representations of counsel to be made at the hearing on the Motion, and any other

15  evidence properly presented to the Court at or prior to the hearing on the Motion.

16       **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-

17  1(f), any opposition to the Motion must be in writing, filed with the Court and served upon the

18  United States Trustee as well as counsel for the Debtors at the address set forth in the upper left-

19  hand corner of the first page of this Notice and Motion by no later than fourteen (14) days before

20  the date of the hearing on the Motion.

21       **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-

22  1(h), the failure to file and serve a timely opposition to the Motion may be deemed by the Court

23  to constitute consent to the granting of the relief requested in the Motion.

24       **WHEREFORE**, the Debtors respectfully request that the Court enter an order:

25       (1)     granting the Motion in its entirety;

26       (2)     extending each of the Debtors' exclusive periods to file a Plan and obtain

27  acceptances thereof for approximately 90 days, to and including November 10, 2021 and January

28

10, 2022, respectively, without prejudice to the Debtors' rights to seek further extensions of such periods; and

    (3)    granting such further relief as the Court deems just and proper.

Dated:  July 15, 2021            PLAMEX INVESTMENT, LLC, *et al.*

                    By:   */s/ Juliet Y. Oh*
                          RON BENDER
                          MONICA Y. KIM
                          JULIET Y. OH
                          Counsel for Chapter 11 Debtors and
                          Debtors in Possession

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**STATEMENT OF FACTS**

**A.    Background.**

1.    Plamex Investment, LLC, a Delaware limited liability company ("Plamex"), and 3100 E. Imperial Investment, LLC, a Delaware limited liability company ("3100," and together with Plamex, the "Debtors"), the debtors and debtors-in-possession in the above-captioned, jointly administered chapter 11 bankruptcy cases, commenced their bankruptcy cases by filing Voluntary Petitions for relief under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on April 14, 2021 (the "Petition Date").  Since the Petition Date, the Debtors have operated their businesses, managed their financial affairs, and operated their bankruptcy estates as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.    On April 15, 2021, the Court entered orders approving the joint administration of the Debtors' bankruptcy cases, with the lead case being the bankruptcy case of Plamex, Case No. 8:21-bk-10958-ES.

3.    The two individuals who serve as the principals of the Debtors are Min Chae and Donald Chae, brothers who each have more than 30 years of experience in real estate investment, development, and management.  The Chae brothers' specialty and expertise rest in creating vibrant and thriving cultural retail centers at previously under-performing locations, particularly in ethnically diverse areas.  The "Plaza Mexico" is one such project and the crown jewel of the Chae brothers' real estate portfolio.

4.    Plamex is the fee simple owner of Plaza Mexico ("Plaza Mexico" or the "Property"), a 403,242 square-foot community shopping center offering specialty retail and dining located in Lynwood, California just north of the 105 freeway (approximately 20 minutes from LAX).  For over 20 years, Plaza Mexico has been a community landmark in Southern California. The premise behind Plaza Mexico is to represent the rich Latino heritage of the community and create an authentic Mexican cultural landscape through the incorporation of Mexican architecture,

authentic building materials, notable monuments, and a forum to celebrate all Mexican fiestas. Currently, Plaza Mexico is occupied by tenants that include Food 4 Less, Rite Aid, Curacao, Chuck E. Cheese, and a wide variety of restaurants and retailers of clothing, electronics, shoes, toys, jewelry, and furniture.  The Property also generates a modest revenue from advertising it sells on its LED tower, which overlooks the I-105 Freeway.

5.      Plamex is wholly-owned by its sole member, 3100.  In turn, 3100 is wholly owned by an entity called Placo Investment, LLC ("Placo"), and Placo is wholly-owned by ISLT Investment, LLC ("ISLT").  Neither Placo nor ISLT has filed its own bankruptcy case.  The multi-layered organizational structure of the Debtors and their parent companies, as well as the terms of the limited liability agreements for the Debtors, as amended and restated, are the direct result of pre-petition structured finance and securitization transactions.

6.      The Debtors' bankruptcy filings were the results of two primary factors: (i) substantial loss of rent revenue from Plamex's tenants due to the COVID-19 pandemic which caused the Debtors to default on their obligations to their secured lenders, and (ii) efforts by the secured lenders to foreclose on their collateral, including a foreclosure sale on the membership interests held by 3100 in Plamex, which was scheduled by 3100's secured lenders for April 15, 2021.

7.      More specifically, Plaza Mexico has not been immune to the financial effects of the COVID-19 pandemic.  Due to government-imposed stay-at-home orders and related restrictions which started in March of 2020, Plaza Mexico's tenants were required to close and/or experienced a drastic loss of business, sales and income.  Many of the tenants did not pay full or any rents to Plamex, which, in turn, resulted in a default by the Debtors to their secured lenders.  The Debtors and their parent companies were in the process of re-financing at the time the pandemic hit, which halted the process. Recently, as California has started to ease restrictions, rent collections at Plaza Mexico have been brought almost back to pre-pandemic levels.  There is an increase in foot traffic, and tenants are starting to pay rents timely.  However, despite these positive movements, the secured lenders who provided mezzanine loans to 3100 were unwilling to stop their April 15, 2021

1  foreclosure sale.  As a result, the Debtors had no choice but to file their bankruptcy petitions to
2  preserve their assets for the benefit of all constituencies.

3  **B.**    **The Debtors' Liabilities.**

4    8.    ***Plamex – Senior Loans.***    On June 16, 2016, Plamex, as borrower, obtained
5  $106,000,000 in loans from Natixis, New York Branch ("Senior Loans"), secured by a "*Deed of*
6  *Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing*" ("Deed of Trust")
7  upon the Plaza Mexico real property, and liens upon substantially all other assets of Plamex
8  purportedly perfected by, among other things, the recording of UCC-1 financing statements in the
9  States of Delaware and California. The promissory note evidencing the Senior Loans was
10 contemporaneously severed and split into six replacement promissory notes: Replacement
11 Promissory Note A-1 for $28,000,000, Replacement Promissory Note A-2 for $20,000,000,
12 Replacement Promissory Note A-3 for $20,000,000, Replacement Promissory Note A-4 for
13 $20,000,000, Replacement Promissory Note A-5 for $10,000,000, and Replacement Promissory
14 Note A-6 for $8,000,000 (collectively, the "Notes"), all of which Notes the Debtors are advised are
15 held by Wells Fargo Bank, National Association, as Trustee for Morgan Stanley Capital I Trust
16 2016-UBS11, Commercial Mortgage-Pass Through Certificates, Series 2016-UBS11 ("Wells
17 Fargo").  The Debtors are advised and believe that CWCapital Asset Management, LLC is the
18 servicer ("Servicer") of all of the Notes.

19   9.    The Senior Loans matured on or about July 5, 2021. The Senior Loans accrue non-
20 default interest at a fixed rate of 4.598%, and default interest rate that is the lesser of (i) maximum
21 rate permitted by applicable law, or (ii) 5% above the regular rate.  Plamex went into default on the
22 Senior Loans in May 2020.  Given the pandemic and its financial effects, including Plamex's
23 efforts to re-finance the Senior Loans which was in process during the Spring of 2020 when the
24 pandemic suddenly hit, Plamex requested, but the holders of the Notes refused, to extend the
25 maturity date of the Senior Loans.  Post-petition, Plamex is continuing its efforts to seek a further
26 extension of the maturity date of the Senior Loans.  As of the Petition Date, the holders of the
27 Senior Loans contend that at least $107,779,709.71 in principal, interest, default interest, late

charges, advances, administrative, liquidation and servicing fees and expenses, attorneys' fees, and other costs and expenses.

