RON BENDER (SBN 143364)
MONICA Y. KIM (SBN 180139)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email:  RB@LNBYG.COM; MYK@LNBYG.COM; JYO@LNBYG.COM

Attorneys for Chapter 11 Debtors and Debtors-in-Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SANTA ANA DIVISION

| | |
|---|---|
| In re: | Lead Case No.: 8:21-bk-10958-ES |
| PLAMEX INVESTMENT, LLC, a Delaware limited liability company, | Jointly administered with 3100 E. Imperial Investment, LLC (8:21-bk-10957-ES) |
|      Debtor and Debtor in Possession. | Chapter 11 Cases |
| In re: | **DEBTORS' EMERGENCY MOTION FOR ENTRY OF ORDER MODIFYING BIDDING PROCEDURES FOR SALE OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND CERTAIN DATES AND DEADLINES RELATED THERETO** |
| 3100 E. IMPERIAL INVESTMENT, LLC, a Delaware limited liability company, | |
|      Debtor and Debtor in Possession. | |
| ☒  Affects both Debtors | [DECLARATIONS OF DONALD CHAE AND GEOFF TRANCHINA FILED CONCURRENTLY HEREWITH] |
| ☐ Affects Plamex Investment, LLC only | |
| ☐  Affects 3100 E. Imperial Investment, LLC only | Date:  [To be set]<br>Time:  [To be set]<br>Place:  Courtroom 5A (via ZoomGov) |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................8

I.    STATEMENT OF FACTS.............................................................................................8

    A.    Background........................................................................................................8

    B.    Marketing And Sale Efforts Related To The Property ...................................10

    C.    Proposed Amended Bidding Procedures And Modified Sale Timeline ........13

II.   DISCUSSION .............................................................................................................15

    A.    The Proposed Amended Bidding Procedures Should Be Approved
        By The Court ...................................................................................................15

    B.    The Court Has Authority To Modify The Previously Approved
        Bidding Procedures And Related Notices ......................................................17

    C.    Emergency Relief Is Appropriate Under The Circumstances .....................18

III.  CONCLUSION ...........................................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*In re Atlanta Packaging Products, Inc.*,
    99 B.R. 124 (Bankr. N.D. Ga. 1988)........................................................................15

*Norwest Bank Worthington v. Ahlers*,
    485 U.S. 197 (1988)...........................................................................................18

*United States v. Energy Resources Co.*,
    495 U.S. 545 (1990)...........................................................................................17

**Federal Statutes**

11 U.S.C. § 101 *et seq* ......................................................................... *passim*

11 U.S.C. § 105 ............................................................................................2, 6

11 U.S.C. § 105(a) ......................................................................................17, 18

11 U.S.C. § 363 ............................................................................................2, 6

11 U.S.C. § 363(b)(1) ......................................................................................15

11 U.S.C. § 1107 ...............................................................................................8

11 U.S.C. § 1108 ...............................................................................................8

**Federal Rules**

Fed. R. Bankr. Proc. 2002 ...............................................................................15

Fed. R. Bankr. Proc. 2081-1 ....................................................................2, 6, 18

Fed. R. Bankr. Proc. 6004 ...............................................................................15

Fed. R. Bankr. Proc. 6004-1 ..............................................................................2, 6

Fed. R. Bankr. Proc. 9075-1 ....................................................................2, 6, 18

**SUMMARY**

Pursuant to Local Bankruptcy Rules 2081-1, 6004-1, and 9075-1 and 11 U.S.C. §§ 105 and 363, Plamex Investment, LLC, a Delaware limited liability company ("Plamex"), and 3100 E. Imperial Investment, LLC, a Delaware limited liability company ("3100," and together with Plamex, the "Debtors"), the debtors and debtors-in-possession in the above-captioned, jointly administered chapter 11 bankruptcy cases, hereby move, on an emergency basis (the "Motion"), for the entry of an order (the "BPO Modification Order"), in substantially the form attached as **Exhibit 1** to the Declaration of Donald Chae filed concurrently herewith (the "Chae Declaration"), to amend certain provisions of the bidding procedures order previously entered by the Court in the Debtors' cases on December 2, 2021 [Doc. No. 231] (the "Original Bidding Procedures Order"). The specific grounds for the Motion are set forth in detail in the attached Memorandum of Points and Authorities and are briefly summarized below.

Plamex is the fee simple owner of Plaza Mexico, a 403,242 square-foot community shopping center offering specialty retail and dining located in Lynwood, California just north of the 105 freeway, approximately 20 minutes from LAX ("Plaza Mexico" or the "Property"). The premise behind Plaza Mexico is to represent the rich Latino heritage of the community and create an authentic Mexican cultural landscape through the incorporation of Mexican architecture, authentic building materials, notable monuments, and a forum to celebrate all Mexican fiestas. Currently, Plaza Mexico is occupied by approximately 200 tenants that include Food 4 Less, Rite Aid, Curacao, Chuck E. Cheese, and a wide variety of restaurants and retailers of clothing, electronics, shoes, toys, jewelry, and furniture.