10.     In June 2016, at the time of the Senior Loans, the Plaza Mexico property was appraised at approximately $184-187 million.  Plamex has been advised by Wells Fargo of, and has been provided with a written report which reflects, an appraised value of $170 million for the Plaza Mexico property as of October 2020 (which appraisal report was apparently commissioned by the Servicer).

11.     ***3100 – Mezzanine Loans.***  Concurrently with the Senior Loans, on June 16, 2016, 3100 obtained $14,000,000 in mezzanine loans also from Natixis, New York Branch ("Mezzanine Loans").  These Mezzanine Loans were also contemporaneously or subsequently sold, conveyed and assigned to Waterfall Olympic Fund Grantor Trust, Series III ("Waterfall") and Quarry Head 2017-1 Grantor Trust ("Quarry Head").  The Mezzanine Loans were primarily secured by a pledge of all of 3100's membership interest in and to Plamex pursuant to a "*Pledge and Security Agreement*."  The holders of the Mezzanine Loans also purportedly perfected their liens on substantially all assets of 3100 by the recording of UCC-1 financing statements in the States of Delaware and California.  3100 is advised that Waterfall and Quarry Head assert that the balance of the Mezzanine Loans totaled more than $18 million as of the Petition Date.

12.     Because 3100's ability to service its debt payments on the Mezzanine Loans also hinges on the performance of Plaza Mexico, which it was unable to do as a result of the pandemic and its financial effects, 3100 also went into default as to the Mezzanine Loans.  Waterfall and Quarry Head sought to foreclose upon the pledge and lien upon 3100's membership interests in Plamex, with a UCC foreclosure sale scheduled for April 15, 2021.  Plamex and 3100 commenced their bankruptcy cases to avoid foreclosure upon such membership interests and to preserve these interests and the Plaza Mexico property for all constituents.

13.     Pursuant to an "*Intercreditor Agreement*" between Natixis, New York Branch with itself on behalf of the Senior Loans and the Mezzanine Loans, the Mezzanine Loans are, among other things, subordinated to the Senior Loans, including as to payment.

**C.      Current Posture Of The Debtors' Bankruptcy Cases.**

14.      Following the Petition Date, the Debtors were required to address the various substantial administrative matters attendant to the commencement of their bankruptcy cases. These matters included the preparation of the Debtors' respective Schedules of Assets and Liabilities (collectively, the "Schedules") and Statement of Financial Affairs ("SOFA"), which the Debtors timely filed.  3100 timely filed its Schedules and SOFA on April 28, 2021.  Plamex timely filed its Schedules and SOFA on May 12, 2021, after obtaining an extension of its deadline to file the Schedules and SOFA from the Court.

15.      Additionally, immediately after the Petition Date, the Debtors prepared and submitted materials required by the Office of the United States Trustee (the "OUST").  On April 21, 2021, both of the Debtors timely their 7-Day Packages to the OUST.  The Debtors attended their initial debtor's interviews on May 3, 2021, and attended their meetings of creditors required under 11 U.S.C. § 341(a) on May 20, 2021, all of which were conducted by the OUST.  The Debtors have also prepared and filed with the Court their monthly operating reports due to date.

16.      Pursuant to a "*Management Agreement*" dated September 22, 2011 between Plamex and Greenland Property Management, LLC ("Greenland"), Plamex employed Greenland to rent, lease, operate and manage the Plaza Mexico property.  Greenland is an entity that is also ultimately owned by Donald Chae and Min Chae.  Greenland, in conjunction with other property management companies owned by the Chae brothers, including M+D Properties (collectively, "Manager"), manage the day-to-day operations and affairs of the Plaza Mexico shopping center.

17.      Plamex, Manager and the holders of the Senior Loans are also parties to a "*Deposit Account Agreement*" pursuant to which Plamex and Manager agreed that all rents from the property would be deposited and paid into a lockbox held at Wells Fargo Bank.  A "*Deposit Account Control Agreement*" (*i.e.,* a "DACA") was executed by and among Plamex, Natixis, New York Branch, and Wells Fargo Bank setting forth the rights of the parties with respect to the lockbox account.

18.     As of the Petition Date, the balances in the lockbox and many other reserve accounts maintained by the Servicer on behalf of the holders of the Notes were approximately $4.5 million (collectively, the "Reserves").  As mandated by the OUST, immediately following the filing of their bankruptcy petitions, the Debtors each opened their respective general, payroll and tax debtor-in-possession bank accounts ("DIP Accounts").  Plamex took steps immediately after the Petition Date to close its pre-petition bank accounts, and to withdraw all funds contained in those pre-petition accounts so that such funds could be deposited into Plamex's newly-established DIP Accounts at Axos Bank.

19.     On the Petition Date, Plamex filed its emergency motion for authority to use cash collateral of Wells Fargo, the holders of the Senior Loans, to operate its business on an interim basis pending a final hearing ("CC Motion").  The CC Motion did not seek Court approval to continue with the pre-petition cash management system (i.e., use of the lockbox account held at Wells Fargo Bank), as Plamex desired for all of the funds of its bankruptcy estate (primarily rents from Plaza Mexico) to be deposited and disbursed through its DIP Accounts, with timely reporting as required by the OUST and other applicable provisions of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure.

20.     Prior to the April 16, 2021 interim hearing on the CC Motion, Plamex obtained Wells Fargo's consent for use of cash collateral on an interim basis, based on agreed terms reflected in the interim order approving the CC Motion entered by the Court on March 23, 2021 (the "Interim CC Order").  As reflected in the Interim CC Order, the Court also set a final hearing on the CC Motion for May 11, 2021.

21.     Prior to the May 11, 2021 final hearing on the CC Motion, Plamex and Wells Fargo entered into a written stipulation for use of cash collateral ("CC Stipulation") which provided for, among other things, authority for Plamex to use cash collateral through August 31, 2021 pursuant to a budget and other terms stated in the CC Stipulation.  The CC Stipulation also provided for Plamex to start making adequate protection payments to Wells Fargo, commencing on May 15, 2021 and by the 15th day of every month thereafter, in an amount equal to the accrued interest at

the non-default rate which is approximately $400,000 per month.  The payments due in May and June 2021 were to be paid from and funded out of the Reserves, with all payments thereafter to be paid from and funded out of Plamex's post-petition operations and cash.

22.    At the final hearing on May 11, 2021, the Court approved the CC Stipulation on a final basis, and set a further hearing on the CC Motion for August 19, 2021.  The Court entered a final order granting the CC Motion on a final basis on May 12, 2021 (the "<u>Final CC Order</u>").

23.    Plamex has been paying the expenses set forth in the Court-approved budget in accordance with the terms of the Interim CC Order and Final CC Order.

24.    At the Debtors' initial chapter 11 status conferences conducted on June 17, 2021, the Court established August 20, 2021 as the bar date for the filing of proofs of claim in each of the Debtors' bankruptcy cases (the "<u>Claims Bar Date</u>").  On June 21, 2021, each of the Debtors filed and served a notice of the Claims Bar Date on all its respective creditors.