By motion filed on October 28, 2021 [Doc. No. 189] (the "Bidding Procedures Motion"), the Debtors sought approval of, among other things, certain sale and bidding procedures (the "Original Bidding Procedures"), which were intended to ensure that the highest and best possible price is paid for the Property by a purchaser who has the financial ability to close on the sale of the Property (the "Sale"). As referenced in the Bidding Procedures Motion, a stalking horse real property purchase and sale agreement dated as of December 22, 2021 (including all exhibits,

schedules, and ancillary agreements related thereto, and as amended and in effect, the "SH PSA"),

was negotiated and entered into by and between Plamex and 3100's secured creditor, Quarry

Head 2017-1 Grantor Trust, a Delaware statutory trust (in its capacity as stalking horse bidder, the

"SH Bidder"), which contemplates a purchase and sale of the Property to the SH Bidder or its

nominee, on the terms and subject to the conditions provided therein, for a gross purchase price of

One Hundred Sixty-Two Million Five Hundred Thousand Dollars ($162,500.000) (the "SH Bid").

On December 2, 2021, the Bankruptcy Court entered the Original Bidding Procedures

Order, which approved the Original Bidding Procedures (as set forth in Exhibit A to such order)

and expressly authorized the Debtors and their representatives and advisors to proceed in

accordance therewith in connection with the Sale, scheduled an auction ("Auction") on February

21, 2022 should there be more than one qualifying bid for the Property, and scheduled a hearing

for the Court to consider approval of the Sale on February 24, 2022 (the "Sale Hearing").  The

Original Bidding Procedures Order also approved the form and manner of, among other notices,

(i) the notice of the sale and Original Bidding Procedures to prospective buyers and other parties-

in-interest (the "Original Sale Notice"), in substantially the form attached as Exhibit B to the

Original Bidding Procedures Order, and (ii) the notice to non-Debtors counterparties under

executory contracts and unexpired leases regarding the possible assumption and assignment

thereof (the "Original Cure Notice"), in substantially the form attached as Exhibit C to the

Original Bidding Procedures Order.   Additionally, the Original Bidding Procedures Order

approved the Plan Support Agreement entered into between the Debtors and the Waterfall Parties

(as defined below).  In conjunction with the new dates and deadlines the Debtors are seeking in

the Amended Bidding Procedures, the Debtors request authority to enter into an amendment to the

Plan Support Agreement that contains such changes as necessary to bring its terms and provisions

in line with new dates and deadlines contained in the Amended Bidding Procedures.  A copy of

the proposed First Amendment to the Plan Support Agreement is attached to the Chae Declaration

as **Exhibit 2**.

The Original Bidding Procedures, which were the result of extensive negotiations between the Debtors and the SH Bidder, were designed to ensure that the highest price possible is paid for the Property by a purchaser who has the financial ability to close on a purchase of the Property in a reasonably expeditious manner.  However, due to the intervening holidays, the complexity of the proposed Sale transaction, which requires a substantial amount of information and documentation to be made available in the data room for prospective bidders and has resulted in a later-than-expected marketing launch, the substantial amount of work involved in getting to a sale closing (including the requirement under the SH PSA or the form of it that will be used by prospective bidders that the Debtors provide reasonably satisfactory evidence of no material issues as to Cure Amounts or the other aspects of the assumption and assignment of tenant leases, which evidence may come from the provisions in orders of the Court that are entered and/or from the procurement of executed tenant estoppel certificates from a large majority of Plaza Mexico's approximately 200 tenants), and other factors, the Debtors' Court-approved real estate broker, Jones Lang LaSalle Americas, Inc. ("JLL"), recently informed the Debtors that the current operative sale timeline is too short and would not in its view result in the highest and best price being paid for the Property.  Based on the foregoing, the Debtors, JLL, and the Waterfall Parties engaged in discussions and ultimately reached consensus regarding a modified sale timeline that is acceptable to all such parties that they believe will result in a full and robust marketing process that elicits the highest and best price possible for the Property under the circumstances.  The proposed modified sale timeline, which is described in detail in the accompanying Memorandum of Points and Authorities, provides for a six (6) week extension of the bid deadline, Auction, Sale Hearing, and other sale related dates and deadlines established by the Court in the Original Bidding Procedures Order.

Pursuant to the Motion, the Debtors seek the entry of the BPO Modification Order, in substantially the form attached as Exhibit 1 to the Chae Declaration, to reflect the proposed modified sale timeline, and seek approval of an amended version of the Original Bidding Procedures in the form attached as **Exhibit A** to the BPO Modification Order (the "Amended

Bidding Procedures"), an amended version of the Sale Notice in the form attached as **Exhibit B** to the BPO Modification Order (the "Amended Sale Notice"), an amended version of the Cure Notice in the form attached as **Exhibit C** to the BPO Modification Order (the "Amended Cure Notice"), and an amendment to the Plan Support Agreement in the form attached as Exhibit 2 to the Chae Declaration.

For the reasons set forth in the Memorandum of Points and Authorities, the Debtors believes that the Amended Bidding Procedures and all of the relief sought in the Motion, including approval of the Amended Sale Notice and the Amended Cure Notice, which are all supported by and have been developed in conjunction with the SH Bidder and JLL, are in the best interests of the Debtors' estates as they have been designed to create as much bidding interest as possible, will provide certainty in connection with the bidding process and a "level playing field" for prospective bidders, operate to maximize the value of the Property, and facilitate a successful closing of the sale of the Property.

The Debtors and JLL cannot effectively launch their marketing for the Property until there is Court approval of and certainty regarding the modified sale timeline. If the Debtors were to proceed with the original sale timeline established by the Original Bidding Procedures Order, which provides for a bid deadline of February 17, 2022, JLL would be required to immediately launch its marketing for the Property to maximize interest in the Property. If JLL is forced to launch its marketing for the Property in accordance with the original sale timeline, and then the sale timeline is modified thereafter, there will undoubtedly be confusion within the market and among prospective bidders, which will hamper JLL's efforts to market the Property and secure qualified overbids for the Property. Based on the foregoing, the Debtors believe it is critical to have the Motion heard – and hopefully granted – on an expedited, emergency basis so that the Debtors and JLL can obtain certainty regarding the operative sale timeline and launch the marketing for the Property as quickly as possible.