25.    The Debtors have made the decision that the best interests of their estates are served by their employment of a highly qualified real estate broker to assist the Debtors either to sell Plaza Mexico for the most money possible or to find an investment partner to team up with the Debtors either in connection with a sale process or a reorganization process.

26.    After interviewing and consulting with a number of qualified real estate brokers, the Debtors decided that NAI Capital Commercial, Inc. (the "<u>NAI Capital</u>") was the ideal broker to represent the Debtors in these cases.  NAI Capital has approximately 223 brokers working in 13 offices throughout Southern California, and NAI Capital has an extremely strong presence in Southern California yet is part of a worldwide network that provides NAI Capital with access to prospective buyers and investors worldwide.

27.    On June 11, 2021, the Debtors filed their application to jointly employ NAI Capital as their real estate broker (the "<u>NAI Application</u>") in accordance with the written listing agreement attached as an exhibit thereto.

28.    On June 17, 2021, in anticipation of its objection to the NAI Application, Wells Fargo filed a motion seeking the entry of an order, pursuant to Federal Rule of Bankruptcy

Procedure 2004, authorizing Wells Fargo to (i) conduct examinations of Donald Chae, in his capacity as the managing member of the Debtors, and Luis Valenzuela, in his capacity as the day-to-day manager of the Plaza Mexico shopping center, and (ii) compel the production of documents as requested therein (the "Rule 2004 Motion").   On June 22, 2021, the Court entered an order granting the Rule 2004 Motion.

29.     On June 24, 2021, Wells Fargo filed its objection to the NAI Application (the "Objection").   On June 28, 2021, Quarry Head and Waterfall filed a joinder to Wells Fargo's Objection (the "Joinder").

30.     On July 7, 2021, Wells Fargo took the examination of Luis Valenzuela.  On July 9, 2021, Wells Fargo took the examination of Donald Chae.  Documents which were responsive to Wells Fargo's document requests (as set forth in the Rule 2004 Motion) were previously produced by the Debtors on June 7, 2021, pursuant to an informal request from Wells Fargo.  Following the examinations of Mr. Valenzuela and Mr. Chae, the Debtors produced additional documents to Wells Fargo.

31.     On July 8, 2021, the Debtors filed their reply to the Objection and Joinder.  The hearing on the NAI Application is set for July 15, 2021.

**D.    The Need For An Extension Of The Debtors' Exclusive Periods To File A Plan And Obtain Acceptances Thereof.**

32.     Pursuant to 11 U.S.C. § 1121(d), the Debtors' exclusive periods to file a plan of reorganization ("Plan") and obtain acceptances thereof will expire, without extension, on August 12, 2021 and October 11, 2021, respectively.

33.     The Debtors have been required to devote time during the three-month period following the Petition Date to comply with numerous Chapter 11 administrative requirements, to address the document requests made by Wells Fargo and participate in the examinations of Luis Valenzuela and Donald Chae conducted by Wells Fargo, and to consult with and interview potential real estate brokers, all in addition to operating the Plaza Mexico shopping center and

addressing the myriad of inquiries received from the Debtors' creditors and tenants, and other parties in interest in these cases.

34.     While the Debtors have identified an exit strategy for their bankruptcy cases – *i.e.*, either to sell Plaza Mexico for the most money possible or to find an investment partner to team up with the Debtors either in connection with a sale process or a reorganization process – and have identified and sought to employ NAI Capital as their real estate broker in connection with a marketing and sale process for Plaza Mexico, the Debtors have not yet obtained Court approval of their proposed employment of NAI Capital, and have not had adequate time to market and solicit offers for Plaza Mexico or to prepare and file a Plan by the current exclusivity deadline of August 12, 2021.

35.     The Debtors also require additional time to allow the Claims Bar Date (which the Court has established as August 20, 2021 in each of the Debtors' cases) to pass so that the Debtors may carefully analyze the amount, validity, and extent of the claims asserted against each of the Debtors and formulate Plan terms which are feasible and fully address the universe of claims asserted against them in these cases.

36.     Given the foregoing, the Debtors believe that it would be premature to file a Plan at this time.  A premature plan will likely lead to further delays in the plan confirmation process and will serve only to increase the administrative costs of the Debtors' cases as any plan filed now would likely need to be amended or modified.

37.     Accordingly, by this Motion, the Debtors seek an order extending their exclusive periods to file a Plan (or Plans) and obtain acceptances thereof for approximately 90 days, to and including November 10, 2021 and January 10, 2022, respectively.  The Debtors seek the foregoing extensions without prejudice to their rights to seek further extensions of exclusivity.

///

///

///

///

## II.

## DISCUSSION

**A.      The Court Has Authority To Extend The Debtors' Exclusive Periods To File A Plan Of Reorganization And Obtain Acceptances Thereof.**

Pursuant to Sections 1121(b) and (c)  of the Bankruptcy Code, a Chapter 11 debtor has the exclusive right to file a plan of reorganization for a period of 120 days following the filing of the petition and an additional 60 days thereafter to solicit acceptances to any plan so filed.  11 U.S.C. §§ 1121(b) and (c).

Section 1121(d) of the Bankruptcy Code allows the Court to extend or reduce these time periods "for cause."  Section 1121(d) of the Bankruptcy Code provides, in pertinent part, as follows:

> "(d)(1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and
>
> (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.
>    (2)(A)  The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.
>        (B)  The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter."

11 U.S.C. § 1121(d)(1) and (2).

The decision of whether to grant a request to extend or shorten the exclusivity periods lies within the sound discretion of the bankruptcy judge.  *In re AmKo Plastics, Inc.,* 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996); *In re Gibson & Cushman Dredging Corp.,* 101 B.R. 405, 409 (Bankr. E.D.N.Y. 1989).  The "cause" standard referred to in Section 1121 has been referred to as a general standard that allows the bankruptcy court "maximum flexibility to suit various types of reorganization proceedings."  *In re Public Service Company of New Hampshire*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988).

14

The Bankruptcy Code does not define "cause" or establish formal criteria for extensions of the exclusivity periods. Consistent with a balanced, integrated approach to reorganizations under chapter 11, Congress contemplated that bankruptcy courts would apply the exclusivity provisions flexibly so as to promote the orderly, consensual and successful reorganization of a debtor's affairs.  *See* H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 220, 232 (1977) [hereinafter "House Report"].  Appropriate "cause" justifying extensions of the exclusivity periods should be interpreted in the context of the overall purposes of chapter 11 and the means Congress established for accomplishing them.  Congress recognized that a debtor must have a reasonable time to formulate and negotiate a plan of reorganization.  Denying a debtor an exclusive period to propose and confirm a plan could dissuade a debtor from choosing chapter 11 and encourage creditors to act unilaterally.  House Report at 231-32.  *See also, In re Pine Run Trust, Inc.*, 67 B.R. 432, 434 (Bankr. E.D. Pa. 1936) (exclusivity determinations should balance creditor and debtor interests in favor of reorganization).

In determining whether "cause" exists to extend a debtor's exclusivity periods, bankruptcy courts often consider the following so-called *Dow Corning* factors: (1) the size and complexity of the case; (2) the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (3) the existence of good faith progress toward reorganization; (4) the fact that the debtor is paying its bills as they become due; (5) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (6) whether the debtor has made progress in negotiations with its creditors; (7) the amount of time which has elapsed in the case; (8) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and (9) whether an unresolved contingency exists.  *In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997).