## **ADDITIONAL INFORMATION**

This Motion is based upon Local Bankruptcy Rules 2081-1, 6004-1, and 9075-1, 11 U.S.C. §§ 105 and 363, this Motion and the accompanying Memorandum of Points and Authorities, the Chae Declaration, the Declaration of Geoff Tranchina filed concurrently herewith, and all other evidence submitted in support of the Motion, the entire record in the Debtors' cases, the statements, arguments and representations of counsel to be made at the hearing on the Motion, and any other evidence properly presented to the Court at or prior to hearing on the Motion.

In order to provide maximum notice of this Motion, concurrently with the filing of this Motion with the Court, the Debtors have served the Motion upon the Office of the United States Trustee, all secured creditors and their counsel (if known), the 20 largest unsecured creditors of the Debtors, and parties requesting special notice in the Debtors' cases via overnight mail.  Hard copies of this Motion are available upon request to the Debtors' bankruptcy counsel whose contact information is located on the upper-left hand corner of the first page of this Motion.  Upon obtaining a hearing date/time from the Court, the Debtors will serve notice of the hearing on the Motion via overnight mail or as otherwise ordered by the Court.

**WHEREFORE**, the Debtors respectfully request that this Court hold an emergency hearing on this Motion, and enter the BPO Modification Order, in substantially the form attached as **Exhibit 1** to the Chae Declaration:

(1)    affirming the adequacy of the notice given;

(2)    granting the Motion in its entirety;

(3)    establishing and approving the Amended Bidding Procedures, in the form attached as **Exhibit A** to the BPO Modification Order;

(4)    approving the Amended Sale Notice, in the form attached as **Exhibit B** to the BPO Modification Order;

(5)    approving the Amended Cure Notice, in the form attached as **Exhibit C** to the BPO Modification Order;

(6)     continuing the Sale Hearing to April 14, 2022 at 10:30 a.m. (prevailing Pacific Time) or such later date and time available to the Court;

(7)     approving the First Amendment to the Plan Support Agreement in the form attached as **Exhibit 2** to the Chae Declaration;

(8)     authorizing an amendment to the SH PSA consistent with the Amended Bidding Procedures; and

(9)     granting such other and further relief as the Court deems just and proper under the circumstances.

Dated:  January 11, 2022              PLAMEX INVESTMENT, LLC
                                      3100 E. IMPERIAL INVESTMENT, LLC

                                      By:____*/s/ Juliet Y. Oh*_____
                                            RON BENDER
                                            MONICA Y. KIM
                                            JULIET Y. OH
                                            LEVENE, NEALE, BENDER,
                                                 YOO & GOLUBCHIK L.L.P.
                                            Attorneys for Chapter 11 Debtors and
                                            Debtors-in-Possession

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

**A.    Background.**

1.    Plamex Investment, LLC, a Delaware limited liability company ("Plamex"), and 3100 E. Imperial Investment, LLC, a Delaware limited liability company ("3100," and together with Plamex, the "Debtors"), the debtors and debtors-in-possession in the above-captioned, jointly administered chapter 11 bankruptcy cases, each filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on April 14, 2021 (the "Petition Date"). The Debtors are continuing to manage their financial affairs and operate their bankruptcy estates as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  The Court has approved the joint administration of the Debtors' cases.

2.    Plamex is the fee simple owner of "Plaza Mexico," a 403,242 square-foot community shopping center offering specialty retail and dining located in Lynwood, California just north of the 105 freeway, approximately 20 minutes from LAX ("Plaza Mexico," or the "Property").  For over 20 years, Plaza Mexico has been a community landmark in Southern California.  The premise behind Plaza Mexico is to represent the rich Latino heritage of the community and create an authentic Mexican cultural landscape through the incorporation of Mexican architecture, authentic building materials, notable monuments, and a forum to celebrate all Mexican fiestas.  Currently, Plaza Mexico is occupied by approximately 200 tenants that include Food 4 Less, Rite Aid, Curacao, Chuck E. Cheese, and a wide variety of restaurants and retailers of clothing, electronics, shoes, toys, jewelry, and furniture.  The Property also boasts a revenue-creating LED tower overlooking the I-105 Freeway.

3.    Plamex is wholly owned by its sole member, 3100, one of the Debtors herein.  Other than its membership interests in Plamex, 3100 does not have any other material assets.  3100 is wholly owned by an entity called Placo Investment, LLC ("Placo") and Placo is wholly owned by

ISLT Investment, LLC ("ISLT"). Neither Placo nor ISLT has filed its own bankruptcy case. No official committee of unsecured creditors has been appointed in these chapter 11 cases.

4.     On June 16, 2016, Plamex, as borrower, obtained $106,000,000 in loans from Natixis, New York Branch ("Senior Loans"), secured by a "*Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing*" ("Deed of Trust") upon the Property, and liens upon substantially all other assets of Plamex purportedly perfected by, among other things, the recording of UCC-1 financing statements in the States of Delaware and California. The promissory note evidencing the Senior Loans was contemporaneously severed and split into six replacement promissory notes (collectively, the "Notes"). Pursuant to a proof of claim filed in Plamex's bankruptcy case, Wells Fargo Bank, National Association, as Trustee for Morgan Stanley Capital I Trust 2016-UBS11, Commercial Mortgage-Pass Through Certificates, Series 2016-UBS11, and on behalf of the holders of any related serviced subordinated companion loan or serviced companion loan ("Wells Fargo") is the current holder of the Notes and beneficiary under the Deed of Trust.