The Debtors respectfully submit that an evaluation of the circumstances of these cases demonstrates that most, if not all, of the *Dow Corning* factors weigh in favor of an extension of the Debtors' exclusivity periods.

1    **1.    _The size and complexity of the case_.**

2        The Debtors' bankruptcy cases involve a very large, 403,242 square-foot community

3    shopping center with more than 200 tenants, which, according to a recent appraisal commissioned

4    by the Servicer, has a current market value of approximately $170 million (and in the Debtors'

5    view, significantly higher market value).  Wells Fargo and Quarry Head/Waterfall assert secured

6    claims totaling more than $125 million in the Debtors' cases.  Given the value of Plaza Mexico,

7    and the amount of claims asserted against the Debtors, the Debtors' bankruptcy cases are neither

8    small nor simple chapter 11 bankruptcy cases.  In fact, on June 9, 2021, the OUST filed that certain

9    _Notice Of Applicability Of Large-Case United States Trustee Fee Guidelines_, which notice is filed

10    in every case identified as a "mega" case within this District.  Based on the foregoing, the Debtors

11    respectfully submit that this factor weighs in favor of an extension of the Debtors' exclusivity

12    periods.

13    **2.    _The necessity of sufficient time to permit the debtor to negotiate a plan of_**

14    **_reorganization and prepare adequate information_.**

15        The Debtors' bankruptcy cases have only been pending for three (3) months.  An objective

16    evaluation of the facts and circumstances of the Debtors' case reflects that the Debtors have not

17    had sufficient time to permit the Debtors to formulate and negotiate a Plan or prepare adequate

18    information in connection with such Plan.  The Debtors require additional time to obtain Court

19    approval of their employment of a real estate broker, to market and solicit offers for Plaza Mexico

20    (with the assistance of a real estate broker), and to analyze all of the claims asserted against the

21    Debtors (once the Claims Bar Date has passed) before the Debtors can formulate the terms of a

22    feasible Plan, engage in Plan discussions and negotiations with their secured creditors and other

23    constituents, and prepare all of the information required to be submitted in connection with a Plan.

24    Given the foregoing, the Debtors' request for additional time to formulate and negotiate a Plan and

25    prepare adequate information in connection with such Plan is both reasonable and warranted.

26    Accordingly, this factor weighs in favor of an extension of the Debtors' exclusivity periods.

27

28

**3.**     _**The existence of good faith progress toward reorganization**_.

The Debtors submit that they have been working, and will continue to work, in good faith and with reasonable diligence to progress towards a successful reorganization in these bankruptcy cases.  Since the Petition Date, the Debtors have diligently addressed their reporting and other compliance requirements, responded to Wells Fargo's document requests, attended Wells Fargo's examinations of Mr. Valenzuela and Mr. Chae, identified an exit strategy for their bankruptcy cases, and taken steps to implement such exit strategy by, among other things, identifying and seeking Court approval of the employment of a real estate broker to engage in a robust marketing and sale process for Plaza Mexico.  The Debtors anticipate that they will be able to focus on such marketing and sale process once they are successful in employing a real estate broker and, upon embarking on such marketing and sale process, the Debtors will be able to formulate and negotiate the terms of a confirmable Plan (or Plans).  Accordingly, the Debtors respectfully submit that this factor also weighs in favor of an extension of the Debtors' exclusivity periods.

**4.**     _**The fact that the debtor is paying its bills as they become due**_.

As reflected in the monthly operating reports that have been filed by Plamex to date[1], Plamex has been paying, and will continue to pay, its post-petition operating expenses as they become due.  As reflected in the monthly operating reports that have been filed by 3100 to date, 3100 has no regular operating expenses.  Based on the foregoing, the Debtors respectfully submit that this factor weighs in favor of an extension of the Debtors' exclusivity periods.

**5.**     _**Whether the debtor has demonstrated reasonable prospects for filing a viable plan**_.

The Debtors have more than a reasonable prospect for filing a viable plan (or plans) in these bankruptcy cases.  Given the estimated current market value of Plaza Mexico (_i.e._, not less than $170 million), and the amounts currently asserted to be owed to secured creditors Wells Fargo

---

[1] In accordance with Rule 201 of the Federal Rules of Evidence, the Debtors request that the Court take judicial notice of the Monthly Operating Reports filed by Plamex for the months of April, 2021 [Doc. No. 87] and May, 2021 [Doc. No. 111], as well as the Monthly Operating Reports filed by 3100 for the months of April, 2021 [Doc. No. 86] and May, 2021 [Doc. No. 110].

and Quarry Head/Waterfall (*i.e.*, totaling approximately $125 million), there is equity of at least $25 million in Plaza Mexico (if not significantly more) to support the Debtors' efforts to propose a feasible plan of reorganization which provides for a recovery to all of the Debtors' creditors. Thus, the Debtors respectfully submit that this factor weighs in favor of an extension of the Debtors' exclusivity periods.

> **6.      _Whether the debtor has made progress in negotiations with its creditors_.**

The Debtors have been working diligently and in good faith since the Petition Date to take the actions necessary to be in a position to formulate the terms of a feasible Plan in these cases. This includes the Debtors' efforts to identify and seek Court approval of the employment of a real estate broker.   Notwithstanding the Objection to the NAI Application (and Joinder thereto by Quarry Head and Waterfall), NAI Capital has worked diligently with the Debtors to formulate and implement a global marketing plan for Plaza Mexico, and has already received a significant level of interest from numerous prospective buyers and investors.  The Debtors believe it is somewhat premature to engage in substantive Plan discussions and negotiations with their secured creditors (and other constituents) until a real estate broker is employed in these cases and the marketing/sale process for Plaza Mexico is formally underway.  Once such marketing/sale process has progressed and the market for Plaza Mexico has been tested, the Debtors intend to engage in discussions with the major constituents in these cases, including Wells Fargo, Quarry Head, Waterfall, and the Debtors' unsecured creditors in the hopes of reaching agreement regarding a consensual Plan. Accordingly, the Debtors respectfully submit that this factor also weighs in favor of an extension of the Debtors' exclusivity periods.

> **7.      _The amount of time which has elapsed in the case_.**

This is the Debtors' first request to extend their plan exclusivity periods.  The Debtors' bankruptcy cases have been pending for only three (3) months.  Based on the foregoing, the Debtors respectfully submit that this factor weighs in favor of an extension of the Debtors' exclusivity periods.

**8.**      ***Whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands***.

Courts have found cause to justify an extension of a chapter 11 debtor's exclusivity periods where there is no evidence that an extension is being sought for purposes of pressuring creditors into acceding to a debtor's reorganization demands.  *See In re Pine Run Trust, Inc., supra*.  The Debtors' request for extensions of their plan exclusivity periods in these cases – their first request – is being made in good faith and is not being made for the purpose of pressuring creditors into acceding to certain plan terms.  On the contrary, the Debtors are motivated by their desire to pursue a consensual plan of reorganization, for the benefit of all of their creditors, in an orderly fashion and with minimal expense to their estates.  Accordingly, the Debtors respectfully submit that this factor also weighs in favor of an extension of the Debtors' exclusivity periods.