5.     The Senior Loans matured on or about July 5, 2021. Since the commencement of Plamex's chapter 11 case, the Senior Loans have accrued non-default interest at a fixed rate of 4.598% and default interest at a rate that is the lesser of (i) maximum rate permitted by applicable law, or (ii) 5% above the regular rate. Plamex went into default on the Senior Loans in May 2020. Given the pandemic and the financial effects of the pandemic including Plamex's efforts to re-finance the Senior Loans which was in process during the Spring of 2020 when the pandemic suddenly hit, Plamex requested, but the holders of the Notes refused, to extend the maturity date of the Senior Loans. As set forth in Wells Fargo's proof of claim filed in Plamex's case, Wells Fargo contends that it was owed at least $107,750,632.85 under the Notes as of the Petition Date.

6.     Concurrently with the Senior Loans, on June 16, 2016, 3100 obtained $14,000,000 in mezzanine loans also from Natixis, New York Branch (the "Mezzanine Loans"). These Mezzanine Loans were contemporaneously or subsequently sold, conveyed and assigned to Waterfall Olympic Fund Grantor Trust, Series III ("Waterfall") and Quarry Head 2017-1 Grantor

Trust ("Quarry Head," and together with Waterfall, the "Waterfall Parties").  The Mezzanine Loans were primarily secured by a pledge of all of 3100's membership interest in and to Plamex pursuant to a "*Pledge and Security Agreement*."  The holders of the Mezzanine Loans also purportedly perfected their liens on substantially all assets of 3100 by the recording of UCC-1 financing statements in the States of Delaware and California.

7.    Pursuant to an "*Intercreditor Agreement*" between Natixis, New York Branch with itself on behalf of the Senior Loans and the Mezzanine Loans, the Mezzanine Loans are, among other things, subordinated to the Senior Loans, including as to payment.

8.    Because 3100's ability to service its debt payments on the Mezzanine Loans also hinges on the performance of Plaza Mexico, which it was unable to do as a result of the pandemic and its financial effects, 3100 also went into default as to the Mezzanine Loans.  The Waterfall Parties sought to foreclose upon the pledge and lien upon 3100's membership interests in Plamex, with a UCC foreclosure sale scheduled for April 15, 2021 at 10:00 a.m. (EST).  The Debtors commenced their bankruptcy cases to avoid foreclosure upon such membership interests and to preserve these interests and the Property for all constituents.

**B.    Marketing And Sale Efforts Related To The Property.**

9.    Shortly after the Petition Date, the Debtors made the decision that the best interests of their estates are served by their employment of a real estate broker to assist the Debtors either to sell Plaza Mexico for the most money possible or to find an investment partner to team up with the Debtors either in connection with a sale process or a reorganization process.  After interviewing and consulting with as many qualified real estate brokers, the Debtors decided to employ NAI Capital Commercial, Inc. ("NAI") as their real estate broker.

10.   On June 11, 2021, the Debtors filed their joint application to employ NAI as their real estate broker on the terms and conditions set forth in such application and the listing agreement between the Debtors and NAI.  Wells Fargo and the Waterfall Parties objected to the proposed employment of NAI, contending that NAI was not qualified to market the Property. After a hearing held on July 15, 2021, the Court entered an order approving NAI's employment on an

interim basis, and scheduled a final hearing for September 30, 2021.  After the final hearing held on September 30, 2021, the Court entered an order approving NAI's employment on a final basis.

11.    The Debtors, with the assistance of NAI, actively and diligently marketed the Property for sale for more than 3 months, with over 200 parties signing non-disclosure agreements to access due diligence materials.  The Debtors also received no less than 5 offers from prospective purchasers to acquire the Property, including an offer from an affiliate of 3100's secured creditor, Quarry Head or its nominee (the "SH Bidder").

12.    Of all the offers received to date, the SH Bidder has submitted the highest offer for the Property at a price of $162,500,000, and has agreed that its offer will serve as a stalking horse bid on the terms set forth in a "*Summary Term Sheet for Joint Plan of Liquidation*" ("Plan Term Sheet"), the "*Plan Support Agreement*" ("Plan Support Agreement"), and a stalking horse real property purchase and sale agreement dated as of December 22, 2021 (including all exhibits, schedules, and ancillary agreements related thereto, and as amended and in effect, the "SH PSA"), and subject to higher and better bids pursuant to bidding procedures originally agreed upon between the SH Bidder and the Debtors ("Original Bidding Procedures").

13.    As set forth in the Plan Term Sheet and the Plan Support Agreement, to the extent there are no qualified overbids and the SH Bidder purchases the Property for $162,500,000, the sale of the Property (the "Sale") is contemplated to be approved as part of confirmation of a joint plan of liquidation ("Plan") proposed by the Debtors which will also provide for the payment in full, from the net proceeds of the Sale and other cash of the Debtors of all allowed, nonaffiliated claims against the Debtors in accordance with the priorities set forth in the Bankruptcy Code or other applicable laws, based on the separate legal recognition of the Debtors.[1]  In the event a qualified overbid is received and SH Bidder is not the successful bidder of the Property, the sale to

---

[1] On December 30, 2021, the Debtors filed that certain *Joint Chapter 11 Plan Of Liquidation Of Plamex Investment, LLC And 3100 E. Imperial Investment, LLC Dated December 30, 2021* [Doc. No. 243], that certain *Disclosure Statement Describing Debtors' Joint Chapter 11 Plan Of Liquidation (Dated December 30, 2021)* [Doc. No. 244] (the "Disclosure Statement"), and the Debtors' motion for Court approval of the Disclosure Statement, which is currently set for hearing on February 10, 2022 at 10:30 a.m..

the successful bidder will also be approved as part of confirmation of the Plan unless the successful bidder elects to proceed with an asset sale order and purchase outside the context of a confirmed Plan.