**9.**      ***Whether an unresolved contingency exists***.

The Debtors' application to employ NAI Capital, which has been objected to by Wells Fargo, Quarry Head and Waterfall, is an unresolved contingency which must be resolved before the Debtors can pursue a sale of Plaza Mexico and realistically take steps to formulate and implement an exit strategy in these cases.  In addition, the Debtors believes that it would be prudent to wait until the Claims Bar Date (*i.e.*, August 20, 2021) has passed to determine the universe of claims that will need to be accounted for in a Plan.  Accordingly, the Debtors believe that it would be premature to file a Plan at this time.  A premature Plan will likely lead to further delays in the plan confirmation process and will serve only to increase the administrative costs of these cases as any Plan filed now would likely need to be amended or modified.  Based on the foregoing, the Debtors respectfully submit that this factor weighs in favor of an extension of the Debtors' exclusivity periods.

As the analysis of the *Dow Corning* factors above demonstrates, all of the factors weigh in favor of a further extension of the Debtors' exclusivity periods.  The Motion to extend the Debtors' exclusivity periods should therefore be granted.

**B.**     **Progress Towards Reorganization And Proper Motives Warrant An Extension Of The Debtors' Plan Exclusivity Periods.**

Courts have recognized that the diligence of management and proper administration of the case are yet additional factors supporting an extension of the exclusivity periods. *See In re United Press International, supra; In re Trainer's, Inc.*, 17 B.R. 246, 247 (Bankr. E.D. Pa. 1982). The Debtors are properly administering their Chapter 11 cases in that they have complied with all of the requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and are in substantial compliance with the requirements of the Office of the United States Trustee applicable to debtors in possession. Under these circumstances, the Court may extend the Debtors' exclusivity periods for filing a Plan and obtaining acceptances thereof with the confidence that the Debtors are in substantial compliance with the requirements that are a condition to the Debtors' maintaining control of their bankruptcy cases.

## III.

## CONCLUSION

Based upon all of the foregoing, the Debtors respectfully request that this Court enter an order:

(1)     granting the Motion in its entirety;

(2)     extending each of the Debtors' exclusive periods to file a Plan and obtain acceptances thereof for approximately 90 days, to and including November 10, 2021 and January 10, 2022, respectively, without prejudice to the Debtors' rights to seek further extensions of such periods; and

(3)     granting such further relief as the Court deems just and proper.

Dated: July 15, 2021                    PLAMEX INVESTMENT, LLC, *et al.*

By:___/s/ Juliet Y. Oh_____
                                        RON BENDER
                                        MONICA Y. KIM
                                        JULIET Y. OH
                                        Counsel for Chapter 11 Debtors and
                                        Debtors in Possession

### DECLARATION OF LUIS C. VALENZUELA

I, Luis C. Valenzuela, hereby declare as follows:

1.       I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.  I am the Executive Vice President of M+D Properties, a California corporation, which is the manager (the "Manager") of Plamex Investment, LLC, a Delaware limited liability company ("Plamex"), and 3100 E. Imperial Investment, LLC, a Delaware limited liability company ("3100," and together with Plamex, the "Debtors"), the chapter 11 debtors and debtors-in-possession herein.  In my capacity as the Executive Vice President of Manager, I am in charge of overseeing, supervising and monitoring all aspects of the commercial real property owned by Plamex commonly known as "Plaza Mexico," a 403,242 square-foot community shopping center offering specialty retail and dining located in Lynwood, California just north of the 105 freeway, approximately 20 minutes from LAX ("Plaza Mexico" or the "Property"), including leasing, collection of rents, financing, maintenance and repairs of the property, and security for the Property.  I have been intimately involved in the development and operation of Plaza Mexico for over 5 years.  I am therefore familiar with the business operations and financial records of the Debtors.

2.       I make this declaration in support of that certain *Notice Of Motion And Motion For Order Extending Debtors' Exclusive Periods To File Plan Of Reorganization And Obtain Acceptances Thereof* (the "Motion"), to which this declaration is attached.  All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Motion.

3.       On April 14, 2021 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have operated their businesses, managed their financial affairs, and operated their bankruptcy estates as debtors-in-possession.

4.       The two individuals who serve as the principals of the Debtors are Min Chae and Donald Chae, brothers who each have more than 30 years of experience in real estate investment, development, and management.  The Chae brothers' specialty and expertise rest in creating vibrant

and thriving cultural retail centers at previously under-performing locations, particularly in ethnically diverse areas.  The "Plaza Mexico" is one such project and the crown jewel of the Chae brothers' real estate portfolio.

5.      Plamex is the fee simple owner of Plaza Mexico ("<u>Plaza Mexico</u>" or the "<u>Property</u>"), a 403,242 square-foot community shopping center offering specialty retail and dining located in Lynwood, California just north of the 105 freeway (approximately 20 minutes from LAX).  For over 20 years, Plaza Mexico has been a community landmark in Southern California.  The premise behind Plaza Mexico is to represent the rich Latino heritage of the community and create an authentic Mexican cultural landscape through the incorporation of Mexican architecture, authentic building materials, notable monuments, and a forum to celebrate all Mexican fiestas.  Currently, Plaza Mexico is occupied by tenants that include Food 4 Less, Rite Aid, Curacao, Chuck E. Cheese, and a wide variety of restaurants and retailers of clothing, electronics, shoes, toys, jewelry, and furniture.  The Property also generates a modest revenue from advertising it sells on its LED tower, which overlooks the I-105 Freeway.

6.      Plamex is wholly-owned by its sole member, 3100.  In turn, 3100 is wholly owned by an entity called Placo Investment, LLC ("<u>Placo</u>"), and Placo is wholly-owned by ISLT Investment, LLC ("<u>ISLT</u>").  Neither Placo nor ISLT has filed its own bankruptcy case.  I am advised and believe that the multi-layered organizational structure of the Debtors and their parent companies, as well as the terms of the limited liability agreements for the Debtors, as amended and restated, are the direct result of pre-petition structured finance and securitization transactions.

7.      The Debtors' bankruptcy filings were the results of two primary factors: (i) substantial loss of rent revenue from Plamex's tenants due to the COVID-19 pandemic which caused the Debtors to default on their obligations to their secured lenders, and (ii) efforts by the secured lenders to foreclose on their collateral, including a foreclosure sale on the membership interests held by 3100 in Plamex, which was scheduled by 3100's secured lenders for April 15, 2021.

8.    Plaza Mexico has not been immune to the financial effects of the COVID-19 pandemic.  Due to government-imposed stay-at-home orders and related restrictions which started in March of 2020, Plaza Mexico's tenants were required to close and/or experienced a drastic loss of business, sales and income.  Many of the tenants did not pay full or any rents to Plamex, which, in turn, resulted in a default by the Debtors to their secured lenders.  The Debtors and their parent companies were in the process of re-financing at the time the pandemic hit, which halted the process. Recently, as California has started to ease restrictions, rent collections at Plaza Mexico have been brought almost back to pre-pandemic levels.  There is an increase in foot traffic, and tenants are starting to pay rents timely.  However, despite these positive movements, the secured lenders who provided mezzanine loans to 3100 were unwilling to stop their April 15, 2021 foreclosure sale.  As a result, the Debtors had no choice but to file their bankruptcy petitions to preserve their assets for the benefit of all constituencies.