14.    In connection with the acceptance of the stalking horse bid from the SH Bidder and the need for continued marketing of the Property to potential overbidders, the Debtors made the decision to terminate and replace NAI with Jones Lang LaSalle Americas, Inc. ("JLL") as their real estate broker. The Waterfall Parties consented to the replacement and engagement of JLL on the terms set forth in the "*Exclusive Listing Agreement*" between JLL and Plamex (the "JLL Listing Agreement"). On November 22, 2021, the Court entered an order approving the Debtors' employment of JLL as their new real estate broker.

15.    On October 28, 2021, the Debtors filed a motion seeking an order (i) approving the Original Bidding Procedures for the sale of the Property free and clear of all liens, claims, encumbrances and other interests, (ii) approving the SH Bidder as the stalking horse bidder for the Property, (iii) establishing and approving procedures relating to the assumption and assignment of executory contracts and unexpired leases; (iv) approving the form and manner of the notice of the sale and Original Bidding Procedures to prospective buyers and other parties-in-interest (the "Original Sale Notice"), and the notice to non-Debtors counterparties under executory contracts and unexpired leases regarding the possible assumption and assignment thereof (the "Original Cure Notice"), (v) scheduling an auction should there be more than one qualifying bid ("Auction"), (vi) scheduling a hearing to consider the approval of the sale ("Sale Hearing"), (vii) approving the Debtors' entry into and performance under the Plan Support Agreement; and (viii) granting certain related relief [Doc. No. 189] (the "Bidding Procedures Motion").

16.    On December 2, 2021, the Bankruptcy Court entered an order [Doc. No. 231] (the "Original Bidding Procedures Order") granting the Bidding Procedures Motion, approving the Original Bidding Procedures (as described in Exhibit A to the Original Bidding Procedures Order) and expressly authorizing the Debtors and their representatives and advisors to proceed in accordance therewith, approving the Original Sale Notice and Original Cure Notice, scheduling an

Auction on February 21, 2022 at 10:00 a.m. should there be more than one qualifying bid for the Property, and scheduling the Sale Hearing on February 24, 2022 at 10:30 a.m.

**C.**      **Proposed Amended Bidding Procedures And Modified Sale Timeline**.

17.     The Original Bidding Procedures were the result of extensive negotiations between the Debtors and the SH Bidder, and were designed to ensure that the highest price possible is paid for the Property by a purchaser who has the financial ability to close on a purchase of the Property in a reasonably expeditious manner.

18.     However, due to the (i) sheer massive size of the Property (more than 400,000 square feet) and number of tenants involved (approximately 200), (ii) the need to make sure that the data room for prospective buyers is comprehensive and complete with reasonable and accurate financial information, including pro forma cash flow projections, (iii) the intervening holiday season, and (iv) the Debtors' limited staff available to provide JLL with assistance, JLL is only now ready to proceed with its marketing launch for the Property.  In light of the foregoing, and as set forth in the Declaration of Geoff Tranchina filed concurrently herewith, JLL believes that the current bid deadline of February 17, 2022 and Auction date of February 21, 2022 are too soon and are unlikely to result in the highest and best price possible under the circumstances being paid for the Property.

19.     The Debtors and the Waterfall Parties have discussed with JLL its concerns regarding the current sale timeline at length, and upon the recommendation of JLL, the Debtors and the Waterfall Parties collectively agree that in order to maximize the potential value of the Property that is realized in the chapter 11 cases, it is essential that the current the sale timeline be extended by six (6) weeks.  Such an extension would result in the bid deadline being extended from February 17, 2022 to April 7, 2022 and the Auction date being extended from February 22, 2022 to April 11, 2022 in the event that any qualified overbid is submitted for the Property.  The Debtors, JLL and the Waterfall Parties believe that extended timeline will provide sufficient time for a full and robust marketing and sale process, and would result in the highest and best price possible under the circumstances being paid for the Property.

20.     The modified/extended sale timeline proposed herein will provide prospective bidders with ample time to conduct the necessary due diligence that buyers would need to conduct before committing to purchasing such an expensive property, including providing what would be a non-refundable deposit if they are deemed to be the winning bidder at the Auction.  Moreover, the additional time will facilitate efforts by the Debtors to procure tenant estoppels from a large majority of the approximately 200 tenants of the Property before the Auction occurs and the Sale Hearing is held, which the Debtors, JLL and the Waterfall Parties all believe is in the overwhelming best interests of the Debtors' estates.