9.    ***Plamex – Senior Loans.***    On June 16, 2016, Plamex, as borrower, obtained $106,000,000 in loans from Natixis, New York Branch ("Senior Loans"), secured by a "*Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing*" ("Deed of Trust") upon the Plaza Mexico real property, and liens upon substantially all other assets of Plamex purportedly perfected by, among other things, the recording of UCC-1 financing statements in the States of Delaware and California. I am advised and believe that the promissory note evidencing the Senior Loans was contemporaneously severed and split into six replacement promissory notes: Replacement Promissory Note A-1 for $28,000,000, Replacement Promissory Note A-2 for $20,000,000, Replacement Promissory Note A-3 for $20,000,000, Replacement Promissory Note A-4 for $20,000,000, Replacement Promissory Note A-5 for $10,000,000, and Replacement Promissory Note A-6 for $8,000,000 (collectively, the "Notes"), all of which Notes I am advised are held by Wells Fargo Bank, National Association, as Trustee for Morgan Stanley Capital I Trust 2016-UBS11, Commercial Mortgage-Pass Through Certificates, Series 2016-UBS11 ("Wells Fargo").   I am advised and believe that CWCapital Asset Management, LLC is the servicer ("Servicer") of all of the Notes.

10.     The Senior Loans matured on or about July 5, 2021. The Senior Loans accrue non-default interest at a fixed rate of 4.598%, and default interest rate that is the lesser of (i) maximum rate permitted by applicable law, or (ii) 5% above the regular rate.  Plamex went into default on the Senior Loans in May 2020.   Given the pandemic and its financial effects, including Plamex's efforts to re-finance the Senior Loans which was in process during the Spring of 2020 when the pandemic suddenly hit, Plamex requested, but the holders of the Notes refused, to extend the maturity date of the Senior Loans.  Post-petition, Plamex is continuing its efforts to seek a further extension of the maturity date of the Senior Loans.  I am advised and believe that, as of the Petition Date, the holders of the Senior Loans contend that at least $107,779,709.71 in principal, interest, default interest, late charges, advances, administrative, liquidation and servicing fees and expenses, attorneys' fees, and other costs and expenses.

11.     In June 2016, at the time of the Senior Loans, the Plaza Mexico property was appraised at approximately $184-187 million.  I have been advised by Wells Fargo of, and have been provided with a written report which reflects, an appraised value of $170 million for the Plaza Mexico property as of October 2020 (which appraisal report I am advised and believe was commissioned by the Servicer).

12.     ***3100 – Mezzanine Loans.***  Concurrently with the Senior Loans, on June 16, 2016, 3100 obtained $14,000,000 in mezzanine loans also from Natixis, New York Branch ("Mezzanine Loans").  I am advised and believe that the Mezzanine Loans were also contemporaneously or subsequently sold, conveyed and assigned to Waterfall Olympic Fund Grantor Trust, Series III ("Waterfall") and Quarry Head 2017-1 Grantor Trust ("Quarry Head").  The Mezzanine Loans were primarily secured by a pledge of all of 3100's membership interest in and to Plamex pursuant to a "*Pledge and Security Agreement.*"  The holders of the Mezzanine Loans also purportedly perfected their liens on substantially all assets of 3100 by the recording of UCC-1 financing statements in the States of Delaware and California.  I am advised and believe that Waterfall and Quarry Head assert that the balance of the Mezzanine Loans totaled more than $18 million as of the Petition Date.

13.     Because 3100's ability to service its debt payments on the Mezzanine Loans also hinges on the performance of Plaza Mexico, which it was unable to do as a result of the pandemic and its financial effects, 3100 also went into default as to the Mezzanine Loans.  Waterfall and Quarry Head sought to foreclose upon the pledge and lien upon 3100's membership interests in Plamex, with a UCC foreclosure sale scheduled for April 15, 2021.  Plamex and 3100 commenced their bankruptcy cases to avoid foreclosure upon such membership interests and to preserve these interests and the Plaza Mexico property for all constituents.

14.     Pursuant to an "*Intercreditor Agreement*" between Natixis, New York Branch with itself on behalf of the Senior Loans and the Mezzanine Loans, the Mezzanine Loans are, among other things, subordinated to the Senior Loans, including as to payment.

15.     Following the Petition Date, the Debtors were required to address the various substantial administrative matters attendant to the commencement of their bankruptcy cases. These matters included the preparation of the Debtors' respective Schedules of Assets and Liabilities (collectively, the "Schedules") and Statement of Financial Affairs ("SOFA"), which the Debtors timely filed.  3100 timely filed its Schedules and SOFA on April 28, 2021.  Plamex timely filed its Schedules and SOFA on May 12, 2021, after obtaining an extension of its deadline to file the Schedules and SOFA from the Court.

16.     Additionally, immediately after the Petition Date, the Debtors prepared and submitted materials required by the Office of the United States Trustee (the "OUST").  On April 21, 2021, both of the Debtors timely their 7-Day Packages to the OUST.  The Debtors attended their initial debtor's interviews on May 3, 2021, and attended their meetings of creditors required under 11 U.S.C. § 341(a) on May 20, 2021, all of which were conducted by the OUST.  The Debtors have also prepared and filed with the Court their monthly operating reports due to date.

17.     I am advised and believe that, on June 9, 2021, the OUST filed a *Notice Of Applicability Of Large-Case United States Trustee Fee Guidelines* in the Debtors' cases, which notice is filed in every case identified as a "mega" case within the Central District of California.

18.    Pursuant to a "*Management Agreement*" dated September 22, 2011 between Plamex and Greenland Property Management, LLC ("Greenland"), Plamex employed Greenland to rent, lease, operate and manage the Plaza Mexico property.  Greenland is an entity that is also ultimately owned by Donald Chae and Min Chae.  Greenland, in conjunction with other property management companies owned by the Chae brothers, including M+D Properties (collectively, "Manager"), manage the day-to-day operations and affairs of the Plaza Mexico shopping center.

19.    Plamex, Manager and the holders of the Senior Loans are also parties to a "*Deposit Account Agreement*" pursuant to which Plamex and Manager agreed that all rents from the property would be deposited and paid into a lockbox held at Wells Fargo Bank.  A "*Deposit Account Control Agreement*" (*i.e.,* a "DACA") was executed by and among Plamex, Natixis, New York Branch, and Wells Fargo Bank setting forth the rights of the parties with respect to the lockbox account.

20.    As of the Petition Date, the balances in the lockbox and many other reserve accounts maintained by the Servicer on behalf of the holders of the Notes were approximately $4.5 million (collectively, the "Reserves").  As mandated by the OUST, immediately following the filing of their bankruptcy petitions, the Debtors each opened their respective general, payroll and tax debtor-in-possession bank accounts ("DIP Accounts").  Plamex took steps immediately after the Petition Date to close its pre-petition bank accounts, and to withdraw all funds contained in those pre-petition accounts so that such funds could be deposited into Plamex's newly-established DIP Accounts at Axos Bank.

21.    On the Petition Date, Plamex filed its emergency motion for authority to use cash collateral of Wells Fargo, the holders of the Senior Loans, to operate its business on an interim basis pending a final hearing ("CC Motion").  The CC Motion did not seek Court approval to continue with the pre-petition cash management system (*i.e.,* use of the lockbox account held at Wells Fargo Bank), as Plamex desired for all of the funds of its bankruptcy estate (primarily rents from Plaza Mexico) to be deposited and disbursed through its DIP Accounts, with timely reporting as required by the OUST and other applicable provisions of the Bankruptcy Code and Federal

Rules of Bankruptcy Procedure.