21.     Pursuant to this Motion, the Debtors seek the entry of an order (the "BPO Modification Order"), in substantially the form attached as **Exhibit 1** to the Declaration of Donald Chae filed concurrently herewith (the "Chae Declaration"), to amend certain provisions of the Original Bidding Procedures Order.  The proposed BPO Modification Order reflects the modified sale timeline, including the specific dates detailed in the table below, and approves an amended version of the Original Bidding Procedures in the form attached as **Exhibit A** to the BPO Modification Order (the "Amended Bidding Procedures"), an amended version of the Sale Notice in the form attached as **Exhibit B** to the BPO Modification Order (the "Amended Sale Notice"), and an amended version of the Cure Notice in the form attached as **Exhibit C** to the BPO Modification Order (the "Amended Cure Notice").

| Date/Deadline | Original Date | New Proposed Date |
|---|---|---|
| Bid Deadline | February 17 (5pm PT) | April 7 (5pm PT) |
| Auction | February 21 (10am PT) | April 11 (10am PT) |
| Sale Hearing | February 24 (10:30am PT) | April 14 (10:30am PT)[2] |
| Supplemental Sale Pleadings Due | February 3 | March 24 |
| Sale Objections Due | February 10 | March 31 |
| Supplemental Sale Objections Due | February 23 | April 13 |
| Sale Reply Due | February 17 | April 7 |

[2] The proposed Sale Hearing date and time remains subject to the availability of the Court as the Court's April calendar has not yet been posted.  In the event that the Court grants this Motion but continues the Sale Hearing to a date other than April 14, 2022, the deadlines set forth herein will need to be modified accordingly.

| Cure Notice Due | February 3 | March 24 |
| Cure Objections Due | February 10 | March 31 |
| Designated Contracts List Due | February 11 | April 1 |
| Designated Contracts Website Post Due | February 15 | April 5 |
| Adequate Assurance Objections Due | February 23 (5pm PT) | April 13 (5pm PT) |

## II.

## DISCUSSION

Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…." 11 U.S.C. § 363(b)(1).

**A.      The Proposed Amended Bidding Procedures Should Be Approved By The Court.**

Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") govern the scope of the notice to be provided in the event a debtor elects to sell property of the estate under Section 363; however, with respect to the procedures to be adopted in conducting a sale outside the ordinary course of a debtor's business, Bankruptcy Rule 6004 provides only that such sale may be by private sale or public auction, and requires only that the debtor provide an itemized list of the property sold together with the prices received upon consummation of the sale. Fed. R. Bankr. Proc. 6004(f).

Neither the Bankruptcy Code nor the Bankruptcy Rules contain specific provisions with respect to the procedures to be employed by a debtor in conducting a public or private sale. Nonetheless, as one Court has stated, "It is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the [debtors'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988). Additionally, courts have long recognized the need for competitive bidding at hearings on private sales; "[c]ompetitive bidding yields higher offers and thus benefits the estate. Therefore, the objective is 'to maximize bidding, not restrict it.'" *Id.*

The Debtors believes that the Amended Bidding Procedures and all of the relief sought in the Motion, including approval of the Amended Sale Notice and the Amended Cure Notice, which are all supported by and have been developed in conjunction with the SH Bidder and JLL, are in the best interests of the Debtors' estates as they have been designed to create as much bidding interest as possible and to maximize the value of the Property.

As discussed above, the Debtors' Court-approved real estate broker, JLL, believes that the current operative sale timeline, which provides for a bid deadline of February 17, 2022 and an Auction date of February 21, 2022 are too soon and are unlikely to result in the highest and best price possible under the circumstances being paid for the Property.  The Debtors, the SH Bidder and JLL have collectively concluded that extending the sale timeline by six (6) weeks, which results in the bid deadline being extended to April 7, 2022 and the Auction date being extended to April 11, 2022 in the event that any qualified overbid is submitted for the Property, would provide sufficient time for a full and robust marketing and sale process, and would result in the highest and best price possible under the circumstances being paid for the Property.   The modified/extended sale timeline proposed in this Motion will provide prospective bidders with ample time to conduct the necessary due diligence that buyers would need to conduct before committing to purchasing such an expensive property, and provide the Debtors with additional time to provide reasonably satisfactory evidence under the requirements of the SH PSA (and the form of it that prospective bidders will be using) that there are no material adverse issues concerning the leases that will be assumed and assigned to the winning bidder at closing.  While such evidence may be based on a number of sources, including first and foremost the orders of the Court that are entered approving the sale and authorizing the assignment and assumption of leases, such evidence may come in the form of tenant estoppel certificates procured by the Debtors.  The Debtors expect the additional sale timeline requested herein will substantially facilitate their efforts to obtain such tenant estoppels.

While the Debtors are seeking to extend the sale-related dates and deadlines for a period of six (6) weeks to facilitate a more full and robust marketing and sale process, the Debtors are not seeking to modify the balance of the Original Bidding Procedures approved by the Court.

The Debtors do not believe that any party will be harmed or prejudiced by modified sale timeline set forth in the Amended Bidding Procedures, including the Debtor's senior secured creditor, Wells Fargo, who continues to receive monthly interest payments and is assured of being paid in full (as are all other unaffiliated creditors of the Debtors) upon the closing of the Sale of the Property, given the $162,500,000 purchase price offered by the SH Bidder.

As a whole, the Debtors believe that the Amended Bidding Procedures will (i) foster competitive bidding among any serious potential purchasers, (ii) eliminate from consideration potential purchasers who do not have the financial ability to consummate a Sale of the Property in a timely manner, (iii) provide certainty in connection with the bidding process and a "level playing field" for prospective bidders, (iv) ensure that the highest possible purchase price is obtained for the Property under the circumstances; and (v) facilitate a successful closing of the Sale of the Property.

The Debtors therefore submit that the Amended Bidding Procedures described above are in the best interests of their bankruptcy estates, are necessary and appropriate to maximize the recovery for their bankruptcy estates, and should be approved by the Court as a sound exercise of the Debtors' business judgments.