22.     Prior to the April 16, 2021 interim hearing on the CC Motion, Plamex obtained Wells Fargo's consent for use of cash collateral on an interim basis, based on agreed terms reflected in the interim order approving the CC Motion entered by the Court on March 23, 2021 (the "Interim CC Order").  As reflected in the Interim CC Order, the Court also set a final hearing on the CC Motion for May 11, 2021.

23.     Prior to the May 11, 2021 final hearing on the CC Motion, Plamex and Wells Fargo entered into a written stipulation for use of cash collateral ("CC Stipulation") which provided for, among other things, authority for Plamex to use cash collateral through August 31, 2021 pursuant to a budget and other terms stated in the CC Stipulation.  The CC Stipulation also provided for Plamex to start making adequate protection payments to Wells Fargo, commencing on May 15, 2021 and by the 15th day of every month thereafter, in an amount equal to the accrued interest at the non-default rate which is approximately $400,000 per month.  The payments due in May and June 2021 were to be paid from and funded out of the Reserves, with all payments thereafter to be paid from and funded out of Plamex's post-petition operations and cash.

24.     I am advised and believe that, at the final hearing on May 11, 2021, the Court approved the CC Stipulation on a final basis, and set a further hearing on the CC Motion for August 19, 2021.  I am advised and believe that the Court entered a final order granting the CC Motion on a final basis on May 12, 2021 (the "Final CC Order").

25.     Plamex has been paying the expenses set forth in the Court-approved budget in accordance with the terms of the Interim CC Order and Final CC Order.

26.     I am advised and believe that, at the Debtors' initial chapter 11 status conferences conducted on June 17, 2021, the Court established August 20, 2021 as the bar date for the filing of proofs of claim in each of the Debtors' bankruptcy cases (the "Claims Bar Date").  I am advised and believe that, on June 21, 2021, counsel for the Debtors filed and served a notice of the Claims Bar Date on all of the Debtors' creditors.

27.    The Debtors have made the decision that the best interests of their estates are served by their employment of a highly qualified real estate broker to assist the Debtors either to sell Plaza Mexico for the most money possible or to find an investment partner to team up with the Debtors either in connection with a sale process or a reorganization process.

28.    After interviewing and consulting with a number of qualified real estate brokers, the Debtors decided that NAI Capital Commercial, Inc. (the "NAI Capital") was the ideal broker to represent the Debtors in these cases.  I am advised and believe that NAI Capital has approximately 223 brokers working in 13 offices throughout Southern California, and NAI Capital has an extremely strong presence in Southern California yet is part of a worldwide network that provides NAI Capital with access to prospective buyers and investors worldwide.  I was the person primarily responsible for interviewing and consulting with numerous real estate brokers and believe, based upon such interviews and consultations, that NAI Capital is eminently qualified to market and sell Plaza Mexico.

29.    On June 11, 2021, the Debtors filed their application to jointly employ NAI Capital as their real estate broker (the "NAI Application") in accordance with the written listing agreement attached as an exhibit thereto.

30.    On June 17, 2021, Wells Fargo filed a motion in the Debtors' bankruptcy cases seeking the entry of an order, pursuant to Federal Rule of Bankruptcy Procedure 2004, authorizing Wells Fargo to (i) conduct examinations of Donald Chae, in his capacity as the managing member of the Debtors, and me, in my capacity as the day-to-day manager of the Plaza Mexico shopping center, and (ii) compel the production of documents as requested therein (the "Rule 2004 Motion").  I am advised and believe that, on June 22, 2021, the Court entered an order granting the Rule 2004 Motion.

31.    On June 24, 2021, Wells Fargo filed its objection to the NAI Application (the "Objection").  On June 28, 2021, Quarry Head and Waterfall filed a joinder to Wells Fargo's Objection (the "Joinder").  I have personally reviewed both the Objection and the Joinder.

32.     On July 7, 2021, Wells Fargo took my examination.  On July 9, 2021, Wells Fargo took the examination of Donald Chae.  Documents which were responsive to Wells Fargo's document requests (as set forth in the Rule 2004 Motion) were previously produced by the Debtors on June 7, 2021, pursuant to an informal request from Wells Fargo.  Following the examinations of Donald Chae and me, the Debtors produced additional documents to Wells Fargo.

33.     On July 8, 2021, the Debtors filed their reply to the Objection and Joinder.  The hearing on the NAI Application is set for July 15, 2021.

34.     Notwithstanding the Objection to the NAI Application (and Joinder thereto by Quarry Head and Waterfall), NAI Capital has worked diligently with the Debtors to formulate and implement a global marketing plan for Plaza Mexico, and has already received a significant level of interest from numerous prospective buyers and investors.

35.     I am advised and believe that the Debtors' exclusive periods to file a plan of reorganization ("Plan") and obtain acceptances thereof will expire, without extension, on August 12, 2021 and October 11, 2021, respectively.

36.     The Debtors have been required to devote time during the three-month period following the Petition Date to comply with numerous Chapter 11 administrative requirements, to address the document requests made by Wells Fargo and participate in the examinations of Mr. Chae and me conducted by Wells Fargo, and to consult with and interview potential real estate brokers, all in addition to operating the Plaza Mexico shopping center and addressing the myriad of inquiries received from the Debtors' creditors and tenants, and other parties in interest in these cases.

37.     While the Debtors have identified an exit strategy for their bankruptcy cases – *i.e.*, either to sell Plaza Mexico for the most money possible or to find an investment partner to team up with the Debtors either in connection with a sale process or a reorganization process – and have identified and sought to employ NAI Capital as their real estate broker in connection with a marketing and sale process for Plaza Mexico, the Debtors have not yet obtained Court approval of their proposed employment of NAI Capital, and have not had adequate time to market and solicit

offers for Plaza Mexico or to prepare and file a Plan by the current exclusivity deadline of August 12, 2021.

38.     I believe that the Debtors also require additional time to allow the Claims Bar Date (which the Court has established as August 20, 2021 in each of the Debtors' cases) to pass so that the Debtors may carefully analyze the amount, validity, and extent of the claims asserted against each of the Debtors and formulate Plan terms which are feasible and fully address the universe of claims asserted against them in the Debtors' cases.

39.     Given the foregoing, I believe that it would be premature for the Debtors to file a Plan at this time.  A premature plan will likely lead to further delays in the plan confirmation process and will serve only to increase the administrative costs of the Debtors' cases as any plan filed now would likely need to be amended or modified.

38.     Accordingly, the Debtors are seeking extensions of their exclusive periods to file a Plan (or Plans) and obtain acceptances thereof for approximately 90 days, to and including November 10, 2021 and January 10, 2022, respectively.

39.     The Debtors and their management have been working, and will continue to work, in good faith and with reasonable diligence to progress towards a successful reorganization in the Debtors' bankruptcy cases.  Since the Petition Date, the Debtors have diligently addressed their reporting and other compliance requirements, responded to Wells Fargo's document requests, attended Wells Fargo's examinations of Mr. Valenzuela and Mr. Chae, identified an exit strategy for their bankruptcy cases, and taken steps to implement such exit strategy by, among other things, identifying and seeking Court approval of the employment of a real estate broker to engage in a robust marketing and sale process for Plaza Mexico.  I anticipate that the Debtors will be able to focus on such marketing and sale process once they are successful in employing a real estate broker and, upon embarking on such marketing and sale process, the Debtors will be able to formulate and negotiate the terms of a confirmable Plan (or Plans).