**B.** **The Court Has Authority To Modify The Previously Approved Bidding Procedures And Related Notices**

Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he Court may issue any order, process or judgment that is necessary and appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

The Supreme Court has opined that the broad powers of Section 105(a) are consistent with the "traditional understanding" that bankruptcy courts are courts of equity.  *United States v. Energy Resources Co.*, 495 U.S. 545, 595 (1990).  While Section 105(a) gives bankruptcy courts

broad equitable powers, these powers may only be used in a manner that is not inconsistent with the provisions of the Bankruptcy Code. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 199 (1988).

As a court of equity, this Court has the inherent power and authority to enter an order modifying its previously entered Original Bidding Procedures Order. *See* 11 U.S.C. § 105(a). The Debtors respectfully submit that good cause exists to grant the requested relief and approve the Amended Bidding Procedures (and the Amended Sale Notice and Amended Cure Notice related thereto) as the modifications set forth therein will facilitate a full and robust marketing and sale process for the Property, maximize the value obtained for the Property, and pave the way for a successful closing of the Sale of the Property, all of which is in the best interests of the Debtors' estates and creditors.

**C.    Emergency Relief Is Appropriate Under The Circumstances.**

Local Bankruptcy Rule 2081-1(a)(10) permits a party to request that a bidding procedures motion be set for hearing on an emergency basis in accordance with the provisions of Local Bankruptcy Rule 9075-1.

The Debtors believe that emergency relief is appropriate under the circumstances. The Debtors and JLL cannot effectively launch their marketing for the Property until there is Court approval of and certainty regarding the modified sale timeline. If the Debtors were to proceed with the original sale timeline established by the Original Bidding Procedures Order, which provides for a bid deadline of February 17, 2022, JLL would be required to immediately launch its marketing for the Property to maximize interest in the Property. If JLL is forced to launch its marketing for the Property in accordance with the original sale timeline, and then the sale timeline is modified thereafter, there will undoubtedly be confusion within the market and among prospective bidders, which will hamper the JLL's efforts to market the Property and solicit offers for the Property. Based on the foregoing, the Debtors believe it is critical to have the Motion heard – and hopefully granted – on an expedited, emergency basis so that the Debtors and JLL

can obtain certainty regarding the operative sale timeline and launch the marketing for the Property as quickly as possible.

### III.

### <u>CONCLUSION</u>

**WHEREFORE**, the Debtors respectfully request that this Court hold an emergency hearing on this Motion, and enter the BPO Modification Order, in substantially the form attached as **<u>Exhibit 1</u>** to the Chae Declaration:

(1)    affirming the adequacy of the notice given;

(2)    granting the Motion in its entirety;

(3)    establishing and approving the Amended Bidding Procedures, in the form attached as **<u>Exhibit A</u>** to the BPO Modification Order;

(4)    approving the Amended Sale Notice, in the form attached as **<u>Exhibit B</u>** to the BPO Modification Order;

(5)    approving the Amended Cure Notice, in the form attached as **<u>Exhibit C</u>** to the BPO Modification Order;

(6)    continuing the Sale Hearing to April 14, 2022 at 10:30 a.m. (prevailing Pacific Time) or such later date and time available to the Court;

(7)    approving the First Amendment to the Plan Support Agreement in the form attached as **<u>Exhibit 2</u>** to the Chae Declaration;

(8)    authorizing an amendment to the SH PSA consistent with the Amended Bidding Procedures; and

///

///

///

///

///

///

19

1          (9)      granting such other and further relief as the Court deems just and proper under the

2    circumstances.

3    Dated:  January 11, 2022                    PLAMEX INVESTMENT, LLC, *et al.*

4                                                By:___*/s/ Juliet Y. Oh*_____
                                                      RON BENDER
5                                                     MONICA Y. KIM
                                                      JULIET Y. OH
6                                                     LEVENE, NEALE, BENDER, YOO
7                                                        & BRILL L.L.P.
                                                      Attorneys for Chapter 11 Debtors and
8                                                     Debtors-in-Possession

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **DEBTORS' EMERGENCY MOTION FOR ENTRY OF ORDER MODIFYING BIDDING PROCEDURES FOR SALE OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND CERTAIN DATES AND DEADLINES RELATED THERETO** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 11, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender    kjm@lnbyb.com**
- **Ron Bender    rb@lnbyb.com**
- **Alexander S Berk    aberk@mayerbrown.com, courtnotification@mayerbrown.com**
- **Steven Casselberry    s.casselberry@mpglaw.com, j.jacobs@mpglaw.com**
- **Timothy W Evanston    tevanston@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com**
- **Amir Gamliel    amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com**
- **Nancy S Goldenberg    nancy.goldenberg@usdoj.gov**
- **Monica Y Kim    myk@lnbyg.com, myk@ecf.inforuptcy.com**
- **Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com**
- **Robert S Marticello    Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com**
- **Kyle J Mathews    kmathews@sheppardmullin.com**
- **Juliet Y. Oh    jyo@lnbyg.com, jyo@lnbyb.com**
- **Robert E Opera    ropera@wghlawyers.com, jmartinez@wghlawyers.com;mweinberg@wghlawyers.com**
- **Ronald N Richards    ron@ronaldrichards.com, morani@ronaldrichards.com**
- **Jeffrey S Shinbrot    jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

**2. SERVED BY UNITED STATES MAIL**: On **January 11, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*None.*

☐ Service List continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 11, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service List served by Overnight Mail on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 11, 2022 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                            **F 9013-3.1.PROOF.SERVICE**