///

///

40.    I believe it is somewhat premature for the Debtors to engage in substantive Plan discussions and negotiations with their secured creditors (and other constituents) until a real estate broker is employed in these cases and the marketing/sale process for Plaza Mexico is formally underway.  Once such marketing/sale process has progressed and the market for Plaza Mexico has been tested, the Debtors intend to engage in discussions with the major constituents in these cases, including Wells Fargo, Quarry Head, Waterfall, and the Debtors' unsecured creditors in the hopes of reaching agreement regarding a consensual Plan.

41.    The Debtors' request for extensions of their plan exclusivity periods in these cases (their first request) is being made in good faith and is not being made for the purpose of pressuring creditors into acceding to certain plan terms.  On the contrary, the Debtors desire to pursue a consensual plan of reorganization, for the benefit of all of their creditors, in an orderly fashion and with minimal expense to their estates.

42.    As reflected in the monthly operating reports that have been filed by Plamex to date, Plamex has been paying, and will continue to pay, its post-petition operating expenses as they become due.  As reflected in the monthly operating reports that have been filed by 3100 to date, 3100 has no regular operating expenses.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of July, 2021, at Lynwood, California.

_____
LUIS C. VALENZUELA

1

# PROOF OF SERVICE OF DOCUMENT

2

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business
address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

3

4

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION FOR
ORDER EXTENDING DEBTORS' EXCLUSIVE PERIODS TO FILE PLAN OF REORGANIZATION
AND OBTAIN ACCEPTANCES THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES;
DECLARATION OF LUIS C. VALENZUELA IN SUPPORT THEREOF** will be served or was served (a)
on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner
stated below:

5

6

7

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to
controlling General Orders and LBR, the foregoing document will be served by the court via NEF and
hyperlink to the document. On **July 15, 2021**, I checked the CM/ECF docket for this bankruptcy case or
adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to
receive NEF transmission at the email addresses stated below:

8

9

10

- **Ron Bender    rb@lnbyb.com**
- **Amir Gamliel     amir-gamliel-9554@ecf.pacerpro.com,
  cmallahi@perkinscoie.com;DocketLA@perkinscoie.com**
- **Nancy S Goldenberg   nancy.goldenberg@usdoj.gov**
- **Monica Y Kim   myk@lnbyb.com, myk@ecf.inforuptcy.com**
- **Daniel A Lev    dlev@sulmeyerlaw.com,
  ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com**
- **Kyle J Mathews   kmathews@sheppardmullin.com**
- **Juliet Y Oh    jyo@lnbyb.com, jyo@lnbrb.com**
- **Robert E Opera    ropera@wghlawyers.com,
  jmartinez@wghlawyers.com;mweinberg@wghlawyers.com**
- **Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com**
- **Jeffrey S Shinbrot    jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

11

12

13

14

15

16

17

18

**2.   SERVED BY UNITED STATES MAIL**: On **July 15, 2021**, I served the following persons and/or
entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true
and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and
addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be
completed no later than 24 hours after the document is filed.

19

20

21

☒  Service List continued on attached page

22

23

24

25

26

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

# F 9013-3.1.PROOF.SERVICE

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 15, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

***Served by Overnight Mail***
Honorable Erithe A. Smith
United States Bankruptcy Court
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5040 / Courtroom 5A
Santa Ana, CA 92701-4593

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 15, 2021 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                    **F 9013-3.1.PROOF.SERVICE**

Plamex and 3100
Secured, UST, Top 20, RSN

Office of the U.S. Trustee
Region 16
411 W 4th St #7160
Santa Ana, CA 92701

The Lynwood Redevelopment Agency
11330 Bullis Road
Lynwood, CA 90262

Wells Fargo Bank, N.A., as Trustee
Morgan Stanley Cap I Trust 2016-UBS
9062 Old Annapolis Road
Columbia, MD 21045

Perkins Coie LLP
2901 N. Central Ave., Suite 2000
Attn: Liana W. Spendlove
Phoenix, AZ 85012

CWCapital Asset Management
900 19th Street NW, 8th Floor
Attn: Ariel Levin/Jake Hamel
Washington, DC 20006

Natixis, New York Branch
1251 Avenue of the Americas
New York, NY 10020

Perkins Coie LLP
1888 Century Park East, Suite 1700
Attn: Mark Birnbaum
Los Angeles, CA 90067

Quarry Head 2017-1 Grantor Trust
c/o Waterfall Asset Management, LLC
1251 Ave. of the Americas, 50th Fl.
New York, NY 10020

c/o CWCapital Investments LLC
7501 Wisconsin Ave., Suite 500 West
Attn: Chris McCormack
Bethesda, MD 20814

c/o Keybank Real Estate Capital
11501 Outlook Street, Suite 300
Attn: Stephen J. Friedman
Overland Park, KS 66211

c/o Keybank Real Estate Capital
11501 Outlook Street, Suite 300
Attn: Timothy R. Gruenenfelder
Overland Park, KS 66211

Greenberg Traurig, PA
Attn: Laura Gangemi Vignola, Esq.
333 S.E. 2nd Avenue
Miami, FL 33131

Quarry Head 2017-1 Grantor Trust
c/o Waterfall Asset Management, LLC
1140 Ave. of the Americas, 7th Fl.
New York, NY 10036

WF 1105, LLC
c/o Waterfall Asset Management, LLC
Attention: General Counsel
1140 Ave of the Americas, 7th Fl
New York, New York 10036

Better & Best Building Service Inc.
1833 Avenida San Lorenzo
Fullerton, CA 92833

Bioncos La Huerta
8557 Orange Street
Downey, CA 90242

Autofin USA
3180 E. Imperial Hwy. #G
Lynwood, CA 90262

Family Acupuncture & Herb Clinic
3150 E. Imperial Hwy B8-206
Lynwood, CA 90262

Fashion Qrew
1324 E. Washington Blvd
Los Angeles, CA 90021

Bubbles Apparel
2839 Sycamore Avenue
La Crescenta, CA 91214

Grupo Concordia LA
5919 San Miguel Road
Bonita, CA 91902

Grupo Pakar LLC
9595 Six Pines Drive Suite 8210
The Woodlands, TX 77382

GTO Security
2202 S Figueroa Street, Suite 134
Los Angeles, CA 90017

Hip Hop Zone
3100 E. Imperial Hwy #1009
Lynwood, CA 90262

JPL Event Enterprise LLC
1238 South Beach Blvd
Anaheim, CA 92804

Happy Land
6732 Los Verdes Dr. #3
Rancho Palos Verdes, CA 90275

Pho VNK
3180 E. Imperial Hwy, Suite C
Lynwood, CA 90262

Planet Fitness
125 E. Elm Street, Suite 300
Conshohocken, PA 19428

Jose Alan Sandoval-Iniquez
15137 San Jose Ave
Paramount, CA 90723

The Kickin' Crab
3170 Imperial Hwy B4B102
Lynwood, CA 90262

Star Buffet Lynwood
11383 Long Beach Blvd
Lynwood, CA 90262

Real De Oaxaca
11215 Long Beach Blvd #1010
Lynwood, CA 90262

*Request for Special Notice*
Stephen T. Owens & Tania Ochoa
Alvarez-Glasman & Colvin
13181 Crossroads Parkway North
Suite 400, West Tower
City of Industry, CA 91746

*Request for Special Notice*
David M. Neff, III
Amir Gamliel, Cal. Bar No. 268121
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067