Plamex and 3100
Secured, UST, Top 20, RSN

Office of the U.S. Trustee
Region 16
411 W 4th St #7160
Santa Ana, CA 92701

The Lynwood Redevelopment Agency
11330 Bullis Road
Lynwood, CA 90262

WF 1105, LLC
c/o Waterfall Asset Management, LLC
Attention: General Counsel
1140 Ave of the Americas, 7th Fl
New York, New York 10036

Perkins Coie LLP
2901 N. Central Ave., Suite 2000
Attn: Liana W. Spendlove
Phoenix, AZ 85012

CWCapital Asset Management
900 19th Street NW, 8th Floor
Attn: Ariel Levin/Jake Hamel
Washington, DC 20006

Natixis, New York Branch
1251 Avenue of the Americas
New York, NY 10020

Perkins Coie LLP
1888 Century Park East, Suite 1700
Attn: Mark Birnbaum
Los Angeles, CA 90067

Quarry Head 2017-1 Grantor Trust
c/o Waterfall Asset Management, LLC
1251 Ave. of the Americas, 50th Fl.
New York, NY 10020

c/o CWCapital Investments LLC
7501 Wisconsin Ave., Suite 500 West
Attn: Chris McCormack
Bethesda, MD 20814

c/o Keybank Real Estate Capital
11501 Outlook Street, Suite 300
Attn: Stephen J. Friedman
Overland Park, KS 66211

c/o Keybank Real Estate Capital
11501 Outlook Street, Suite 300
Attn: Timothy R. Gruenenfelder
Overland Park, KS 66211

Greenberg Traurig, PA
Attn: Laura Gangemi Vignola, Esq.
333 S.E. 2nd Avenue
Miami, FL 33131

Quarry Head 2017-1 Grantor Trust
c/o Waterfall Asset Management, LLC
1140 Ave. of the Americas, 7th Fl.
New York, NY 10036

*Top 20*
Wells Fargo Bank, N.A., as Trustee
Morgan Stanley Cap I Trust 2016-UBS
9062 Old Annapolis Road
Columbia, MD 21045

*Top 20*
Better & Best Building Service Inc.
1833 Avenida San Lorenzo
Fullerton, CA 92833

*Top 20*
Star Buffet Lynwood
11383 Long Beach Blvd
Lynwood, CA 90262

*Top 20*
Autofin USA
3180 E. Imperial Hwy. #G
Lynwood, CA 90262

*Top 20*
Bubbles Apparel
2839 Sycamore Avenue
La Crescenta, CA 91214

*Top 20*
GTO Security
2202 S Figueroa Street, Suite 134
Los Angeles, CA 90017

*Top 20*
Planet Fitness
125 E. Elm Street, Suite 300
Conshohocken, PA 19428

*Top 20*
Greenland Property Management, LLC
6988 Beach Blvd B-215
Buena Park, CA 90621

*Top 20*
Imperial Shopping Center, LLC
3100 E. Imperial Highway
Lynwood, CA 90262

*Top 20*
Community Enforcement Patrol
11600 Paramount Blvd #D
Downey, CA 90241

*Top 20*
3100 E. Imperial Investment, LLC
6988 Beach Blvd, Suite B-215
Buena Park, CA 90621

*Top 20*
Kone Inc.
1821 Tyburn Street
Glendale, CA 91204

*Top 20*
3100 E. Imperial Highway Corp.
3100 E. Imperial Highway
Lynwood, CA 90262

*Top 20*
Placo Investment, LLC
6988 Beach Blvd B-215
Buena Park, CA 90621

*Top 20*
Sonamu Holdings, LLC
P.O. Box 489
Buena Park, CA 90621

*Top 20*
M+D Properties
3100 E. Imperial Highway
Lynwood, CA 90262

*Top 20*
The Source at Beach, LLC
3100 E. Imperial Highway
Lynwood, CA 90262

*Top 20*
Waste Resources, Inc.
23 Corporate Plaza Drive, Suite 247
Newport Beach, CA 92660

*Top 20*
Southern California Edison
2244 Walnut Grove Avenue
Rosemead, CA 91770

Family Acupuncture & Herb Clinic
3150 E. Imperial Hwy B8-206
Lynwood, CA 90262

Fashion Qrew
1324 E. Washington Blvd
Los Angeles, CA 90021

Bioncos La Huerta
8557 Orange Street
Downey, CA 90242

Grupo Concordia LA
5919 San Miguel Road
Bonita, CA 91902

Grupo Pakar LLC
9595 Six Pines Drive Suite 8210
The Woodlands, TX 77382

Happy Land
6732 Los Verdes Dr. #3
Rancho Palos Verdes, CA 90275

Hip Hop Zone
3100 E. Imperial Hwy #1009
Lynwood, CA 90262

JPL Event Enterprise LLC
1238 South Beach Blvd
Anaheim, CA 92804

Jose Alan Sandoval-Iniquez
15137 San Jose Ave
Paramount, CA 90723

Pho VNK
3180 E. Imperial Hwy, Suite C
Lynwood, CA 90262

The Kickin' Crab
3170 Imperial Hwy B4B102
Lynwood, CA 90262

Real De Oaxaca
11215 Long Beach Blvd #1010
Lynwood, CA 90262

*Request for Special Notice*
Stephen T. Owens & Tania Ochoa
Alvarez-Glasman & Colvin
13181 Crossroads Parkway North
Suite 400, West Tower
City of Industry, CA 91746

*Request for Special Notice*
David M. Neff, III
Amir Gamliel, Cal. Bar No. 268121
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067